UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KELVIN LEON JONES, *et al.*,

    *Plaintiffs*,

v.

RON DESANTIS, *et al.*,

    *Defendants.*

_____/

Case No. 4:19-cv-300-MW-MJF
(Lead Case)

## FLORIDA GOVERNOR'S AND FLORIDA SECRETARY OF STATE'S JOINT MOTION TO DISMISS

State courts should say what state law is.  An unavoidable but fundamental question of *state* constitutional law lies at the heart of the cases now before this Court:  whether the phrase "completion of all terms of sentence," as used in the Florida Constitution, includes legal fines, fees, restitution, and other obligations imposed as part of a criminal sentence.  If it does, as the text's proponents said it did, then Plaintiffs' challenge to only a *statute* implementing the *state constitution's text* cannot provide Plaintiffs any relief and thereby deprives Plaintiffs of Article III standing.  This is because even if this Court strikes the implementing statute as unconstitutional, the Florida Constitution would still bar felon re-enfranchisement for unpaid legal fines, fees, restitution, and other obligations, and Plaintiffs would still not be re-enfranchised.  But if the Florida

Constitution's text does *not* include legal fines, fees, restitution, and other obligations, then the alleged burdens on Plaintiffs' rights might well be resolved without addressing the federal constitutional issues.  Either way, Florida courts provide the fastest and only definitive means of answering the unavoidable question of state constitutional law so fundamental to the resolution of the cases now before this Court.  Thus, standing and abstention require dismissal; the doctrine of constitutional avoidance favors the same.  Florida courts should resolve the meaning of the state constitution before these cases proceed.

Part I of this Motion provides background relevant to the cases.  Part II provides the relevant legal standards.  Part III provides argument.

## I.    BACKGROUND

In November 2018, Floridians voted on an amendment to the Florida Constitution titled "Voting Restoration Amendment" ("Amendment").  "[A]n initiative petition sponsored by Floridians for a Fair Democracy" resulted in the Amendment being placed on the ballot.  *In re Advisory Op. to the Attorney Gen.*, 215 So. 3d 1202, 1204 (Fla. 2017).  The Florida Constitution previously provided that "[n]o person convicted of a felony . . . shall be qualified to vote or hold office until restoration of civil rights."  Fla. Const. art. VI, § 4 (2018).  The Amendment added a new provision for re-enfranchisement: "Except [for persons convicted of murder or a felony sexual offense], any disqualification from voting arising from a

felony conviction shall terminate and voting rights shall be restored upon completion of all terms of sentence including parole or probation." Fla. Const. art. VI, § 4(a) (2019). Whether the phrase "completion of all terms of sentence" includes legal fines, fees, restitution, and other obligations imposed as part of the criminal sentence is something the Florida Supreme Court and the Florida Legislature addressed.

*First*, the Florida Supreme Court weighed-in on the Amendment before its placement on the ballot to address: "(1) whether the ballot title and summary inform[ed] voters of the chief purpose of the proposed amendment; and (2) whether the ballot title and summary [were] misleading." *Advisory Op.*, 215 So. 3d at 1208. The Florida Supreme Court held that "the ballot title and summary [presented to voters in November 2018] clearly and unambiguously inform[ed] the voters of the chief purpose of the . . . [A]mendment." *Id*. That is, "the title and summary would reasonably lead voters to understand that the chief purpose of the [A]mendment is to automatically restore voting rights to felony offenders, except those convicted of murder or felony sexual offenses, *upon completion of all terms of their sentence*." *Id*. (emphasis added). The Florida Supreme Court also concluded that "the ballot title and summary [would] not mislead voters." *Id*.

