EXHIBIT A

**August 2, 2019**

**United States District Court**
**for the Northern District of Florida**
**Tallahassee Division**


Kelvin Jones,

        Plaintiffs,

v.                                         Consolidated Case No. 4:19-cv-300

Ron DeSantis, etc., et al.,

        Defendants.
_____


**<u>Expert Report of Daniel A. Smith, Ph.D.</u>**
**<u>Professor and Chair</u>**
**<u>Department of Political Science</u>**
**<u>University of Florida</u>**
**<u>234 Anderson Hall</u>**
**<u>Gainesville, FL 32611-7325</u>**

On Behalf of Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Florida State Conference of the NAACP, Orange County Branch of the NAACP, and League of Women Voters of Florida


_____
**Daniel A. Smith, Ph.D.**

**I.    Background and Qualifications**

1.     My name is Daniel A. Smith. I am Professor and Chair of Political Science at the University of Florida ("UF").  I received my Ph.D. in Political Science from the University of Wisconsin-Madison in 1994.  I served as the Director of UF's Political Campaigning Program (2007-2011), which offers a Master of Arts degree in political science with a special emphasis on political campaigning and practical politics.  I am also President of ElectionSmith, Inc., a consulting firm based in Gainesville, FL, specializing in empirical research on electoral processes in the American states.

2.     For more than two decades, I have conducted research on electoral politics in the American states, focusing on the effect of political institutions on political behavior.  I am widely regarded as a leading expert on voting and elections in the American states.  I have written extensively on electoral processes in the American states, including in Florida, publishing more than 80 articles and book chapters, including many that have appeared in the discipline's top peer-reviewed journals.  I have published two academic books on electoral politics in the American states and I am the coauthor of a leading college textbook, *State and Local Politics: Institutions and Reform*, which discusses felony voting laws in the states.  In addition, I have taught an array of undergraduate and graduate courses focusing on American political institutions and political behavior in the American states.

3.     I have testified before the U.S. Senate and state legislatures on voting and election issues.  A former Senior Fulbright Scholar, I have received numerous grants and awards for my work on campaigns and elections, including from the U.S. Department of State and the American Political Science Association ("APSA"), and am past-President of the State Politics and Policy Section of the APSA.  In 2010, I was the lead author of the "Direct Democracy Scholars" *amicus* brief in *Doe v. Reed*, which was successfully argued by the Attorney General of the state of Washington before the U.S. Supreme Court, and my scholarship has been cited in an opinion by the U.S. Supreme Court.

4.     I have served as an expert in election-related litigation in several states, hired by both plaintiffs and defendants (including serving as an expert for the State of Florida and the State of California defending their election laws). Most recently, I provided written reports and testified at trial for the successful defendant-intervenors in *American Civil Rights Union v. Snipes* (Case No. 16-cv-61474, S.D. Fla.), where the court accepted my opinion in whole, and provided written reports for successful plaintiffs in *DNC Services Corporation et al. v. Lee et al.* (Case No. 4:18-cv-520-RH-MJF, N.D. Fla.)), *MOVE Texas Civic Fund, et. al. v. Whitley, et. al.* (Case No. 3:19-cv-00041, S.D. Tex.), for defendants in the settlement of *Judicial Watch, Inc., Election Integrity Project California, Inc., et al. v. Dean C. Logan, et al.* (Case No. 2:17-cv-08948-R-SK, C.D. Cal.), for successful plaintiffs in *Rivera v. Detzner* (Case No. 1:18-cv-00152, N.D. Fla.), for successful

plaintiffs in the U.S. Court of Appeals for the Sixth Circuit in *Ohio A. Philip Randolph Institute, et al. v. Secretary of State, Jon Husted* (Case No. 2:16-cv-00303, S.D. Ohio) where the court accepted my opinion in whole, for successful plaintiff-intervenors in *Florida Democratic Party v. Scott* (Case No. 4:16-cv-00626, N.D. Fla.), for successful plaintiffs in *Florida Democratic Party v. Detzner* (Case No. 4:16-cv-00607, N.D. Fla.), and for successful plaintiffs in *League of Women Voters of Florida v. Detzner* (Case No. 4:18-cv-00251, N.D. Fla.).

5.      My curriculum vitae (including a list of cases in which I have served as an expert witness) is provided in Appendix A.  I am being paid $400 an hour for work in this case, plus any related expenses.

6.      Counsel for the Plaintiffs in the above-captioned litigation, retained me to provide consultation and analysis on the impact of SB7066, which was adopted by the Florida state legislature in 2019 and signed into law on June 28, 2019 by Governor DeSantis.  In particular, I have been asked to consider how many persons with felony convictions in Florida are eligible to register to vote under SB7066.

7.      In formulating my opinions in this report, I draw on standard sources in political science analyses, including, but not limited to: publicly available data and reports produced by the Florida Department of Corrections ("FDC"), data from the state's county clerks of court and the association of the Florida Court of Clerks & Comptrollers ("FCCC"), reports from the Florida Department of Law

Enforcement ("FDLE"), and information from various state and local agencies, national public interest groups, and scholarly studies.

## II.   Summary of Opinions Offered

8.     As my analysis below details, based on my preliminary analysis of the 48 counties for which the clerks of court have provided LFO data, 13,247 of the 116,318 individuals who have been released in FDC custody or supervision, and 52,861 of the 258,938 individuals with a felony conviction who were not in the FDC custody or supervision but have been released from county custody or supervision, do not have outstanding LFOs.  This means that 66,108 of 375,256, or 17.6% of the individuals for whom I have data, completed payment of their LFOs in the 48 counties that I analyzed. The remaining 309,148 individuals who I identified in the 48 counties, or 82.4% of people for whom I have data, have outstanding LFOs and will be disenfranchised as a result of SB7066.

9.     The State of Florida does not maintain a publicly available unified, up-to-date, centralized database or repository that reports those persons with a felony conviction, who under the conditions established by SB7066, might be permitted to obtain their voting rights in the state.  As such, it is practically impossible to know definitively how many persons in Florida with a felony conviction are eligible to register to vote in Florida under SB7066.  Even if such a database of eligible persons who were convicted of a felony in a Florida court existed, it would likely exclude persons who have a federal conviction, moved to

Florida with an out-of-state felony conviction, or who have already been granted clemency.  Given data limitations, it is also difficult, if not impossible, to establish an individual's outstanding legal financial obligations ("LFOs") or civil liens, much less cross-reference whether an individual has outstanding debt from a felony conviction, in more than one county in Florida or an out-of-state conviction.

10.     Despite the lack of a publicly available unified, up-to-date, centralized database or repository, as discussed herein, I provide general estimates of the number of persons in Florida with felony convictions (excluding out-of-state and federal felony convictions) who are likely permitted under SB7066 to register to vote.  These initial estimates are limited to the number of persons in Florida who have fulfilled the terms of their felony conviction (other than murder or sexual offense), including completion of incarceration and release from parole, probation, or community control/supervision; and have settled their LFOs, that is fines, fees, and/or restitution originally assessed as part of a felony conviction, including, when possible, any civil liens stemming from those LFOs.[1]  My estimates are limited to counties for which I have obtained data to determine any outstanding LFOs a person who has otherwise met the conditions of a felony conviction might still owe.  Across Florida's counties, I also provide estimates of the racial breakdown (by whether someone identifies as black or white) of those persons

---

[1] SB7066 conditions restoration of voting rights on the satisfaction of LFOs imposed "in the four corners of the sentencing document." Fla. Stat. § 98.075(2)(a).  It is beyond the scope of this report to determine whether or how this limitation is applied.

with felony convictions (other than murder or sexual offense) who have been released from FDC or county supervision but still owe outstanding LFOs, as well as those who do not owe any LFOs.  Because of a lack of available data, the estimates in this report do not consider persons with out-of-state and federal felony convictions.