The Florida Supreme Court's holding was partly rooted in the colloquy between the Justices and the Amendment's sponsor, Floridians for a Fair

Democracy ("Sponsor").  The Sponsor reassured the Justices that the Amendment presented a "fair question" and "clear explanation" to voters.  Transcript of Oral Argument at 2, *Advisory Op.*, 215 So. 3d 1202 (No. SC16-1785).[1]  When asked by Justice Polston whether "all terms" included "full payment of any fines," the Sponsor said it did.  *Id.* at 4.  The Sponsor elaborated that "all terms means all terms within the four corners [of the sentencing document]."  *Id.*  Justice Lawson asked for further clarification from the Sponsor: "You said that terms of sentence include fines and costs. . . . Would it also include restitution when it was ordered to a victim as part of the sentence?"  *Id*. at 10.  The Sponsor said it would.  *Id.* Ultimately, the phrase "completion of all terms of sentence including parole or probation" was clear to both the Sponsor and the Justices.  Per the Sponsor's representation to the Justices, the phrase included all legal fines, fees, restitution, and other obligations.  *Id*. at 4.  The Sponsor's representations also comported with Florida law holding that use of the word "including" is "an illustrative application of the general principal" and not "an exhaustive description."  *Pro-Art Dental v. V-Strategic Grp.*, 989 So. 2d 1244, 1257 (Fla. 2008) (citing *Fed. Land Bank of St. Paul v. Bismark Lumber Co.*, 314 U.S. 95, 100 (1941)).

---

[1] The Transcript of Oral Argument is available here: https://wfsu.org/gavel2gavel/transcript/pdfs/16-1785_16-1981.pdf. A video of the oral argument is available here: https://wfsu.org/gavel2gavel/viewcase.php?eid=2421&jwsource=cl.

The Amendment was added to the 2018 ballot, passed after it received the necessary votes, and included in the Florida Constitution.

After the Amendment passed, on December 13, 2018, the League of Women Voters (a Plaintiff here), the ACLU of Florida (counsel for some of Plaintiffs here), Latino Justice, and the Florida Rights Restoration Coalition sent a letter to the Secretary sharing with the Secretary their understanding of the phrase "all terms of sentence" as now used in the Florida Constitution.  The letter provides:

> The phrase 'completion of all terms of sentence' includes any period of incarceration, probation, parole *and financial obligations imposed as part of an individual's sentence. These financial obligations may include restitution and fines, imposed as part of a sentence or a condition of probation under existing Florida statute*. Fees not specifically identified as part of a sentence or a condition of probation are therefore not necessary for 'completion of sentence' and thus, do not need to be paid before an individual may register. We urge the Department to take this view in reviewing the eligibility of individuals registered to vote as outlined in Chapter 98, Florida Statutes.

**Exhibit 1**, at 3 (emphasis added).  Several proponents of the Amendment thus echoed representations made by the Sponsor to the Florida Supreme Court as late as December 2018.

*Second,* following passage of the Amendment, the Florida Legislature statutorily defined the term "[c]ompletion of all terms of sentence."  2019-162 Fla. Laws § 25 (codified at Fla. Stat. § 98.0751 (2019)).  The Legislature borrowed heavily from the Florida Supreme Court's colloquy with the Sponsor, which other proponents reiterated in their December 2018 letter to the Secretary.  The statute,

for example, includes legal financial obligations imposed but limits the "terms of sentence" to "any portion of a sentence that is contained in the four corners of the sentencing document." *Id.* (codified at Fla. Stat. § 98.0751(2)(a) (2019)).

In several respects, however, the statute is more generous than the Sponsor's own understanding of the Amendment's text. The statute allows a circuit court to convert financial obligations associated with a criminal sentence into community service hours and then consider those financial obligations to be met upon completion of the community service hours. *Id.* (codified at Fla. Stat. § 98.0751(2)(a)5.e.(III) (2019)). The statute also requires strict construction of the statutory language such that "[i]f a provision is susceptible to differing interpretations," the language "be construed in favor of the registrant." *Id.* (codified at Fla. Stat. § 98.0751(4) (2019)).