11.     Notwithstanding the nonexistence or inaccessibility of a statewide database available to the public that could be used to determine which persons with felony convictions residing in Florida might be eligible to vote under SB7066, and acknowledging the many inconsistencies and omissions in both state correction and county clerk of courts data that I draw upon for my analysis, in my opinion there is little doubt that SB7066 severely limits the ability of eligible Floridians with a felony conviction to be able to register to vote due to the inclusion in SB7066 of requiring the full payment of outstanding LFOs.  My preliminary analysis estimates that fewer than one-in-five of all persons in Florida with a felony conviction in Florida (other than murder or a sexual offense) and who have completed all terms of their sentence (including parole, probation, or community control/supervision), are likely qualified to register to vote under SB7066 due to outstanding felony-related LFOs.  My preliminary analysis also shows that the rate of black individuals with a felony conviction who are qualified to register to vote is far lower than the comparable rate of white individuals who are qualified to register to vote due to outstanding felony-related LFOs.

### III. Florida Does Not Maintain a Unified, Up-to-Date, Centralized Database or Repository of Persons with Felony Convictions that is Publicly Available

12.      As far as I can determine, the State of Florida does not maintain a publicly available unified, up-to-date, centralized database or repository that compiles information on whether an individual with a felony has completed all the terms of his or her sentence, including parole, probation, or community control/supervision, or has satisfied any LFOs tied to a felony conviction, to say nothing of such penalties when they are converted into civil liens.  As such, even if a person is able to identify all the LFOs he or she owes in one Florida county, he or she might have difficultly determining any outstanding LFOs he or she owes in another Florida county, in another state, or in the federal court system.  As Florida Representative James Grant, a House sponsor of SB7066, stated, this is because "[t]here is no stakeholder in the State of Florida that can serve as a source of truth that somebody completed all terms of their sentence."[2]

13.      Florida's criminal justice system can be characterized as being highly decentralized.[3]  In Florida, as with other states, there is "no national, or even state,

---

[2] *See* Video: Apr. 23, 2019, House Floor Hearing ("April 23 Hearing") at 7:04:00–7:04:07, https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=2443575804_201904 1264.

[3] Florida's criminal justice system can perhaps be best described as a network of local and state agencies that handle criminal cases, beginning with an arrest and ending with the disposition of the case.  "[N]umerous departments and agencies are involved in the system, each with its own protocols and procedures," according to a 2018 analysis conducted by the legislative staff for the Florida state legislature,

database on incidence or payback, and the limited data available on the aggregate assessments by jurisdiction are only sometimes broken down by the form of LFO."[4]  In Florida, as Representative Grant stated at a hearing in the statehouse in February, 2019, relevant data are "spread out all over government," making it nearly impossible for state and local officials to compile the necessary data.[5]

14.     Thus, as my analysis below reveals, given the aforementioned data limitations it is exceedingly difficult, if not practically impossible, to know definitively how many persons in Florida with a felony conviction who have been released from supervision are eligible to register to vote in the state.  This lack of certainty arises because Florida does not maintain a centralized database or repository, and certainly not one that is available to the public.  As such, an individual or third party that works with an individual with a felony conviction to register to vote will have great difficulty determining whether or not the affected person has satisfied all LFOs originally assessed as part of a felony conviction in

and "[t]o gauge the efficiency and effectiveness of the criminal justice system, as well as identify strengths and weaknesses, data must be collected consistently and comprehensively," noting that "[o]pen data also provides transparency and understanding for the public." See HOUSE OF REPRESENTATIVES STAFF ANALYSIS, CS/HB 7071 PCB JDC 18-02, "Criminal Justice Data Transparency," 2017.  Available: https://www.flsenate.gov/Session/Bill/2018/7071/Analyses/h7071a.JUA.PDF (last accessed June 30, 2019).

[4] *See* Marc Meredith and Michael Morse, "Discretionary Disenfranchisement: The Case of Legal Financial Obligations," *Journal of Legal Studies* 2017 (46): 309-338, p. 320.

[5] *See* Video: February 14, 2019, House Comm. Joint Hearing at 1:03:30–1:04:05, https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=2443575804_201902 1160 (last accessed June 1, 2019).

Florida courts, much less completed financial terms of a felony conviction handed down by another state or a federal court.

15.    At best, then, given the conditions set forth in SB7066, it is possible to create only rough estimates of how many persons with a felony conviction in a Florida state court might be eligible to vote.  But even this seemingly simple task, even when limited to those counties in which data on LFOs are available, turns out to be arduous.  Why is such a query so difficult to conduct in Florida?

16.    Based on inquiries to relevant public officials, it is my understanding that the FDC does not maintain a unified, up-to-date, centralized database or repository of persons with felony convictions who are eligible to vote that is, persons with felony convictions who have completed all the terms of their sentence, including parole, probation, or community control/supervision and have satisfied any outstanding LFOs.

17.    It is also my understanding, based on public records requests, that the FDLE does not maintain such a database or repository that is available to the public.[6]  It is possible that the FDLE's Florida Statistical Analysis Center

---

[6] No raw data from the FDLE is utilized in this report, as the FDLE's response to public records requests for data was cost-prohibitive.  The Assistant General Counsel for FDLE responded to a public records request on May 8, 2019, writing, "We received your public record request relating to criminal history information that was e-mailed to FDLE yesterday, 5/8/19.  Due to the nature of the information requested, Florida Statute 943.053(3)(b) provides that for each name that is submitted for a criminal history search would cost twenty four (24) dollars.  Before proceeding further, FDLE wants to relay that the expected invoice for *this requested information would be likely in the million dollar range*, given that less

("FSAC"), which is housed and administered by the FDLE and purportedly

"analyzes criminal justice data" purportedly "serves as a criminal justice resource

for academicians, media, students, and others researching crime in Florida," might

compile necessary data from multiple sources.[7]  But a presentation by the FSAC

notes, quite candidly, that, "Florida has worked on integrating criminal justice

systems for the past 30 years.  We are STILL working on the pieces TODAY..."[8]

18.    In addition, data from the FDLE's Criminal Justice Information

Services ("CJIS") would likely be a valuable source of data for this report, as it

purportedly "is the central repository of criminal history records for the State of

Florida and provides criminal identification screening to criminal justice and non-

criminal justice agencies and private citizens to identify persons with criminal

---

than 42,000 names would be over a million dollars at the statutory rate, and your
request asks for all recorded criminal histories for convicted felons to date.  The
next step, if proceeding, would be calculating a Good Faith Invoice, which as
previously stated would be quite high.  Do you want to continue with the request as
it is written or would you be amending the request?" Email correspondence from
Jason Harrison, "Public Record Request 2019-1467," May 9, 2019 (Emphasis
added).

[7] Florida Department of Law Enforcement, "About Us," available at:
https://www.fdle.state.fl.us/FSAC/About-Us (conducted on July 22, 2019).

[8] It is unclear as to whether the state currently maintains a unified, up-to-date,
centralized database.  According to an undated presentation by the FSAC, the
agency maintains a database called the "*integrated* Crime Research Information
System" ("iCRIS"), which is purportedly "updated monthly from the source
systems," and includes data from the FDC, State Courts, FDLE, and the
Department of Juvenile Justice.  Although the concluding slide of the FSAC's
presentation notes, "Visit our website for updates on this and other projects," with
a website of www.fdle.state.fl.us/fsac, a search (conducted on July 22, 2019) only
produces a link to the undated presentation, available at:
http://www.fdle.state.fl.us/FSAC/Publications/PDF/iCRIS_presentation.

warrants, arrests and convictions that impact employment, licensing, eligibility to purchase a firearm, as well as a variety of criminal justice functions." Data from the FDLE's Uniform Crime Reports ("UCR"), its Computerized Criminal History File ("CCH"), its Offender-Based Tracking Statistics ("OBTS"), and its Automated Training Management System ("ATMS") also might be useful in the effort of individuals or groups to determine the eligibility of persons trying to restore their voting rights under SB7066.[9]