While litigation over the statute began even before the Governor signed it into law, *see* ECF 3, at 1 and ECF 11, at 2, none of Plaintiffs have sought to challenge the underlying Florida constitutional provision. *E.g.,* Case No. 19-cv-121, ECF 1 ¶ 39. Plaintiffs simply assume that the state constitutional text "is clear and simple" and does *not* include legal fines, fees, restitution, and other obligations imposed as part of the sentence. *Id.*

The Governor and Secretary move to dismiss the cases on standing and abstention grounds; constitutional avoidance also favors dismissal.[2]

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows for motions to dismiss that raise concerns with Article III standing.  *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).  While this Court may consider material outside the four corners of the complaint in considering such a motion, *see Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008), the Governor and Secretary provide such materials—the Florida Supreme Court transcript and letter to the Secretary—for purposes of providing background information.  This Court need not consider the materials to conclude that Plaintiffs cannot satisfy the redressability prong for standing if "all terms of sentence," as used in the Florida Constitution, includes legal fines, fees, restitution, and other obligations imposed as part of the sentence.

Rule 12 also serves as a basis to dismiss on abstention grounds; however, the federal courts provide no definitive guidance on whether Rule 12(b)(1) or 12(b)(6) serves as the specific vehicle for abstention.  The Ninth Circuit highlighted but did not "decide which Rule, if either, provides the correct vehicle for a motion to

---

[2] This Court, through Judge Walker, granted the Secretary's ore tenus request to file one motion raising concerns with all five pending cases.  *See* ECF 39.

abstain." *Courthouse News Serv. v. Planet,* 750 F.3d 776, 779 n.2 (9th Cir. 2014).

The Eleventh Circuit said that abstaining and then adjudicating the merits through

Rule 12(b)(6) is inappropriate but provided no dispositive guidance to follow.

*Stone v. Wall,* 135 F.3d 1438, 1441 n.3 (11th Cir. 1998); *see also Beaulieu v. Ala.*

*Onsite Wastewater Bd.,* 373 F. App'x. 3, 5–6 (11th Cir. 2010) (noting but not

"belabor[ing abstention as an] alternative grounds for dismissal").  Regardless of

whether this Court considers the request for abstention as a motion under Rule

12(b)(1) or a motion under Rule 12(b)(6), this Court should "treat the factual

allegations in [Plaintiffs'] complaint as true."  *Courthouse News,* 750 F.3d at 780.

### III.   ARGUMENT

Plaintiffs cannot satisfy the redressability prong for Article III standing

because the Florida Constitution's use of the phrase "all terms of sentence" would

serve as a bar to relief even if the statute being challenged was found

unconstitutional.  Abstention—*Pullman* and *Burford/Thibodaux*—and

constitutional avoidance also weigh against the exercise of federal jurisdiction.

### A.   *Plaintiffs cannot satisfy the redressability prong for standing.*

Article III standing requires that Plaintiffs show: "(1) [they] ha[ve] suffered

an 'injury in fact' . . . ; (2) the injury is fairly traceable to the challenged action of

the [D]efendant[s]; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  These elements

"are not mere pleading requirements but rather an indispensable part of the

[P]laintiff[s'] case," and they "'bear[] the burden of establishing' standing." *Ga.*

*Republican Party v. SEC*, 888 F.3d 1198, 1201 (11th Cir. 2018) (quoting *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs cannot satisfy the third prong, redressability, when they challenge

one thing (a statute), but another (the state constitution) might still serve as a bar to

relief.  The Eleventh Circuit and other courts agree.

In *Florida Family Policy Council v. Freeman,* the Eleventh Circuit held that

a nonprofit group challenging the constitutionality of Florida Code of Judicial

Conduct Canon 3E(1) but not a related statute "los[t] the standing war on the

redressability battle."  561 F.3d 1246, 1255 (11th Cir. 2009).  The nonprofit had

argued that the canon violated the First Amendment because it chilled a judicial

candidate's speech when responding to the nonprofit's questionnaire seeking

positions on various issues and denied the nonprofit its right to receive and publish

that information.  *Id.* at 1251.  But the nonprofit did not challenge the related

statute that, according to the Florida Supreme Court, "require[d] the same thing."

*Id.* at 1256.  Where there were "separate routes to the same destination," *id.*, the

nonprofit could not challenge only one and obtain the necessary relief because "the

chill wind from [the others would] still blow" and prevent judicial candidates from

responding to the questionnaire.  *Id.* at 1258.  There was no standing because there

was a lack of redressability.  *Id.*

The district courts in *Nichols v. Harris,* 945 F. Supp. 2d 1079 (C.D. Cal.