19. It is also my understanding that the 67 Court Clerks and Comptrollers do not maintain a database or repository that identifies all persons in Florida with a felony conviction who might be eligible to vote under SB7066, even those with felony convictions handed down in the clerk's own jurisdiction, as they do not maintain current information about LFOs across counties, or even LFOs that have been converted into civil liens in their own county. As such, individual Florida county clerks of court do not appear to have the capacity on their own to produce the necessary information to determine whether a person with a felony conviction is eligible to vote. There is little chance that clerks will be able to provide such information any time soon. "Due to budget constraints," wrote a staff member

---

[9] On a monthly basis, the FDLE receives dispositions from the clerks of court through the FDLE's LOGAN reporting system. According to a 2015 presentation made by the FDLE's Disposition Section staff to the FCCC, "LOGAN uses a complex set of 'edits' or rules to determine if the data is submitted in the proper format." See "FDLE Update presented to: Florida Court Clerks & Comptrollers, 2015 Summer Conference." Available: https://www.flclerks.com/resource/resmgr/LOGAN.pdf (last accessed July 23, 2019).

from a clerk of the court in response to a public records request, "we lack the resources necessary to fulfill your request as presented," including "data on sentencing," but that "[o]n an optimistic note, much of what you requested will be available through the Florida Department of Law Enforcement in 2021 when, in cooperation with Florida's Clerks, the Legislature-mandated Criminal Justice Transparency statute is scheduled to be fully realized."[10]

20.     For its part, the FCCC, the association of the county clerks of court, maintains what amounts to a statewide database—the Comprehensive Case Information System ("CCIS")—that in theory should be able to assist with such information gathering.  In response to records requests, the FCCC warns, however, that the "official court record in any case is found at the Clerk of Court's office in each county," and that those "records [are] maintained in varying formats based on the age of the records" and that "[t]here exists no statewide electronic database of decades of the official court records and the individual documents they contain."[11] Additionally, the FCCC does "not provide a guarantee that [its] information is entirely complete," as "[o]lder data can be more problematic than more current data as individual Clerks have updated systems and databases over the years and this statewide data comes from those individual systems and databases."[12]  Finally,

---

[10] Email correspondence from Tom Jackson, Communications Officer and Deputy Clerk, Pasco Clerk of the Court, July 18, 2019.
[11] Letter (.pdf) attached to email correspondence from Savannah Sullivan, Communications Manager / Press Secretary, FCCC.  July 17, 2019.
[12] Ibid.

the FCCC notes that its CCIS "database is updated nightly, though individual Clerks of the Court may have varying timetables for inputting their data."[13]

21.     Perhaps it is possible to create such a unified, up-to-date, centralized database, but I have not yet unearthed it, much less a Rosetta Stone that can be used to link various state and local government databases to determine, with certitude, which Floridians who have completed all the terms of a felony sentence meted out in a Florida state court and have settled all LFOs and thus are eligible to register to vote under SB7066.  Even if all the data were readily available, it would take weeks, if not months, for a team of IT specialists to assemble a dynamic database that individuals could query to determine if they were eligible to have their voting rights restored.  And, even if such a database existed of eligible persons convicted of a felony in a Florida state court who have been released from all supervision and have paid off all LFOs, it would most certainly not have information about persons residing in Florida who have completed all the terms of a federal or out-of-state felony sentence, much less if they have any outstanding felony-related LFOs.

22.     Because I have not unearthed such a database or repository, my report draws on and then weaves together an assortment of publicly available data sources in an effort to provide conservative estimates of the number of persons with a felony conviction in Florida who have been released from the custody of the

---

[13] Ibid.

Florida state correctional system (state prisons, county jail, and community control/supervision), and who have met all the terms of their sentence, and distinguishing between those who have paid off and those who still owe LFOs tied to their felony conviction. The data utilized in this report are drawn from recent public records with individual-level data obtained directly from the FDC's OBIS database, individual county clerks of court, as well as from the FCCC. The data are by no means comprehensive. Currently, in addition to drawing on the FDC's OBIS database, the report utilizes data obtained from 48 county clerks of court.

23. There are certainly limits to the estimates, all of which are conservative, that is, they are biased *against* inflating the number of persons with felony convictions who are likely eligible to have voting rights under SB7066. I have obtained no data from other states' criminal justice systems or the federal court system. The data obtained directly from the county clerks of court are by no means immune from errors. The clerks of court data obtained from the FCCC, working on behalf of many of the county clerks of court, have multiple formats regarding a felony conviction, different conventions of recording length of sentences and LFOs, and different ranges of dates of felony convictions included in their own local databases. There are also numerous instances of missing data, data entry errors, and inconsistent or illogical data entries, all of which complicate the analysis. Furthermore, there is no unique identification number to definitively link individuals across these various data sources.

**A.    Felony Conviction Data from the FDC's OBIS Database**

24.    My empirical analysis relies on a July 2019 snapshot of a database maintained and made available to the public by the FDC, the Offender Based Information System ("OBIS").[14]  The FDC states on its website that it "updates [OBIS] information regularly, to ensure that it is complete and accurate; however this information can change quickly."[15]  For the FDC, regular updates are every three months; as a result, the quarterly snapshots of the OBIS database made available for public download likely introduce error into the findings in this report as some offender data are likely outdated.  Furthermore, the FDC's OBIS database only includes information for persons released since October 1, 1997.[16]  The OBIS data used in this report are from the FDC's July 2019 snapshot.

25.    The FDC acknowledges that "information in this [OBIS] file may not reflect the true current location, status, release date, or other information regarding an inmate."[17]  Furthermore, the FDC explicitly "makes no guarantee as to the

---

[14] FDOC_Jul_2019.mdb database downloaded on July 14, 2019.  Department of Corrections Offender Based Information System (OBIS), available for download at: http://www.dc.state.fl.us/pub/obis_request.html.  The OBIS database is made available purportedly "to aid in the recording of the offender's day-to-day activities as well as to record historical data" (State of Florida, Auditor General, Report No. 2014-202, June 2014, Department of corrections Offender Based Information System (OBIS), "Information Technology Operational Audit," available: https://flauditor.gov/pages/pdf_files/2014-202.pdf.

[15] See Florida Department of Corrections, "Public Records Requests for the OBIS Database," available (as of July 22, 2019): http://www.dc.state.fl.us/pub/obis_request.html.

[16] Ibid.

[17] Ibid.

accuracy or completeness of the information contained herein," that is, in its OBIS database, which likely introduces additional error into the findings in this report.[18]

26.    Limitations aside, the FDC's OBIS database contains vital information in any effort to estimate how many persons with a felony conviction in Florida—at least those who have been in the custody of the FDC—might be eligible to register to vote under the conditions of SB7706.  Most notably, the OBIS database includes a unique six-digit ID number that identifies a person with a felony conviction in Florida who currently is or had been under the control or supervision of the FDC.[19]

27.    Specifically, in this report, I utilize the FDC's OBIS database to identify all persons with a felony conviction in the Florida state corrections system who have been *released* from the FDC's custody that is, they have completed the terms of their sentences, including parole, probation, or community control/supervision.[20]  I then utilize the FDC's OBIS database to identify all

---

[18] Ibid.

[19] It is my understanding that persons incarcerated or supervised by the Florida Department of Corrections are issued a unique six-digit identification number after receiving a commitment document from the 67 clerks of court.

[20] Michael Morse, in a Twitter post on July 10, 2019, speculated that the FDC's OBIS database available for public download has "an enormous missing data problem." "Although the department of corrections has readily provided individual-level data on almost all persons released from state prison, they have refused to provide data on those released from state probation, a numerically much larger group.  Instead, they only provide data on persons currently on probation." Morse's tweet available at: https://twitter.com/MichaelLMorse/status/1148918925071175680 (as of July 19, 2019).

persons with a felony conviction in the Florida state corrections system who have completed the terms of their sentences, including parole, probation, or community control/supervision, who were convicted of a felony *other than* murder or a sexual offense as defined by SB7066. That is, my analysis includes only those individuals who have completed the terms of their felony sentence and who were *not* convicted of murder or a sexual offense as defined by the statute Governor DeSantis signed into law.[21]

28.     Unfortunately, the FDC's OBIS database—at least the database that is available for public download—does not allow me to determine whether these individuals who have completed their sentence still owe any outstanding LFOs for a Florida state felony conviction. This is because LFOs are not contained within the FDC's OBIS database, at least the database that is available to the public for download. The publicly available OBIS database also does not include reliable information about persons with felony convictions who were not placed under FDC's custody, but instead were in county jail, probation, or community control/supervision.