2012)[3] and *Directv, Inc. v. Tolson,* 498 F. Supp. 2d 784 (E.D.N.C. 2007) came to

similar conclusions.  In *Nichols,* the district court held that the plaintiff lacked

standing to challenge under the Second Amendment a local government ordinance

prohibiting the open carrying of a loaded firearm where state law could still serve

as a prohibition.  945 F. Supp. 2d at 1102.  In *Directv*, the district court held that

the plaintiff could not satisfy the redressability prong where it sought to challenge

the constitutionality of a tax scheme under the Commerce and Supremacy Clauses

but the relief would have been a reversion to a prior scheme that would have had

"the same net effect on plaintiffs."  498 F. Supp. 2d at 799 (citing *DaimlerChrysler*

*Corp. v. Cuno*, 547 U.S. 332, 344 (2006) where the U.S. Supreme Court said that

"establishing redressability [in that particular case] require[d] speculating that

abolishing the challenged credit w[ould] redound to the benefit of the taxpayer

because legislators w[ould] pass along the supposed increased revenue in the form

of tax reductions").

Like plaintiffs in *Florida Family*, *Nichlos*, and *Directv*, Plaintiffs in the

cases now before this Court also cannot satisfy the redressability prong.  Plaintiffs

---

[3] Report and Recommendation adopted in 945 F. Supp. 2d 1019 (C.D. Cal. 2012).

seek to enjoin enforcement of a statute that conditions re-enfranchisement on the payment of legal fines, fees, restitution, and other obligations included as part of a criminal sentence when set forth in the four corners of a sentencing document, where a circuit court is unwilling to modify the sentence, and where it is clear that the sentencing requirements have not been satisfied.  *See* 2019-162 Fla. Laws § 25 (codified at Fla. Stat. §§ 98.0751(2)(a), (2)(a)5.e.(III), (4) (2019)).  Even if Plaintiffs succeed, the Florida Constitution would serve as a bar to felon re-enfranchisement until the Florida courts say that "all terms of the sentence" *excludes* legal fines, fees, restitution, and other obligations.  Fla. Const. art. VI, § 4(a) (2019).  The constitutional text is arguably more restrictive because it makes no provision for sentencing documents, modification of sentences, or a favorable construction for re-enfranchisement.  *Id.*

Thus, challenging the statute, and only the statute, offers no redress to Plaintiffs.  Plaintiffs lack Article III standing, and this Court should dismiss all five of the pending cases.

### B.     This Court should abstain from deciding issues of state constitutional law.

Even if Plaintiffs could establish Article III standing, this Court should still abstain.  *Pullman* and *Burford/Thibodaux* provide two avenues to do just that. Each is discussed in turn.

1.    *Pullman* Abstention

Where state law is unsettled, federal courts should abstain from deciding cases until the state courts have had an opportunity to interpret the uncertain or unsettled state law.  This type of abstention—*Pullman* abstention—comports with the principles of federal-state comity and helps avoid premature federal constitutional adjudication.  *See R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 500 (1941).  *Pullman* requires that two elements be met: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented.  *Harman v. Forssenius,* 380 U.S. 528, 534 (1965).  Both are met here.

*First,* state law is unsettled where it is "susceptible" to at least one interpretation that avoids a constitutional question, *Bellotti v. Baird,* 443 U.S. 622, 628 (1979); where there is no binding state precedent on the issue, *Pustell v. Lynn Pub. Sch.,* 18 F.3d 50, 54 (1st Cir. 1994); or where, for example, a state statute is "silent" as to the definition of key terms or "the legislative history" is "equivocal." *Robinson v. Omaha,* 866 F.2d 1042, 1044 (8th Cir. 1989).