29.     The FDC's OBIS database also does not indicate if an individual was convicted of a felony that permits them to have voting rights under SB7066, nor does it include any information about outstanding LFOs an individual may owe.

---

[21] At this time, I have not attempted to determine whether an individual with a felony conviction who appears to be eligible to register to vote under SB7066 has had their voting rights restored through the traditional clemency process or has registered to vote in Florida.

Furthermore, the OBIS database does not include outstanding LFO information about persons released from the FDC's custody who have a federal or an out-of-state felony conviction. Although I have conducted an extensive search, I have found no evidence that a unified, up-to-date, centralized database or repository exists that is housed with the FDC, and I certainly have not unearthed a unified, up-to-date, centralized database or repository that is available to the public for download or to query.

**B.    Felony Conviction Data and Outstanding LFOs from Florida's Court of the Clerks and Comptrollers and FCCC**

30.    Since no state agency in Florida appears to maintain a unified, up-to-date, centralized database or repository of persons with a felony conviction who are eligible to register to vote under SB7066 that is available to the public, it is necessary to draw on multiple data sources to generate credible estimates of the eligible population of persons with felony convictions in the Florida state corrections system who might be able to gain their voting rights.

31.    As mentioned above, the FDC's OBIS database includes information about persons with felony convictions in the Florida state corrections system who have been discharged from the FDC's custody and who have met all the terms of their sentence. However, the FDC's OBIS database available for public download *does not* include data on whether these individuals have any outstanding felony-related LFOs. As far as I can determine, the FDC's publicly available OBIS

database for download also does not contain any information about persons with a felony conviction who were never sentenced to FDC custody or supervision.

32.     As such, my analysis also relies on data maintained by each of the county clerks of court, or alternatively, by data maintained by the county clerks of court shared through their association, FCCC.  Between June 4, 2019 and July 19, 2019, a team of researchers working in partnership with the ACLU-FL made public records request to all 67 county clerks of court for individual-level data for every person in their county, from 1980 to the present, with a felony conviction (guilty or no contest plea).  Information from all available fields maintained in a county's Case Management System ("CMS") was requested, including full name, Department of Corrections ("DC") number, the FDLE's OBTS number, address, date of birth, gender, race, charges (offense category), convictions (prior and current convictions within the county), current status of supervision (parole, probation, release, etc.), any outstanding legal financial obligations (fines, fees, restitution, civil liens, other costs, etc.), and expected date of completion of supervision (or sentencing effective date and the length of incarceration or community supervision).

33.     To my knowledge, the county clerks of court are not required to have an FDC number for a person in their CMS database; it is usually only provided when a county clerk of court receives notice of a violation of probation.  The CMS database does include an individual's Uniform Case Number ("UCN"), at least

since January 1, 2003 after such a requirement was ordered in 1998 by the

Supreme Court of Florida.  Each UCN is a unique alpha/numeric string of

characters that can be used to identify where a case was filed; the year in which the

case was filed; the court division/case type where the case was filed; the sequential

number denoting the case; an identifier for multiple parties or defendants involved

in a case; and the branch location where the case was filed.[22]

34.     It is my understanding that most, if not all, of the clerks of court

provide data from their CMS to the FCCC, creating what amounts to a statewide

database that is maintained by the FCCC, the CCIS.[23]  The FCCC considers the

CCIS "as an 'index' to those locally held records" by the county clerks of court

that "goes back to the year 2000".[24]  In theory, by merging at the individual-level

the FDC's OBIS data with data maintained by the 67 county clerks of court or the

FCCC's CCIS, one could identify all persons in the Florida criminal justice system

with a felony conviction (which would not include Florida residents with out-of-

state or federal convictions) who have met all the terms of their sentence across the

state's 67 counties—including those who were never supervised by the FDC and

those who were released from the FDC's custody—and then identify those who

---

[22] *See* Supreme Court of Florida, "Uniform Case Numbering System," available at: https://www.flcourts.org/content/download/219191/1981092/AO_Uniform_Case_ Numbering_12-03-98_amended.pdf (last accessed July 23, 2019).

[23] See FCCC's "Comprehensive Case Information System," available at: https://www.flccis.com/ocrs/login.xhtml (last accessed July 23, 2019).

[24] Letter (.pdf) attached to email correspondence from Savannah Sullivan, Communications Manager / Press Secretary, FCCC.  July 17, 2019.

have fulfilled all their felony-related LFOs and were thus eligible to vote under SB7066. In theory, one could also identify all persons who have an outstanding LFO from a felony conviction, across the state's 67 counties, who otherwise have met all the terms of their sentence, but who would be prevented from being able to register to vote under SB7066.

35.     In practice, as with any project dealing with big data from multiple, disparate sources, caveats abound. When attempting to link across big databases that lack a unique identifier, there is always a trade-off between coverage and precision.[25] Generating false positives—that is, making a determination that a given condition has been fulfilled when it actually has not been fulfilled—is a pitfall in any effort to match records using an algorithm across large databases. This includes efforts to link the FDC's OBIS database from July 2019, with data maintained by the county clerks of court or the FCCC containing information about LFOs, because data containing information about LFOs obtained from the county clerks of court do not consistently include an individual's six-digit Department of Corrections number. As such, any matching exercise is conditioned on the reliability of the underlying data as well as the matching algorithm. In this case, there will undoubtedly be some matching errors when linking individuals from the FDC's OBIS database with individuals in the databases maintained by the

---

[25] Stephen Ansolobehere and Eitan Hersh, "Validation: What Big Data Reveal about Survey Misreporting and the Real Electorate," *Political Analysis* 20(2012): 437-59.

county clerks of court by changing all text in both databases to lowercase, removing all punctuation, concatenating a string consisting of a person's first name, last name, name suffix, date of birth, race code, and sex code, and then matching the concatenated strings across both datasets. Errors in any matching exercise can result from data that are temporally asynchronous across the various data sources, as well as from issues related to missing data, coding errors in the raw data, inconsistent and illogical data entries, and truncated data.

36. That said, as of the date of this report, I am able to provide preliminary estimates by analyzing individual-level felony convictions and LFO data from 48 of the 67 clerks of court, and by linking such county data to inmate release data from the FDC's OBIS database.[26] In five cases, the analysis relies on county clerk of court data obtained directly from the county clerks.[27] Other county

---

[26] The 48 counties for which at the time of this report I have county clerk of the courts data are: Alachua, Baker, Bradford, Calhoun, Charlotte, Citrus, Collier, Columbia, DeSoto, Dixie, Duval, Flagler, Franklin, Gadsden, Gilchrist, Hamilton, Hardee, Hendry, Highlands, Holmes, Indian River, Jackson, Jefferson, Lafayette, Lake, Levy, Liberty, Madison, Marion, Monroe, Nassau, Okaloosa, Okeechobee, Orange, Palm Beach, Pasco, Putnam, Santa Rosa, Sarasota, Seminole, St. Lucie, Suwannee, Taylor, Union, Volusia, Wakulla, Walton, Washington.