These cases present an unsettled question of state constitutional interpretation.  The Florida Legislature, the Amendment's Sponsor, other proponents of the Amendment, and, until recently, at least a Plaintiff organization have asserted that the phrase "all terms of sentence" means one thing; Plaintiffs

now allege it means another.  Plaintiffs, for their part, assume that the state

constitutional text "is clear and simple," and does *not* include legal fines, fees,

restitution, and other obligations included as part of the sentence.  Case No. 19-cv-

121, ECF 1 ¶ 39.  All maintain that the Florida Supreme Court's advisory opinion

supports their respective positions.  But there is no definition of "all terms of

sentence" in the state constitutional text.  State law then is unsettled for purposes of

*Pullman* abstention.

    *Second,* resolution of the state constitutional issue could prove dispositive

and avoid the need for this Court to decide Plaintiffs' federal constitutional claims.

*de la Fuente v. Cortes,* 207 F. Supp. 3d 441 (M.D. Pa. 2016), provides a recent

example of just this.  There, an independent candidate for President of the United

States sought emergency relief to secure a place on the Pennsylvania ballot less

than three months before the November election.  *Id.* at 444.  The Pennsylvania

Secretary of State had earlier rejected the candidate's qualifying papers under

Pennsylvania's sore loser provision—a provision intended to prevent losers of

party primaries from running in the general election.  *Id.* at 444, 447.  The

candidate argued that the rejection was inconsistent with the plain text of the sore

loser provision, which the candidate claimed did not apply to presidential

primaries, and "unconstitutionally impose[d] additional qualifications on

candidates for federal office in violation of the Qualification Clause of Article II

and the First and Fourteenth Amendments of the United States Constitution." *Id.* at 445. The district court abstained from deciding the case, explaining "[i]f the state court concur[ed] with [the candidate]'s interpretation of the [sore loser provision], then the state law [would] not apply to [the candidate] whatsoever, and the basis for [the candidate]'s constitutional claim would be eliminated." *Id.* at 450 (internal quotations omitted).[4]

These cases present much the same opportunity. By abstaining this Court provides the Florida courts a chance to explain the scope (and perhaps limits) of the phrase "all terms of sentence," as used in the Florida Constitution. If the phrase *excludes* legal fines, fees, restitution, and other obligations, then the state statute at issue would arguably run afoul of state law, and deciding whether the statute complies with the U.S. Constitution would become unnecessary. If the

---

[4]The Eleventh Circuit's decision in *Siegel v. LePore*, 234 F.3d 1163, 1173–74 (11th Cir. 2000) does not require a contrary result. *Siegal* concerned the standard used for recounts *after* a closely contested presidential election. *Id*. at 1168. The exigency of moment—the need to resolve a national, presidential election— favored the exercise of federal jurisdiction. *Id.* *Siegel* also concerned the use of different voting standards, and whether those different standards complied with the federal constitution's equal protection clause. *Id.* By contrast, the outcome of a presidential election with approaching federal constitutional deadlines is not at stake here. The cases now before this Court also do not concern voting standards; these cases concern felon re-enfranchisement and whether Florida's statutory standard is consistent with Florida's constitutional standard. Finally, here, unlike *Siegel*, the need for a quick resolution favors abstention so that the state courts can definitively say what state law means—when "all terms of sentence" have been satisfied for purposes of Florida law.

phrase *includes* legal fines, fees, restitution, and other obligations, then the federal constitutional challenges would also come to an end.  Section 2 of the Fourteenth Amendment "affirmative[ly] sanction[s]" disenfranchisement of felons and re-enfranchisement consistent with state law.  *See Richardson v. Ramirez*, 418 U.S. 24, 54 (1974); *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) ("The Fourteenth Amendment expressly empowers the states to abridge a convicted felon's right to vote.").

### 2. *Burford/Thibodaux* Abstention

*Burford/Thibodaux* abstention provides a more flexible test to arrive at the same result.  It calls on federal courts to "exercise[e] wise discretion" and "restrain their authority because of scrupulous regard for the rightful independence of the state governments."  *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) (citations omitted).  Exercise of such discretion is especially warranted when federal courts must guess as to the definitive resolution of state law issues by state courts.  *See La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959).  Where state law comes in "federal law clothing," in an attempt to "mask the quintessentially state character of [a] controversy," where state issues predominate, courts must abstain.  *See Johnson v. Collins Ent. Co.*, 199 F.3d 710, 721–22 (4th Cir. 1999) (collecting cases and vacating and remanding appeal from injunction for district court's failure to abstain in a case concerning challenges to a gaming scheme).