[27] For example, Collier County responded to a public records request on June 13, 2019, with data from its Case Management System ("CMS") dating back to 1991. The Collier County Circuit Court and Comptroller, like other counties' clerks of court, allows individuals to make data queries available via a web portal, available at https://cms.collierclerk.com/cmsweb#!/search-results. (Last accessed on June 30, 2019). Collier County provides a disclaimer to those using the website: "Public Records Search Disclaimer: The information contained in this website may be out of date, or may contain errors or omissions. All information is provided without warranty of any kind. The Clerk hereby disclaims all warranties with regard to the information contained in this website. The Clerk shall not be held

clerks of court data were provided by the FCCC, on behalf of participating counties.[28]  It is my hope to be able to analyze additional records obtained from all 67 county clerks of court in subsequent reports.

37.     At this time, every effort has been made to obtain additional county-level court data with information about an individual's LFOs if they are in the FDC's OBIS database, or if the individual is only in a county's database.  A handful of the 67 county clerks of court never responded to multiple public records requests made in early June 2019 for the aforementioned data.  A couple county clerks of court continue to work on fulfilling public records requests.  And roughly 40 county clerks of court have responded directly or indirectly to public records

---

liable under any circumstances, for any damages including, but not limited to, direct, indirect, incidental, special, or consequential damages of data, profit, use; or other use or purpose incurred by a site user or by a third party and arising from the use of information contained in this website or contained in a website that is hyperlinked from this site." *See* Collier County Clerk of the Circuit Court, "Disclaimer," available at: https://www.collierclerk.com/disclaimer (last accessed June 30, 2019).  St. Lucie County responded to a public records request on June 25, 2019, with data from its CMS going back to 2008.  Online, the St. Lucie County Circuit Court and Comptroller allows individuals to make data queries available via a web portal, available at: https://courtcasesearch.stlucieclerk.com/BenchmarkWebExternal/Home.aspx/Search. (Last accessed on June 30, 2019).  St. Lucie County does not provide a disclaimer for those using its website portal.  Additional data was provided by the Citrus, Lake, and Sarasota clerks of court.  Alachua and Marion provided data, but data for the two counties was also provided by the FCCC.  Data provided by the Lee County Clerk of Court could not be processed at the time of this report.
[28] The first wave of county clerks of court data provided via the FCCC arrived on July 19, 2019; a second wave via the FCCC arrived on July 26, 2019.

requests by referring requests for information to FCCC, which has provided some

of the requested data that are maintained in its CCIS.[29]

38.     It is my understanding that most of the clerks of court maintain

individual CMS data that can be linked to the CCIS, which is maintained by the

FCCC.[30]  It is also my understanding that the CCIS may possibly be a secured

---

[29] For instance, the Franklin County Clerk of Court responded to the public records request on June 10, writing, "[m]y office is unable to provide the data you are requesting and that data is not contained within a specific report within my office. I understand that the Florida Court Clerks & Comptrollers Association has been communicating with ACLU and is looking into ways to assist with the request.  I will stay in touch with FCCC and work with them as they are my vendor for criminal records maintenance." (Email correspondence from Franklin Clerk of Court, Marcia Johnson, June 10, 2019).  The Clerk of Court from Volusia County responded to the public records request on June 11, writing, "[w]e were informed by our statewide association, the FCCC, that a statewide solution for providing you the data you're looking for is being worked on.  That would be the best most affordable solution if they are able to produce your report statewide.  I'm going to assume what you're looking for from us will be satisfied by what you receive from FCCC.  Let me know if something changes with that plan." (Email correspondence from Volusia Clerk of Court, Laura E. Roth, June 11, 2019).  The Clerk of the Court from Putnam County responded to the public records request on June 12, writing, "The Florida Clerks of Courts and Comptrollers (FCCC) group is working with the ACLU to determine if there is a way to pull the information requested of the Clerks from a consolidated database the FCCC manages.  We are all waiting for guidance from them.  As soon as I hear from the FCCC, I will let you know what the next steps are." (Email correspondence from Putnam Clerk of Court, Sherry Mehl, June 12, 2019).  The Clerk of Court from Lake county responded to the public records request on June 13, writing, "My office is currently analyzing your request to determine the best method to fulfill your request to the extent we have the records available.  For example, we do not track restitution, nor do we track prior convictions or expected dates of completion of supervision.  Further, our case maintenance system does not include data back to 1980." (Email correspondence from Lake Clerk of Court, Gary Cooney, June 13, 2019).

[30] "Established in 2002 as an initiative to view court case information across county and circuit lines," the CCIS was "[d]eveloped and maintained by Florida's Clerks, pursuant to s. 28.24(12)(e), Florida Statutes," and "provides a method to

single-point of search for all statewide court case information. Among other

information, the CCIS includes court case information, including criminal history

records and inmate data.[31] Unfortunately, at this time, I have not received data

through public records requests from roughly one-third of the clerks of court,

including some that have indicated that they are working with the FCCC to provide

their data via the FCCC's CCIS database.

## IV.    Data and Analysis

39.    As mentioned above, although I have data from the FDC's OBIS

database of those persons with a felony conviction who have been released from

the FDC's supervision from 1997 through July 2019, the FDC's OBIS database

available for public download does not provide data on those released from state

probation who did not serve a custodial sentence; more importantly, it does not

---

share and report information related to all court cases maintained by the Clerks." It
[p]rovides a statewide methodology for data sharing among the judiciary, criminal
justice and information user agencies," and is "[s]earchable by name or case
number, through a secured point of access, and is available 24/7. *See* FCCC,
"Comprehensive Case Information System (CCIS)," August 22, 2017 available:
https://www.flclerks.com/resource/resmgr/New_Clerk_Academy/2017_Technolog
y/8-_CCIS_3.0.pdf.

[31] The analysis in this report is conservative, as it eliminates from consideration all
persons who were found guilty or pled no contest to felony charge, but who
received a sentence of "adjudication withheld," thus avoiding a formal felony
conviction. For more information on an "adjudication withheld" sentence in
Florida, *see* Christopher Uggen, Ryan Larson, and Sarah Shannon, "6 Million Lost
Voters: State-Level Estimates of Felony Disenfranchisement, 2016," *The
Sentencing Project*, October 6, 2016. Available:
https://www.sentencingproject.org/publications/6-million-lost-voters-state-level-
estimates-felony-disenfranchisement-2016/.

include any information about an individual's outstanding LFOs.  As such, my

empirical analysis is constrained by the fact that I have data on LFOs for those

with felony convictions from 48 of the 67 county clerks of court who have

provided data from their CMS databases directly or through the FCCC's CCIS

database.[32]  The empirical analysis of persons with felony convictions who have

been released from custody and supervision but owe outstanding LFOs tied to a

felony conviction proceeds in five sections.

A.     **Estimates of the Number of Persons with Felony Convictions in the 48
       County Clerks of Court Databases *not in* the FDC's OBIS Database,
       who are Otherwise Eligible to Register to Vote under SB7066, with $0
       LFOs, by Race**

---

[32] Because of the nature of the data obtained by the county clerks of court either
directly or via the FCCC, numerous assumptions must be made in order to
calculate estimates for the 48 counties.  The individuals included in the following
analysis satisfy the following requirements, in that they: 1)  are not incarcerated in
Florida state prison, to the extent that this can be determined; 2) were adjudicated
guilty and did not have that adjudication withheld (assuming that a value of "W" in
the data field c_action, when it exists, means adjudication withheld); 3) did not
commit murder or a sex crime, based on the word "murder" or "sex" in an
appropriate data field.  Any felon with multiple felonies in a single county, on
possibly different dates, is excluded from this report if any of the person's felonies
is a murder or a sex crime; 4) have a release date prior to or on June 30, 2019 with
release date calculated as sentence effective date plus time in jail plus time
probation plus time community control, to the extent that a county data file
contains information on these details; 5) have LFOs that are zero or a positive
balance due to a county office (that is, individuals with negative balances are
discarded); 6) have a least one valid sentence effective date, even if the person has
a positive court balance (it is not possible to estimate release dates when no
sentence effective dates are provided); and 7) have a least one valid sentence
length variable for a non-monetary sentence (as it is not possible to estimate
release dates when no sentence length information is available).  Individuals who
do not satisfy the above requirements are not part of the analysis that follows.