As noted above, answering a question of state constitutional law serves as a necessary predicate to resolving the federal constitutional claims now before this Court.  Without resolution of that state issue, Plaintiffs can obtain no meaningful relief.  Resolution of that issue of state constitutional law would require this Court to guess at—predict—how the Florida courts might definitively resolve the matter. Rather than guessing, abstaining and deferring to the Florida courts is more appropriate.  *See generally Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 79 (1997) (discussing advantages of "plac[ing] state-law questions in [state] courts equipped to rule authoritatively on them" and avoiding "friction" with state law); *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974) (same).

### C.     *Constitutional avoidance weighs in favor of dismissal.*

Finally, the doctrine of constitutional avoidance cautions against exercising jurisdiction.  "It is axiomatic that federal courts should, where possible, avoid reaching constitutional questions."  *Allstate Ins. Co. v. Serio,* 261 F.3d 143, 149–50 (2d Cir. 2001).  There is no "doctrine more deeply rooted . . . in the process of constitutional adjudication."  *Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 105 (1944).  As such, "where possible, [federal] courts will render decisions on federal constitutional questions unnecessary by resolving cases on the basis of state law (whether statutory or constitutional)."  *Allstate,* 261 F.3d at 150; *see also*

*Bell v. Maryland,* 378 U.S. 226, 237 (1964) (noting "policy of refusing to decide a federal question in a case that might be controlled by a state ground").

As discussed above, this Court can avoid reaching any federal constitutional questions by allowing the Florida courts to first explain the meaning of the phrase "all terms of sentence," as used in the Florida Constitution.  Florida courts are better-positioned to quickly and definitively interpret the state constitution because, as the Eleventh Circuit recognized in *Florida Family*, the opinions of neither this Court nor the Eleventh Circuit would bind the Florida courts in any subsequent proceeding concerning the phrase.  561 F.3d at 1257; *see also State v. Dwyer,* 332 So. 2d 333, 335 (Fla. 1976) (recognizing same).  A quick and definitive resolution of the state constitutional issue is crucial because, without it, there cannot be meaningful relief.

## IV.   CONCLUSION

Whether it is standing or abstention, this Court should dismiss the cases; constitutional avoidance favors dismissal as well.  Florida courts should first resolve the meaning of the state constitution before this Court decides whether the state statute—purporting to track the intent of the state constitution—violates the federal constitution.

Respectfully submitted on August 2, 2019 by:

*/s/ Nicholas A. Primrose*
JOSEPH W. JACQUOT (FBN 189715)
  *General Counsel*
joe.jacquot@eog.myflorida.com
NICHOLAS A. PRIMROSE (FBN 104804)
   *Deputy General Counsel*
nicholas.primrose@eog.myflorida.com
COLLEN M. ERNST (FBN 112903)
   *Deputy General Counsel*
colleen.ernst@eog.myflorida.com
EXECUTIVE OFFICE OF THE GOVERNOR
400 S. Monroe St., PL-5
Tallahassee, Florida 32399
Phone:  (850)717-9310
Fax:  (850) 488-9810

**Counsel for Governor Ron DeSantis**

BRADLEY R. MCVAY (FBN 79034)
   *General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
   *Deputy General Counsel*
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
gperko@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551


GEORGE N. MEROS, JR. (FBN 263321)
George.meros@hklaw.com
TARA R. PRICE (FBN 98073)
Tara.price@hklaw.com
HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301
Telephone: (850) 224-7000
Facsimile: (850) 224-8832

*Counsel for the Florida Secretary of State, Laurel M. Lee*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that the foregoing complies with the word limit in Local Rule 7.1(F); the foregoing contains 3,917 words, excluding the case style, signature block, and certificates.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 2nd day of August 2019.

/s/     *Mohammad O. Jazil*
Attorney