40.     Figure 1 provides a visualization across the 48 Florida counties for which I have available data of the fraction of black and the fraction of white persons with felony convictions not in the FDC's OBIS database in each county who owe an estimated $0.00 (zero) LFOs for a felony conviction, and who are otherwise eligible to register vote—that is, they have fulfilled the terms of a felony conviction (other than murder or sexual offense), and have met all the conditions of their parole, probation, or community control/supervision.  Because I have not received data from all 67 clerks of court, I am unable to rule out whether these individuals might have a felony conviction in another county, and might still owe LFOs in another county, particularly if they are not included in the FDC's OBIS database.[33]

---

[33] Perhaps not surprisingly, numerous data issues arose when compiling the data for this analysis.  For example, clerks of court data provided by the FCCC describe sentence lengths in a field named sent_conf_len.  This field should be six digits long (years, months, days).  However, this is not always the case.  In some counties (e.g., Gadsden) there are spaces in the sent_conf_len field.  To deal with this, all spaces are removed from sent_conf_len.  Then, any values of sent_conf_len that are fewer than six digits long are prepended with zeroes.  Lastly, all data rows that have letters in sent_conf_len are dropped from the analysis.  Similarly, efforts to calculate the balance due for a person's LFO identified four counties with unique formats.  For these counties, balance due per person with a felony conviction is determined based on the idiosyncrasies of the county's data format.  Although the counties that provided data via the FCCC have similar data formats, it appears that the individual county clerks of court employed varying rules for how they maintained their data files.  This variance complicates determining LFOs balance due per person with a felony conviction.  For the FCCC counties, the approach used here is as follows.  For any crime incident, corresponding to a row or set of rows associated with a single UCN number, the incident's balance due amount is the minimum value across all of the rows' values of tot_amt_due and tot_amt_pd (total amount due minus total amount paid).  This is conservative since it uses

41.     All the circle markers in Figure 1 (which are scaled proportionately to the number of matched black and white individuals in each county) represents a Florida county.  The diagonal black line is fixed at a 45° angle.  The X-axis (horizontal), labeled "Fraction zero balance, Black individuals with a felony conviction," is the percentage (from 0 to 30) of black individuals in a county with a felony conviction who have met all the terms of their felony sentence in the county, and who owe $0 LFOs in the county, so are eligible to register to vote under SB7066.  The Y-axis (vertical), labeled "Fraction zero balance, White individuals with a felony conviction," is the fraction (from 0 to 30) of white individuals in a county with a felony conviction who have met all the terms of their felony conviction in the county, and who owe $0 LFOs in the county, and are thus eligible to register to vote under SB7066.

42.     The diagonal 45° line allows us to easily visualize how white persons with qualifying felony convictions who have met the terms of their sentence are more likely to have no outstanding LFOs compared to comparable black persons in the 48 counties.  With one exception (Lafayette County), every circle marker lies above the 45° line.  That is, in 47 or the 48 counties—from the urban Orange County to the rural northcentral Dixie County, from the Gulf Coast Sarasota County to the northeast Nassau County—black individuals are more likely than

minimum values of total amount due minus the total amount paid.  Finally, for the purposes of this report, all types of probation (regular probation, drug offender probation, and administrative probation) are assumed to be equivalent.

white individuals to owe some amount of LFOs after having met all the terms of their sentence.  In numerous counties, the rate of eligible white individuals who owe $0.00 LFOs—and thus are eligible to gain voting rights—is at least twice the rate of eligible black individuals.  For example, in Sarasota and Palm Beach counties, fewer than one in 10 black individuals who have otherwise met all the terms of their sentence have paid off all of their LFOs, whereas more than one in five comparable white individuals have done so.  In Indian River County, fewer than one in 20 black individuals with a felony conviction who have met all the terms of their sentence owe $0 LFOs; one in 10 comparable white individuals have done so.

**Figure 1: Fraction of Black and White Individuals in the 48 Counties
with Estimates of $0 LFOs Owed who are *not in* the FDC's OBIS Database,
by County**



**B.    Estimates of LFOs Owed by Individuals with Felony Convictions in the
48 Counties *not in* the FDC's OBIS Database, who are Otherwise
Eligible to Register to Vote under SB7066, by Race**

43.    For the 48 counties for which I have obtained data, it is possible to

provide estimates of the outstanding amount of LFOs owed by black and white

individuals with eligible felony convictions.  The following estimates are based on data received directly from the county clerks of court or on their behalf as provided by the FCCC.  The following table includes data for individuals with felony convictions dating as far back to 1997, although most of the data from the counties dates back only to the early 2000s.  The summary information about LFOs owed by black and white individuals with eligible felony convictions as recorded by the clerks of courts (either directly or via the FCCC) rely on data for people that: (1) are found in each county's CMS database; (2) are not found in the FDC's OBIS database; (3) were not convicted of murder or a sexual offense as defined by SB7066; and (4) have met the terms of their felony sentence as of July 2019. Table 1 includes all persons across the 48 counties who do not owe any LFOs related to a felony conviction in the county, according to each county clerk of court, as well as the number of persons in graduated categories of dollar amounts of LFOs for those who otherwise are eligible to register under SB7066.  In addition, I provide estimates of the racial breakdown of those who fit these conditions over this timeframe.

44.     Overall, across the 48 counties, I calculate that there are an estimated 258,938 persons with felony convictions who are *not* included in the FDC's OBIS inmate release database, were not convicted of murder or a sex crime under SB7066, had a release date prior to June 30, 2019, and have met all the terms of the felony sentence.  Of these individuals, *roughly one fifth* have paid off all their

LFOs related to a felony offense—only 52,861 (20.4%). Table 1 provides a breakdown, by an estimated minimum balance due, for these 258,938 individuals who have otherwise met all the terms of their felony sentence and who are not in the FDC's OBIS database. It also lists the ranges of outstanding LFOs tied to felony conviction still owed by the more than 206,000 individuals across the 48 counties, broken down by race (black and white). Overall, I estimate that only 20.4% of these individuals owe $0 in LFOs tied to their felony conviction.

**Table 1:**
**Estimates of Balance Due of Eligible Persons with Felony Convictions,**
***not in* FDC's OBIS Database, across 48 Florida Counties, by Race**

|  | Balance due, All | | Balance due, Black | | Balance due, White | |
|---|---|---|---|---|---|---|
|  | Count | % | Count | % | Count | % |
| $0 | 52,861 | 20.4 | 11,501 | 13.5 | 39,262 | 23.6 |
| Up to $100 | 14,819 | 5.7 | 3,756 | 4.4 | 10,638 | 6.4 |
| Up to $250 | 10,387 | 4.0 | 3,157 | 3.7 | 6,946 | 4.2 |
| Up to $500 | 30,153 | 11.6 | 10,456 | 12.3 | 18,853 | 11.3 |
| Up to $1,000 | 60,720 | 23.4 | 21,816 | 25.7 | 37,142 | 22.3 |
| Up to $5,000 | 79,722 | 30.8 | 30,506 | 35.9 | 47,223 | 28.4 |
| Up to $10,000 | 5,794 | 2.2 | 2,312 | 2.7 | 3,339 | 2.0 |
| > $10,000 | 4,482 | 1.7 | 1,406 | 1.7 | 2,941 | 1.8 |
| Total | 258,938 | 100.0 | 84,910 | 100.0 | 166,344 | 100.0 |

45.     As Table 1 reveals, of those who otherwise have met all the terms of their felony sentence in the 48 counties, only 13.5% of black individuals, compared to 23.6% of white individuals, are estimated to be eligible under SB7066 to exercise their voting rights because they have paid off all LFOs originally assessed

as part their felony convictions. Black individuals are also more likely than white individuals to owe between $250 and $10,000 in LFOs in the 48 counties.

46.     In my opinion, it is clear from Table 1 that across the 48 counties for which data from the county clerks of court are available, black individuals who have otherwise met all the terms of their felony conviction are significantly less likely to be able to gain voting rights under SB7066, as compared to similar white individuals, because of outstanding LFOs tied to their felony conviction that they owe in a county.

**C.     Estimates of the Number of Individuals with Felony Convictions *in* the FDC's OBIS Database and the 48 Counties, who are Otherwise Eligible to Register to Vote under SB7066, with $0 LFOs, by Race**

47.     By linking an individual in the FDC's OBIS inmate release database to that same individual in the 48 county clerks of court,[34] it is possible to provide

---

[34] Unfortunately, Florida county clerks of court do not systematically include a unique FDC identification number for individuals in their CMS databases for those who were at one time under the supervision of the FDC. As the Director of Community Relations and Outreach Office of the Clerk of the Circuit Court & Comptroller of Collier County, Jay Schlicter, helpfully pointed out in response to a query about the exclusion of the FDC's unique ID number in its CMS database, "We are not required to have the DC number. It is only provided when we get a violation of probation. We add them at that time to be helpful for other agencies. We only began doing that a few years ago. The case number is the UCN number." (Email correspondence from Jay F. Schlicter, June 14, 2019). As such, individuals included in the FDC's OBIS and the county clerks of court CMS datasets are matched with an exact match technique that changes all text in both databases to lowercase, removes all punctuation, concatenates a string of a person's first name, last name, date of birth, race code, and sex code, and then matches the concatenated strings across both datasets.

additional estimates of the number of persons who were convicted of a felony (other than those convicted of murder or a sexual offense as defined by SB7066) in each of the 48 counties, who have completed all the terms of their felony sentence under the authority of the FDC, but who are not eligible to register to vote under SB7066 because they owe LFOs tied to a felony conviction.

48.     Drawing on inmate release data from the FDC's July 2019 OBIS database, merged with LFOs data drawn from the 48 Florida counties for which I have data, Figure 2 provides a visualization of the fraction of black and white individuals in each county who are in the FDC's OBIS inmate release database and who owe $0.00 (zero) LFOs for a felony conviction in that county.  Assuming these individuals have completed their supervision and paid off all LFOs for any other felony convictions in another county that did not reach the FDC, or a federal or out-of-state felony conviction, these individuals are eligible to vote under SB7066.  In addition to the standard caveats, not all the individuals included in the FDC's OBIS inmate release database are represented in this figure, as the publicly available OBIS database from the FDC does not provide information about LFOs, making one reliant on the county clerks of courts for this financial information.

49.     Each circle in Figure 2 represents a Florida county.  The diagonal black line is fixed at a 45° angle.  The X-axis (horizontal), labeled "Fraction zero balance, Black individuals with a felony conviction," is the fraction (from 0 to 30) of black individuals in a county with a felony conviction who have met all the

terms of their felony conviction according to the FDC's OBIS database, and who owe $0 LFOs in the county, according to data provided by the 48 clerks of court. The Y-axis (vertical), labeled "Fraction zero balance, White individuals with a felony conviction," is the fraction (from 0 to 30) of white individuals in a county with a felony conviction but who have met all the terms of their felony conviction in the county, and who owe $0 LFOs in the county, and are thus eligible to register to vote.

50.    The diagonal 45° line allows us to easily visualize how white persons with qualifying felony convictions according to the FDC's OBIS inmate release database, who have met the terms of their sentence, are more likely to have no outstanding LFOs compared to comparable black persons across the 48 counties for which I have obtained data from the county clerks of court that can be linked to the FDC's OBIS records.  Nearly every circle (which are scaled proportionately to the number of matched black and white individuals in each county) lies above the 45° line.  That is, in all but four counties (Calhoun, Liberty, Madison, and DeSoto counties), black individuals who have been supervised through the FDC are more likely than white individuals to owe LFOs.  In several counties (for example, Dixie, Franklin, Hardee, Indian River, Levy, Monroe, and Suwannee), the rate of eligible white individuals who have been released from FDC supervision and who do not owe any LFOs—and thus are eligible to gain their voting rights—is at least twice the rate of eligible black individuals.

**Figure 2: Fraction of Black and White Individuals in the 48 Counties with Estimates of $0 LFOs Owed who are *in* the FDC's OBIS Database, by County**



## D. Estimates of LFOs Owed by Individuals with Felony Convictions in the 48 Counties and *in* the FDC's OBIS Database, who are Otherwise Eligible to Register to Vote under SB7066, by Race

51. By linking individuals in the FDC's OBIS inmate release database to

an individual's LFO status as indicated by data provided by the 48 county clerks of

court,[35] it is possible to provide additional estimates of the number of persons who were convicted of a felony (other than those convicted of murder or a sexual offense as defined by SB7066) in each of the counties, who have been released from custody and supervision, and who are eligible to register to vote under SB7066 because they have zero ($0.00) balance for LFOs tied to a felony conviction.

52.    It is also possible to provide estimates of the number of persons across the 48 counties who are prohibited under SB7066 from registering to vote, even though they have been released from custody and supervision, because they have outstanding LFOs tied to a felony conviction. Furthermore, it is possible to provide estimates of the racial breakdown of black and white individuals across the 48 counties who have a felony conviction, who have been released from FDC custody—that is, they completed all the terms of their sentences, including parole,

---

[35] Unfortunately, Florida county clerks of court do not systematically include a unique FDC identification number for individuals in their CMS databases for those who were at one time under the supervision of the FDC. As the Director of Community Relations and Outreach Office of the Clerk of the Circuit Court & Comptroller of Collier County, Jay Schlicter, helpfully pointed out in response to a query about the exclusion of the FDC's unique ID number in its CMS database, "We are not required to have the DC number. It is only provided when we get a violation of probation. We add them at that time to be helpful for other agencies. We only began doing that a few years ago. The case number is the UCN number." (Email correspondence from Jay F. Schlicter, June 14, 2019). As such, individuals included in the FDC's OBIS and the county clerks of court CMS datasets are matched with an exact match technique that changes all text in both databases to lowercase, removes all punctuation, concatenates a string of a person's first name, last name, date of birth, race code, and sex code, and then matches the concatenated strings across both datasets.

probation, or community control/supervision—but who may or may not have outstanding LFOs tied to a felony conviction.

53.     Overall, across the 48 counties, I calculated there are an estimated 336,108 individuals in the FDC's OBIS inmate released database who are potentially eligible to gain voting rights.  These individuals were adjudicated guilty, were under the control of the FDC, were not convicted of murder or a sex crime under SB7066, and starting in 1997 had been released from supervision.  By linking these individuals to the CMS databases provided by 48 clerks of court, it is possible to approximate how many have outstanding LFOs tied to a felony conviction.  Table 2 provides the count and percentage, overall and by race (black and white), of the 116,318 individuals matched from the FDC's OBIS inmate released database to data provided by the 48 county clerks of court, broken down by each range of estimated minimum outstanding LFOs, and by the race of the individual (black and white).[36] Overall, I estimate that only 11.4% of these individuals owe $0 in LFOs tied to their felony conviction.

_____

[36] As noted above, matching records across the FDC's OBIS and the 48 clerks of court data is based on an exact match between first name, last name, name suffix, date of birth, race code, and sex code.  Note, too, that records with missing first names are not part of the match, and that person with a felony conviction who is released from the FDC but who committed a crime in two or more counties, and thus may have LFOs owed in two or more counties, is treated as two separate individuals.  Because of data reliability concerns, those with sentence imposed dates prior to 1960 are excluded, too.  Roughly 10% of matched individuals in the FDC's OBIS inmate release database with the county LFOs data were in more than one of the 48 counties and had positive LFOs in more than one county.

**Table 2:**
**Estimates of Balance Due of Eligible Persons with Felony Convictions,**
*in* **the FDC's OBIS Database, across 48 Florida Counties, by Race**

|  | Balance due, All | | Balance due, Black | | Balance due, White | |
|---|---|---|---|---|---|---|
|  | Count | % | Count | % | Count | % |
| $0 | 13,247 | 11.4 | 3,511 | 8.0 | 9,678 | 13.5 |
| Up to $100 | 5,143 | 4.4 | 1,687 | 3.8 | 3,446 | 4.8 |
| Up to $250 | 3,527 | 3.0 | 1,334 | 3.0 | 2,182 | 3.0 |
| Up to $500 | 10,585 | 9.1 | 4,135 | 9.4 | 6,401 | 8.9 |
| Up to $1,000 | 25,452 | 21.9 | 10,477 | 23.8 | 14,858 | 20.7 |
| Up to $5,000 | 47,463 | 40.8 | 19,219 | 43.6 | 28,011 | 39.1 |
| Up to $10,000 | 4,893 | 4.2 | 1,963 | 4.5 | 2,908 | 4.1 |
| > $10,000 | 6,008 | 5.2 | 1,745 | 4.0 | 4,198 | 5.9 |
| Total | 116,318 | 100.0 | 44,071 | 100.0 | 71,682 | 100.0 |

54.     As Table 2 makes clear, of those individuals in the databases of the 48 county clerks of court who were under the control and supervision of the FDC and who have been released because they have met all the terms of their felony conviction, only 8.0% of blacks, compared to 13.5% of white individuals, are eligible under SB7066 to gain their voting rights because they have paid off their LFOs.  Put differently, fewer than one in 10 black individuals who have been released from FDC custody and supervision have paid off the LFOs originally assessed as part of a felony conviction, whereas the rate is roughly one in seven for comparable white individuals.

55.     In my opinion, it is clear from Table 2 that black individuals in these 48 counties who have been released from the custody and supervision of the FDC are significantly less likely to be able to gain their voting rights, as compared to

comparable white individuals with felony convictions, as a result of outstanding

LFOs tied to a felony conviction.

**E.**   **Statewide Estimates of the Number of Persons with Felony Convictions in the FDC's Removed OBIS Database, who are Otherwise Eligible to Register to Vote under SB7066 with the Exception of Outstanding LFOs, by Race**

56.    Finally, it is possible to extrapolate from the estimates of the number

of persons, both black and white, across the 48 counties for which the clerks of

court have provided data on LFOs, to estimate the number of individuals across the

state, by race, who have a felony conviction, were released from FDC custody, and

who should be eligible to gain their voting rights under SB7066 because they have

paid off all LFOs tied to a felony conviction.  The calculation is rudimentary:

simply assume that the rate across the 48 counties for blacks and whites who have

met all the terms of their sentence and were not convicted of murder or a sexual

offense, and who do not owe any LFOs according to the 48 clerks of court, and

then apply the rate to the 336,108 individuals statewide who have been released

from the supervision of the FDC circa July 2019.

57.    Given the limited available and reliability of the data, these estimates

should be considered preliminary, as we do not know if the rates across the 48

counties for which I have estimates will be consistent for the state's other counties

for which I have yet to obtain data as of this writing. They also, by definition,

*exclude* all persons with felony convictions who were never in the FDC's custody,

including those who were convicted of a felony who served time in a county jail or were under county supervision, as well as those with eligible out-of-state or federal felony convictions who have moved to Florida.

58.     My preliminary analysis extrapolating from the 48 counties for which the clerks of court have provided LFO data is that, statewide, *only 11,495* (8.0%) of the 143,693 black individuals with felony convictions who have been released from FDC supervision and have paid off all LFOs related to their eligible felony convictions are eligible to register to vote.  By contrast, I estimate that, statewide, 24,165 (13.5%) of the 178,997 white individuals with felony convictions released from FDC supervision have paid off all LFOs, making them eligible to register.

59.     There are too little county clerks of court data at this point to estimate with any degree of certainty how many of, say, The Sentencing Project's estimated 1,487,847 individuals in Florida who have completed all the terms of their felony conviction, circa 2016, might be eligible to gain the franchise under SB7066.[37] This post-sentence estimate likely includes individuals with felony convictions who are not eligible under SB7066 to gain their voting rights because of the type of felony conviction (murder or sexual offense).  It also likely includes persons in Florida who are convicted of a felony out-of-state or in federal court, data that are

---

[37] *See* Christopher Uggen, Ryan Larson, and Sarah Shannon, "6 Million Lost Voters: State-Level Estimates of Felony Disenfranchisement, 2016," *The Sentencing Project*, October 6, 2016, Table 3 (p. 15).  Available at: https://www.sentencingproject.org/publications/6-million-lost-voters-state-level-estimates-felony-disenfranchisement-2016/.

unavailable to me. But if the estimates of LFOs from the 48 counties (both those released from FDC and counties' custody and supervision) analyzed in this report are accurate, only a fraction of The Sentencing Project's estimated nearly 1.5 million individuals—roughly 261,861 (17.6%)—will be likely to be eligible to vote under SB7066; the remaining 1,225,986 individuals are likely to be disenfranchised by SB7066 due to their outstanding LFOs.

60. There are too little county clerks of court data at this point to estimate with any degree of certainty how many of, say, The Sentencing Project's estimated 1,487,847 individuals in Florida who have completed all the terms of their felony conviction, circa 2016, might be eligible to gain the franchise under SB7066.[38] This post-sentence estimate likely includes individuals with felony convictions who are not eligible under SB7066 to gain their voting rights because of the type of felony conviction (murder or sexual offense). It also likely includes persons in Florida who are convicted of a felony out-of-state or in federal court, data that are unavailable to me.

## V. Conclusion

61. Despite the absence of data on out-of-state and federal convictions of persons with felony convictions living in Florida, and the general unavailability or

---

[38] *See* Christopher Uggen, Ryan Larson, and Sarah Shannon, "6 Million Lost Voters: State-Level Estimates of Felony Disenfranchisement, 2016," *The Sentencing Project*, October 6, 2016, Table 3 (p. 15). Available at: https://www.sentencingproject.org/publications/6-million-lost-voters-state-level-estimates-felony-disenfranchisement-2016/.

inaccessibility of correctional data from various State of Florida agencies or clerks of court that are needed to establish more definitively which persons with Florida felony convictions who reside in Florida might be eligible to vote, there is little doubt that SB7066 will severely limit the ability of eligible Floridians with a past felony conviction to be able to register to vote. This is because there is a large share of individuals who have outstanding LFOs originally assessed as part of their felony conviction. Due to outstanding LFOs, my preliminary analysis estimates that fewer than one-in-five—just 66,108 of the 375,256 individuals[39] with a felony conviction other than murder or a sexual offense as defined by SB7066 who have been released from county or FDC custody and supervision in 48 counties—are likely to be qualified to register to vote under SB7066. The rate is significantly less for black individuals with a felony conviction due to outstanding LFOs in nearly all 48 counties for which I have obtained data, with regard to both felony convictions internal to a county or individuals matched to the FDC's OBIS database.

62.     In sum, my findings should be taken as preliminary estimates, due to limited available data. I do not have accurate or comprehensive data on federal or out-of-state felony convictions, and even within the Florida criminal justice system, I do not have systematic data on individuals convicted of a felony who

---

[39] This includes the 13,247 of the 116,318 individuals who were in FDC custody or supervision, and 52,861 of the 258,938 individuals with a felony conviction who were not in the FDC custody or supervision who now have an LFO balance of $0.00 in the 48 analyzed counties' databases.

were never referred to the FDC, e.g., those who served time in a county jail or county supervision. Furthermore, I am unable to cross-reference whether an individual with an LFO balance of $0.00 in one county has outstanding debt from a felony conviction in other counties. The available data from the FDC and the county clerks of court only go back as far as the 1990s. I have not discovered a way to determine whether LFOs have been converted into a civil lien, or to confirm that those I have identified meet other voter eligibility requirements (i.e. mental competence, citizenship). I would like to reserve the right to continue to supplement my declarations in light of additional facts, data, and testimony.

63.     I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>2nd</u> day of August, 2019, at Alachua County, Florida.


**Daniel A. Smith, Ph.D.**