## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KELVIN JONES,

      Plaintiffs,

v.

                                     CONSOLIDATED

RON DESANTIS, in his official capacity   Case No.: 4:19-cv-00300-RH-CAS
as Governor of the State of Florida, et al.,   (Lead Case)

      Defendants.

_____/


BONNIE RAYSOR, et al.,              Case No.: 4:19-cv-00301-RH-CAS

      Plaintiffs,

v.

LAUREL M. LEE, in her official
capacity as Secretary of State of Florida,

      Defendant.

_____/

JEFF GRUVER, et al.,                Case No.: 4:19-cv-00302-RH-CAS

      Plaintiffs,

v.

KIM BARTON, et al.,

      Defendants.

_____/

Consolidated Case No.: 4:19-cv-00300

LUIS MENDEZ,

        Plaintiff,

Case No: 4:19-cv-00272-RH-CAS

v.

RON DESANTIS, in his official capacity
as Governor of the State of Florida, et al.,

        Defendants.

_____/

ROSEMARY MCCOY et al.,

        Plaintiffs

Case No. 4:19-cv-00304-RH-CAS

v.

RONALD DION DESANTIS, in his official capacity
as Governor of Florida, et al.,

        Defendants

_____/

## SUPERVISOR OF ELECTIONS DEFENDANTS' MOTION TO STAY DISCOVERY AND FOR PROTECTIVE ORDER

Defendants, Christina White as Miami-Dade County Supervisor of Elections, Craig Latimer as Hillsborough County Supervisor of Elections, Peter Antonacci as Broward County Supervisor of Elections, Mike Hogan as Duval County Supervisor of Elections, Leslie Rossway Swan as Indian River Supervisor of Elections, Mark Early as Leon County Supervisor of Elections (collectively, "Supervisors of Elections"), pursuant to Fed. R. Civ. P. 26(c) and *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), move for a protective order staying all discovery against the Supervisors of Elections during the pendency of the Supervisors of

Elections' Consolidated Motion to Dismiss (ECF No. 96) ("Supervisors' Motion")

and the Florida Governor and Florida Secretary of State's Joint Motion to Dismiss

(ECF No. 97) ("State's Motion").[1]   Collectively, the Supervisors' Motion and the

State's Motion argue that (1) the consolidated complaints fail to state a cause of

action against the Supervisors of Elections, (2) Plaintiffs do not have standing to

raise these claims against any defendant, (3) this Court should abstain from deciding

issues of state constitutional law, and (4) the complaints represent "shotgun"

pleadings and are improper.  As the defendants collectively raise issues that strike at

the very ability of Plaintiffs to raise these claims, this Court should stay discovery

as it relates to the Supervisors and grant the requested protective order to both

promote judicial economy and also avoid placing undue burdens on the Supervisors

of Elections. The parties have conferred during the Rule 26(f) conference; Plaintiffs

oppose the relief requested in this motion.

---

[1] Although Judge Walker's Initial Scheduling Order dated July 5, 2019 provided that "[t]he parties must not delay discovery before a motion to dismiss is pending" (ECF No. 37), on July 23, 2019 this Court issued an Order Setting Terms of Consolidation, Rule 26(f) deadlines, and a Scheduling Conference (ECF No. 91) which "amends the prior orders" and directs that a new schedule "will be set with a goal of providing enough time for diligent consideration of the issues in this Court and on appeal." The instant request for relief is in full accord with this Court's new Order and provides for a more orderly basis of consideration of the issues presented herein.

# INTRODUCTION

The Eleventh Circuit explained in *Chudasama* that facial challenges to a complaint, such as a motion to dismiss, should be resolved before discovery begins. 123 F.3d at 1367. Here, Plaintiffs have served exhaustive discovery requests on the Supervisors of Elections despite the fact that none of the various counts in the consolidated complaints allege a single misdeed or request any relief directed at any Supervisor of Elections.  At best, the discovery requests represent a giant fishing expedition into the future practices of the named Supervisors of Elections because, at present, they have no claims against the Supervisors of Elections. That is not the purpose of discovery. *Chudasama*, 123 F.3d at 1367 (noting that discovery "is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim").

As such, it makes little sense to burden the Supervisors of Elections with expansive, expensive, and irrelevant discovery when Plaintiff's existing claims are likely to be dismissed outright merely for the potential benefit of some hypothetical future claim that Plaintiffs have not pled and may never plead.  Moreover, the relief requested here is quite limited. Ultimately, the Supervisors of Elections are not asking for the Court to relieve them of any of the discovery responsibilities that would ordinarily be borne in defending a lawsuit nor are the Supervisors of Elections

4

asking the Court to limit discovery against the Governor or the Secretary of State; the Supervisors of Elections are simply asking the Court to resolve the facial challenges to Plaintiffs' claims prior to permitting Plaintiffs to press exorbitant discovery requests at the taxpayers' expense when they presently seek no relief from any Supervisor of Elections in this lawsuit.

## BACKGROUND

### A. Relevant Litigation History

On November 6, 2018, Florida voters amended the Florida Constitution by passing the Voting Restoration Amendment (also known as "Amendment 4"). The Amendment provided that convicted felons would have their voting rights restored upon "completion of all terms of sentence including parole or probation." Art. VI, 4(a), Fla. Const. Amendment 4 did not further define "completion of all terms of sentence." On June 28, 2019, Florida's Governor signed into law SB 7066. That bill defined "terms of sentence" to include all financial obligations, such as fees, fines and restitution, ordered by a court as part of a sentence. *See* Fla. Stat. § 98.0751(a)(1)-(2).[2]

The Plaintiffs in *Gruver, et. al. v. Kim Baron, et al.*, Case No.: 4:19-cv-00302-RH-CAS ("*Gruver*"), immediately challenged SB 7066 by filing this lawsuit.[3] As

---

[2] SB7006 has been codified as an amendment to Fla. Stat. § 98.0751.
[3] On June 30, 2019, the Court consolidated four other related cases under Case No. 4:19-cv-300-RH/MJF. See ECF No. 3. The Plaintiffs' Complaint filed in Case No.

discussed in the Supervisors' Motion, the *Gruver* Complaint's eight counts do not raise a single claim against the Supervisors of Elections.  Supervisors' Motion at 3-7.  Instead, the consolidated complaints consist entirely of facial attacks on the constitutionality of a state statute that was passed by the Florida Legislature and signed by the Governor.  Moreover, the complaints do not allege wrong doing by any Supervisor of Elections or seek relief against any Supervisor of Elections.  *Id.*

As it related to the Supervisors, the ***only*** direct discussion in the *Gruver* Complaint occurs in three paragraphs:  (1) the Supervisors of Elections have "front-end responsibility for registration," (*Gruver* Compl. ¶ 31) (2) SB 7066 "does not give SOEs any additional resources for this new responsibility" (*Id.*), and (3) the Supervisors of Elections generally process voter registration applications (*Gruver* Compl. ¶ 55, 56).  That is the sum total of the allegations against the Supervisors of Elections in the *Gruver* Plaintiffs' one hundred and seventy two paragraph Complaint.

## B. Plaintiff's Discovery Requests

On July 9, 2019, the *Gruver* Plaintiffs served Requests for Production and Requests for Interrogatories on the Supervisors of Elections, which go well beyond

---

4:19-cv-302-RH/MJF is the operative complaint for purposes of the Supervisors Motion to Dismiss. This Motion also applies to the Complaints where Supervisor Mike Hogan is a defendant in *McCoy*, 19-cv-00304 and Supervisor Latimer is a defendant in *Jones*, 19-cv-00300 and *Mendez*, 19-cv-00272.

any allegation made in the consolidated complaints against any Supervisor of Elections. These requests also seek production of documents explicitly made confidential by Florida law pursuant to § 97.0585(1)(d), Florida Statutes (2019). The *Gruver* Plaintiffs' complete Request for Production and Request for Interrogatories to the Supervisors of Elections are attached to this Motion as **Exhibit A**.

A few of the most onerous and irrelevant discovery requests to the Supervisors of Elections limited involvement in the Complaint are the following:

- Request for Production No. 1:  "All internal and external communications since April 20, 2017 concerning voter eligibility or registration pursuant to Amendment 4."

- Request for Production No. 6:   "All internal and external communications regarding implementation of Amendment 4 or SB7066 and its precursor bills HB7089 and SB7086, including, but not limited to, communications since September 1, 2016 with any representative of the: a. Department of State; b. Department of Corrections; c. Florida Commission on Offender Review; d. Florida Clerks of Court; e. Florida State Association of Supervisors of Elections; and f. Florida Board of Executive Clemency."

- Request for Production No. 9:  "All internal and external communications regarding administering voter registration for persons with past felony convictions, since November 6, 2018."

7

- Request for Production No. 11: "Documents identifying the names and addresses of any voter applicant denied registration for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.045(1)(c), and the date of denial, since March 3, 2011."

- Request for Production No. 12: "Documents identifying the names and addresses of any voter removed from the registration rolls for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.075(5), and the date of removal, since March 3, 2011."

None of these requests relate to any existing allegation in the consolidated complaints as they relates to the Supervisors of Elections. Instead, the requests attempt to create a potential claim to raise against the Supervisors in the future rather than address the legality of the specific and narrow provisions of SB 7066 raised against the Secretary of State.

## C. Specific Showing of Burdensome Nature of Discovery Requests

Based on discussions with relevant employees of the Supervisors of Elections charged with keeping the records that would be responsive to the requests identified in the preceding section, the Supervisors of Elections represent that responding to these requests would require the investment of significant resources both to cull the underlying documents and then to review them for legally required redactions regarding highly confidential voter information.

Consolidated Case No.: 4:19-cv-00300

For example, to respond to just a portion of the document request, staff members for the Miami-Dade County Supervisor of Elections has already committed five full-time staff members to review over twenty-one thousand e-mails for a period of eight days to identify potentially responsive documents. This does not include additional review required for redacting or identifying other relevant documents responsive to the overbroad requests. These staff members are pulled from other essential functions at the office such as preparing new equipment for upcoming elections or reviewing registration applications and verifying petitions to amend the Florida Constitution.

In Broward County, the document request will require employees of the Broward County Supervisor of Elections to review and produce (and potentially redact information from) approximately one million pages of documents for a several year period of time before the passage of Amendment 4, which documents in no way relate to the named Plaintiffs or the matters asserted in the Complaint.

None of this information is particularly relevant to the determining whether the limited provisions of SB 7066 relating to implementing Amendment 4 are permissible under the United States Constitution. As such, complying with Plaintiffs' discovery requests would require commandeering multiple employees of the Supervisors of Elections for days and weeks on end to search for and review the

materials Plaintiffs have requested.  Worse yet, those documents have nothing to do with the three paragraphs of allegations related to the Supervisors of Elections.

The above information is not provided for the Court to rule now on whether such discovery is relevant or discoverable given the claims and burdens in this case but, rather, to demonstrate the very significant burdens that complying with these requests would entail, the discovery disputes that would arise, and the substantial resources that both the parties' and the Court may be required to unnecessarily invest to resolve the appropriateness of these requests as an initial matter under Rule 26 prior to ruling of a dispositive Motion to Dismiss, which could very well moot the need for any of those efforts.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 26(c)(1) empowers the Court to issue a protective order that limits or prohibits discovery upon a showing of good cause, including by specifying the timing and sequence of discovery. Staying discovery against the Supervisors of Elections while the Court considers the pending motions to dismiss comports not only with the Eleventh Circuit's binding precedents but also with common sense. If the motion to dismiss is ultimately granted, then the Court will have saved the parties a significant amount of time and expense in conducting discovery and avoided embroiling itself in the parties' discovery disputes. Even if

Consolidated Case No.: 4:19-cv-00300

the motion is ultimately denied, Plaintiffs will not be prejudiced because the information and materials are still available.

In this situation, the Eleventh Circuit has held that discovery should not occur when substantial facial challenges to the complaint are outstanding. "Facial challenges to the legal sufficiency of a claim or defense, *such as a motion to dismiss based on failure to state a claim for relief*, should [] be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (emphasis added) (finding that district court abused its discretion by ordering defendant to respond to discovery before ruling on motion to dismiss); *accord Williams v. Restaurant Technologies. Inc.,* Case No. 3:16-cv-266 MCR/EMT, 2017 WL 5953301, at *1 (N.D. Fla. May 30, 2017) (granting stay because dispositive motions to dismiss would resolve or narrow the issues for discovery)*; Minton v. Jenkins*, Case No. 5:10-cv-61 RH/EMT, 2011 WL 2038700, at *1 (N.D. Fla. May 24, 2011) (granting stay under *Chudasama* because the burdens of discovery outweigh the marginal benefits of conducting that discovery during the pendency of a motion to dismiss).

The Eleventh Circuit explained in *Chudasama* that:

Discovery imposes several costs on the litigant from whom discovery is sought. These burdens include the time spent searching for and compiling relevant documents; the time, expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories and

coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones withheld, and determining whether certain information is privileged. The party seeking discovery also bears costs, including attorneys' fees generated in drafting discovery requests and reviewing the opponent's objections and responses. Both parties incur costs related to the delay discovery imposes on reaching the merits of the case. ***Finally, discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes.***

*Chudasama*, 123 F.3d at 1367-68 (emphasis added).

This last teaching is especially prescient here. Given the breadth and nature of the Plaintiffs' discovery requests in relation to the allegations in the consolidated complaints, the Supervisors of Elections anticipate that they will object to many of the requests, which will necessitate discovery hearings to determine the proper scope of discovery. It therefore makes sense for the Court to rule on the motions to dismiss before discovery against the Supervisors of Elections proceeds, not only to save the Supervisors of Elections from the burden of responding to such broad and burdensome requests, but also to conserve the Court's own resources from having to hold discovery hearings to address breath, burden, and relevancy objections.

In this posture, "neither the parties nor the court have any need for discovery before the court rules on the motion [to dismiss]." *Chudasama*, 123 F.3d at 1367. "Discovery should follow the filing of a well-pleaded complaint. ***It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim***." *Id.* (quoting *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) (emphasis

added)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process, given the common lament that the success of judicial supervision in checking discovery abuse has been modest"). "Indeed, avoiding the imposition of discovery on facially implausible claims is one of the key functions of [Rule] 12(b)(6)." *Stepanovich v. City of Naples*, 728 F. App'x 891, 903 (11th Cir. 2018).

The Eleventh Circuit has repeatedly endorsed the district courts' application of *Chudasama* stays in these circumstances and has applauded those district courts that have adhered to *Chudasama*'s teaching. *See Lawrence v. Governor of Georgia*, 721 F. App'x 862, 864 (11th Cir. 2018) (affirming district court's issuance of partial stay and noting that the district court "specifically identified our warnings in *Chudasama*, and heeded them"); *Roberts v. FNB S. of Alma, Ga.*, 716 F. App'x 854, 857 (11th Cir. 2017) ("the district court properly stayed discovery pending a ruling on the legal sufficiency of Roberts's complaint because there was no 'need for discovery before the court rule[d] on the motion.'") (quoting *Chudasama*, 123 F.3d at 1367); *Dragash v. Fed. Nat'l Mortgage Ass'n*, 700 F. App'x 939, 947 (11th Cir. 2017); *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013); *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005); *see also Fisher v. Miami-Dade County*, 14-22626-Civ-Huck, DE 28 (S.D. Fla. Oct. 30, 2014) (granting motion to

stay discovery pending motion to dismiss by the County when plaintiff propounded extremely broad discovery requests).

## CONCLUSION

The Court should stay all discovery against the Supervisors of Elections during the pendency of the Supervisors' Motion to Dismiss and the State's Motion to Dismiss and until the parties have answered the operative complaints. This is the only way to comply with the Court's directive to conduct discovery "providing enough time for diligent consideration of the issues in this Court and on appeal." (ECF No. 91).

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel conferred with Plaintiffs' counsel telephonically on August 5, 2019 in a good faith effort to resolve the issues raised in this Motion during the Rule 26(f) conference but was unable to reach agreement on the relief requested herein.

Consolidated Case No.: 4:19-cv-00300

Pursuant to N.D. Fla. Loc. R. 7.1(F), this motion contains fewer than 8,000

words. It contains 3,117 words.

Respectfully submitted,

*/s/ Oren Rosenthal*
Oren Rosenthal
Assistant County Attorney
Fla Bar No. 86320
Email: orosent@miamidade.gov
*/s/ Michael Valdes*
Michael Valdes
Assistant County Attorney
Fla. Bar. No. 93129
Email: mbv@miamidade.gov
Miami-Dade County Attorney's Office
111 NW 1st Street, Suite 2810
Miami, FL 33128-1930
Telephone:  (305) 375-5151
*Counsel for Christina White, Miami-Dade County Supervisor of Elections*

*/s/ Dylan T. Reingold*
Dylan T. Reingold
Indian River County Attorney
Fla. Bar No. 48194
Email:  dreingold@ircgov.com
Indian River County Attorney's Office
1801 27th Street, Building A
Vero Beach, FL 32960
Telephone: (772) 226-1427
*Counsel for Leslie Rossway Swan, Indian River County Supervisor of Elections*

*/s/ Stephen M. Todd*
Stephen M. Todd
Senior Assistant County Attorney
Fla. Bar No. 886203
Email: todds@hillsboroughcounty.org
Hillsborough County Attorney's Office
601 E. Kennedy Boulevard, FL 27
Tampa, FL 33602-4932
Telephone: (813) 272-5670
*Counsel for Craig Latimer, Hillsborough County Supervisor of Elections*

*/s/ Craig Dennis Feiser*
Craig Dennis Feiser
Assistant General Counsel
Fla. Bar No. 164593
Email: cfeiser@coj.net
City of Jacksonville
Office of General Counsel
117 W. Duval Street, Suite 480
Jacksonville, FL 32202
Telephone: (904) 255-5052
*Counsel for Mike Hogan, Duval County Supervisor of Elections*

15

Consolidated Case No.: 4:19-cv-00300

*/s/ Mark Herron*
Mark Herron
Fla. Bar No. 199737
Email: mherron@lawfla.com
Messer Caparello, P.A.
2618 Centennial Place
Tallahassee, FL 32308-0572
Telephone:  (850) 222-0720
*Counsel for Mark Early, Leon County*
*Supervisor of Elections*

/s/ Adam Katzman
Adam Katzman
Senior Assistant County Attorney
Fla. Bar No. 652431
Email:  akatzman@broward.org
Nathaniel Klitsberg
Senior Assistant County Attorney
Fla. Bar No. 307520
Email: nklitsberg@broward.org
René D. Harrod
Deputy County Attorney
Fla. Bar No. 627666
Broward County Attorney's Office
115 South Andrews Avenue, Suite 423
Fort Lauderdale, FL 33301
Telephone: (954) 357-7600
*Counsel for Peter Antonacci, Broward*
*County Supervisor of Elections*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

served to all counsel of record through the Court's CM/ECF system on this 7th day

of August, 2019.

By:   *s/ Oren Rosenthal*
        Assistant County Attorney

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division**

KELVIN LEON JONES, *et al.*,

                       *Petitioner,*

    v.

RON DESANTIS, in his official capacity as the
Governor of Florida, an Indispensable Party, *et al.*,

                     *Respondents.*

Consolidated Case No. 4:19-cv-0300

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO SUPERVISORS OF ELECTIONS DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs in *Gruver et al. v. Barton et al.*, by and through their attorneys, propound the following Interrogatories to Defendants KIM A. BARTON, Supervisor of Elections for Alachua County, PETER ANTONACCI, Supervisor of Elections for Broward County, MIKE HOGAN, Supervisor of Elections for Duval County, CRAIG LATIMER, Supervisor of Elections for Hillsborough County, LESLIE ROSSWAY SWAN, Supervisor of Elections for Indian River County, MARK EARLEY, Supervisor of Elections for Leon County, MICHAEL BENNETT, Supervisor of Elections for Manatee County, CHRISTINA WHITE, Supervisor for Elections for Miami-Dade County, BILL COWLES, Supervisor of Elections for Orange County, and RON TURNER, Supervisor of Elections for Sarasota County, all sued in his/her official capacity (collectively, "Supervisor of Election Defendants"), for the purpose of discovery of certain matters which are relevant to the above-captioned action. Though this is a joint request, each Defendant should separately conduct an independent review for responsive documents in their possession.

1

Written responses under oath are due within thirty (30) days of service of these Interrogatories. Responses are to be served via email and/or hard copy to American Civil Liberties Union, 125 Broad Street, 18th Floor, New York, NY 10004, to the attention of Julie Ebenstein, jebenstein@aclu.org. Responses can be provided on a rolling basis as they become available to Plaintiffs.

Each document request is subject to the Instructions and Definitions preceding the specific requests.

### **INSTRUCTIONS**

1.     These Interrogatories are continuing in nature and require timely supplementation pursuant to Rule 26.

2.     State whether the answer is within the personal knowledge of the person answering the interrogatory and, if not, the identity of each person known to have personal knowledge of the answer.

3.     These Interrogatories require the provision of all responsive information in Defendants' possession, custody, or control, or known to be available to Defendants, regardless of whether such information is possessed directly by all Defendants' agents, advisors, officials, employees, representatives, attorneys, consultants, successors-in-interest, and other persons or entities acting on their behalf, subject to their control, or in any other way related to them.

4.     If you object to any Interrogatory or any subpart thereof on the grounds that it calls for disclosure of information that you claim is privileged, or on any other grounds, then answer such Interrogatory or subpart as follows:

      i.   the type of communication, document, or information at issue (e.g., oral, written, or electronic) and the date thereof;

2

    ii.   the name, current or last known home and business addresses and the telephone numbers thereto, the field or position, occupation and employer of each of the participants in such communication, document, or information or of those individuals who prepared, produced, or reproduced, or who were the recipients of, such communication, document, or information;

    iii.  a description of the communication, document, or information sufficient to identify it without revealing the information for which privilege is claimed;

    iv.  a description of the subject matter of the communication, document, or information in sufficient detail to allow the Court to adjudicate the validity of the claim of privilege;

    v.   each and every fact and legal basis upon which Defendant claims any such privilege; and,

    vi.  the interrogatory or part thereof to which the communication, document, or information relates.

5.     When requested to "state each fact," the "facts upon which you rely," or "state the factual basis" relating to any allegation, fact, legal theory, contention, or denial, please furnish a full and complete statement of the factual basis of any such allegation, fact, legal contention, or denial, the reason or rationale that such facts so relate or pertain and how such facts so relate or pertain, and identify each person known to you or believed by you to be in possession of evidence of other facts relating to such allegation or contention.

6.     Each Interrogatory is to be answered separately and as completely as possible. The omission of any name, fact, or other item of information from the answers shall be deemed a

3

representation that such name, fact, or item is not known to you or counsel at the time of the service of your answer to the Interrogatory.

7.    Unless otherwise indicated, these Interrogatories refer to the time, place, and circumstances of the occurrence(s) mentioned or complained of in the Complaint.

8.    In responding to these Interrogatories, transcribe each Interrogatory or sub-part and, after each, provide its answer.

9.    If, in lieu of or in addition to answering an Interrogatory, you produce a database and other data or reports, that material should be produced in a native format (such as a Microsoft Excel file or tab-delineated text file) that can be processed and/or sorted using standard spreadsheet or database software including Microsoft Access and Microsoft Excel.

10.    A request to "identify" a natural person shall mean to state the following:

    i.    the person's full name;

    ii.    the person's present or last known home address and telephone number;

    iii.   the person's present or last known employer, title, business address, and telephone number; and

    iv.   the person's employer at the time to which the interrogatory relates.

11.    A request to "identify" an entity other than a natural person shall mean to state the following:

    i.    the full name of the entity;

    ii.    the legal form of the entity (e.g., corporation, partnership, committee);

    iii.   a brief description of the nature and business purpose of the entity; and

    iv.   the present or last known address of the entity's principal office, principal place of business, and other places of business.

12.    A request to "identify" a document shall mean to state the following:

4

> i.   the date the document was prepared;
>
> ii.  the author(s) of the document;
>
> iii. the identity of the addressees of the document;
>
> iv.  the identities of the persons or entities that received copies of the document;
>
> v.   the subject matter and substance of the document;
>
> vi.  a description of the document (e.g., memorandum, letter, etc.); and
>
> vii. the name and address of the custodian of the document.

13.     In lieu of providing a full description of a document in accordance with the preceding paragraph, you may attach a copy of the document for which a description is requested, and in your answer to the Interrogatory provide only those items of description requested that do not appear on the face of the document.

14.     The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside its scope.

15.     Throughout these Interrogatories, including the definition of terms, words used in the masculine gender include the feminine, and words used in the singular include the plural.

16.     In construing these Interrogatories, Defendants shall apply the broadest construction, so as to produce the most comprehensive response.

17.     All Interrogatories call for responses concerning the Relevant Time Period, as defined below, unless otherwise limited or expanded by a particular Interrogatory.

## **DEFINITIONS**

1.      The term "Relevant Time Period" shall mean April 20, 2017 until the present.

2.      The words "Supervisor of Elections," "Supervisors," "You," "Your," "Defendants," and all variants thereof, refer to Supervisor of Elections Defendants, any of their predecessors,

agents, representatives, employees, officers, consultants, contractors, and any person acting or purporting to act on their behalf or subject to their control.

3.     The term "document(s)" is defined to be synonymous in meaning and scope as the term "document" is used in Federal Rule of Civil Procedure 34 and the phrase "writings and recordings" as defined in Federal Rule of Evidence 1001, and includes without limitation any kind of written, typewritten, printed, graphic, or recorded material whatsoever, including without limitation notes, memoranda, letters, reports, studies, electronic mail messages, telegrams, publications, contracts, manuals, business plans, proposals, data sheets, Databases, data compilations, schematics, drawings, diaries, logs, specifications, brochures, product or service descriptions, periodicals, recordings, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, surveys, indices, telephone calls, meeting minutes, electronic files, software, transcriptions of recordings, computer tapes, diskettes, or other magnetic media, invoices, agreements, corporate resolutions, minutes, books, binders, accounts, photographs, and business records. This shall include all non-identical copies, no matter how prepared; all drafts prepared in connection with such Documents; and any deleted or erased Documents that may be retrieved from hard drives, floppy disks, electronic back-up files, or any other back-up systems, regardless of location, together with all attachments thereto or enclosures therewith, in Defendants' possession, custody, or control, or that of their attorneys, employees, agents, or representatives.

4.     The term "database" means any data sets, reports, programs, and files accessible by computer that contain data that can be processed and/or sorted using standard spreadsheet or database software (including, but not limited to, Microsoft Access and Microsoft Excel). As the term "Database" is included within the definition of "Document," any omission of that term from

an Interrogatory shall not relieve Defendants of their duty to describe relevant Databases in their response.

5.      The term "communications" means all occasions on which information is conveyed from one person to another by any means, including, but not limited to, by document, memoranda of conversations, correspondence, data processing, pictures, or recordings.

6.      The term "person" shall include, whenever appropriate, not only a natural person, but also a corporation, partnership, unincorporated association, joint venture, or other association of persons, and also a governmental agency, office, administration, board, or other body.

7.      The term "voter" means any person who seeks to register to vote, registers to vote, casts or attempts to cast an in-person early vote, casts or attempts to cast an absentee vote, or casts or attempts to cast an in-person vote on Election Day, or is eligible to vote.

8.      The term "including" means including but not limited to.

9.      The terms "concerning," "relates," and "relating to," mean containing, contained in, referring to, referencing, regarding, embodied in, embodying, constituting, defining, discussing, reflecting, identifying, stating, dealing with, or in any way pertaining to.

10.     The term "describe" means to set forth in detail all known facts and circumstances related to the subject of the Interrogatory, including, but not limited to, the date, time, and place of any oral or written statement, conversation, report, study, or meeting, the identity of the participants, and the substance and purpose of the events or communications so described.

11.     The term "Complaint" means the Complaint filed by the Gruver Plaintiffs in the above-captioned consolidated action, and any and all subsequent amendments thereto.

12.     The term "Amendment 4" means the Voting Restoration Amendment to the Florida Constitution, Fla. Const., Art. VI, § 4.

7

13.    The term "SB7066" means Senate Bill 7066 (2019) or any of its precursor bills (e.g., Senate Bill 7086 (2019), House Bill 7089 (2019)).

## **INTERROGATORIES**

1.    Please identify the following: (i) your name, title, and professional address; and (ii) the name, title, and professional address of each person consulted by you in answering these Interrogatories, specifying on which Interrogatories such person was consulted.

2.    Please provide the name and, if known, the address and telephone number of each individual in your office and any representative of the Department of State, Department of Corrections, Florida Commission on Offender Review, Florida Clerks of Court, or Florida Board of Executive Clemency who is likely to have information concerning Amendment 4 or SB7066, its implementation, administration, or applicable voter eligibility, registration or removal standards, the need for its provisions, or its purpose. For each such individual, please identify the subject matter of that information.

3.    Please state whether, from November 6, 2018 to the present, you took any steps to prepare to administer Amendment 4 or SB7066 prior to their respective January 8, 2019 and July 1, 2019 effective dates, and if so, what steps were taken.

4.    Please state whether, from November 6, 2018 to the present, you sought or received guidance, advice, instruction, or opinions regarding voter eligibility pursuant to Amendment 4 and SB7066 from any other Supervisors of Elections, or representative of the Department of State, Department of Corrections, Florida Commission on Offender Review, Florida Clerks of Court, or Florida Board of Executive Clemency, and what guidance, advice, instructions, or opinions were given and from whom.

5.     Please state whether, from November 6, 2018 to the present, you sought guidance, advice, instruction or opinions regarding determining individuals' outstanding costs, fines, fees, restitution, or any other financial obligations related to a conviction or offense from other Supervisors of Elections, or any representative of the Department of State, Department of Corrections, Florida Commission on Offender Review, Florida Clerks of Court, or Florida Board of Executive Clemency, and what guidance, advice, instructions, or opinions were given and from whom.

6.     Please identify any monetary costs that you will incur or need to budget for to implement and comply with SB7066.

7.     Please state which records or databases you access, reference, or utilize to determine whether registration applicants are eligible to register to vote since November 6, 2018.

8.     Please state which records or databases you access, reference, or utilize to determine whether registration applicants have outstanding costs, fines, fees, restitution, or any other financial obligations assessed by a court for a Florida, federal, or out-of-state felony conviction.

9.      Please state your policies and practices regarding your communications to voters who have been convicted of a felony and ask you whether they are eligible to vote.

10.     Please state your policies and practices regarding your identification, pursuant to Fla. Stat. § 98.045(1)(c) and § 98.075(5), of voter registration applicants with prior Florida, out-of-state, and federal felony convictions from March 3, 2011 to the present, including any changes to those policies and practices that resulted from Amendment 4 and from SB7066.

11.     Please state your standards, policies, and practices regarding the eligibility of voter registration applicants and the cancellation of voter registrations related to outstanding costs, fines,

fees, restitution, or any other financial obligations assessed by a court for Florida, federal, or out-of-state felony convictions.

12.     Please state what records, data, and other information are or will be provided to you by the Department of State as the basis for demonstrating that a registered voter has outstanding costs, fines, fees, restitution, or any other financial obligations assessed by a court for a Florida, federal, or out-of-state felony conviction, and therefore should be removed from the list of eligible voters.

13.     Please state whether your policies and practices regarding verifying voters' eligibility for registrations or removals differ between applicants who affirm on the uniform voter registration form, pursuant to Fla. Stat. § 97.052(2)(t) (2019), that they (a) "have never been convicted of a felony," (b) have been convicted of a felony and their "voting rights have been restored by the Board of Executive Clemency," or (c) they have been convicted of a felony and their "voting rights have been restored pursuant to s. 4, Art. VI of the State Constitution upon the completion of all terms of my sentence, including parole or probation[,]" and what those different policies and practices are.

14.     Please state whether you have "request[ed] additional assistance from [the Department of State] in making the final determination" of eligibility, pursuant to Fla. Stat. § 98.0751(3)(c) (2019), and what assistance was provided.

15.     Please state your current plans and policies for removing from the registration rolls voters with past felony convictions who registered to vote since January 8, 2019 pursuant to restoration under Amendment 4, before November 2020.

16.    Please identify any safeguards or processes for addressing erroneous identifications or removals of voters with outstanding costs, fines, fees, restitution, or other financial obligations assessed by a court for a felony conviction.

17.    Please identify any process for determining how much a voter with outstanding costs, fines, fees, restitution, or other financial obligations assessed by a court for felony conviction has paid toward those obligations, and how much a voter has paid towards "fines, fees, or costs that accrued after the date the obligation was ordered as part of a sentence," pursuant to Fla. Stat. § 98.0751(2)(5)(c).

18.    Please state your policies and practices for providing notice to Florida residents who owe costs, fines, fees, restitution, or any other financial obligations assessed by a court for a felony conviction, of the total amount outstanding and the process for paying off those financial obligations.

19.    Please state how many voters have been removed from the rolls pursuant to Fla. Stat. § 98.075(5) since July 1, 2019.

20.    Please state how many people with prior felony convictions submitted voter registration applications between January 8, 2019 and July 1, 2019, and how many of those people successfully registered to vote.

Respectfully submitted,

Date:   July 9, 2019

*/s/ Eliza Sweren-Becker*

*Counsel for Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Florida State Conference of the NAACP, Orange County Branch of the NAACP, and League of Women Voters of Florida*

11

## CERTIFICATE OF SERVICE

This is to certify that on July 9, 2019, I electronically sent a true and correct copy of the foregoing document to all counsel of record in this case.

*/s/ Eliza Sweren-Becker*

*Counsel for Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Florida State Conference of the NAACP, Orange County Branch of the NAACP, and League of Women Voters of Florida*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Tallahassee Division**

KELVIN LEON JONES, *et al.*,

*Petitioner,*

v.

RON DESANTIS, in his official capacity as the
Governor of Florida, an Indispensable Party, *et al.*,

*Respondents.*

Consolidated Case No. 4:19-cv-0300

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO SUPERVISORS OF ELECTIONS DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs in *Gruver et al. v. Barton et al.*, by and through their attorneys, hereby request that, separately, Defendant KIM A. BARTON, Supervisor of Elections for Alachua County, Defendant PETER ANTONACCI, Supervisor of Elections for Broward County, Defendant MIKE HOGAN, Supervisor of Elections for Duval County, Defendant CRAIG LATIMER, Supervisor of Elections for Hillsborough County, Defendant LESLIE ROSSWAY SWAN, Supervisor of Elections for Indian River County, Defendant MARK EARLEY, Supervisor of Elections for Leon County, Defendant MICHAEL BENNETT, Supervisor of Elections for Manatee County, Defendant CHRISTINA WHITE, Supervisor for Elections for Miami-Dade County, Defendant BILL COWLES, Supervisor of Elections for Orange County, Defendant RON TURNER, Supervisor of Elections for Sarasota County, all sued in his/her official capacity (collectively, "Supervisor of Election Defendants"), produce and make available for inspection and copying all documents

which are described below. Though this is a joint request, each Defendant should separately conduct an independent review for responsive documents in their possession.

The documents produced pursuant to this request are to be made available for inspection and copying by Daniel Tilley at the American Civil Liberties Union of Florida, 4343 West Flagler Street #400, Miami, FL 33134, at which time the documents should be segregated and identified by paragraph number of the request to which they are responsive. Production can be made available to Plaintiffs on a rolling basis.

Further, you are requested to periodically update the production of the documentation requested herein, through the time of this case pursuant to Rule 26.

## **DEFINITIONS**

1.     The term "you," "your," "yours," "Defendants" as used herein shall mean, unless specified in a particular request, refer to Supervisor of Elections Defendants, and any and all predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, foreign or domestic, and all officers, directors, employees, agents, attorneys, representatives and all other persons acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

2.     The terms "document" or "documents" as used herein shall mean both "documents" and "things" and includes, without limitation, tangible things and any information containing paper or other medium or materials whether handwritten, printed, recorded, filmed, or produced by any other mechanical, chemical or electronic process, including e-mail and all other electronic/digital documents, in the broadest understanding of the term "documents" in the Federal Rules of Civil Procedure, whether or not asserted to be privileged or immune from discovery, and whether a draft, original or copy, including any notes or marginal notations appearing on any document, including self-stick removable notes, and includes every writing or record of every type

and description that is or ever has been in the possession, custody, or control of you or your company or its agents, or of which you or your company has knowledge.

3.      When referring to a person, the term "identify" or a form thereof means to give the person's full name, present or last known address, and when referring to a natural person, additionally the present and last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.      When referring to documents, the term "identify" means to give the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addresses and recipients; and (v) the location of the document.

5.      The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of discovery requests all responses that might otherwise be construed to be outside of its scope.

6.      F.      The terms "relating to" include "refer to," "summarize," "reflect," "constitute," "contain," "embody," "mention," "show," "comprise," "evidence," "discuss," "describe," and "comment upon."

7.      The term "communication" shall mean the transfer of information in the form of facts, ideas, opinions, inquiries, questions, policies, procedures, guidance or otherwise by, inter alia, speech, writing, or signs. As used herein, the term "communication" includes but is not limited to documents.

8.      The term "concerning" shall mean referring to, describing, evidencing or constituting.

9.      The term "Amendment 4" shall mean the Voting Restoration Amendment to the

6

Florida Constitution, Fla. Const., Art. VI, § 4.

10.     The term "SB7066" shall mean Senate Bill 7066 (2019) or any of its precursor bills (e.g., Senate Bill 7086 (2019), House Bill 7089 (2019)).

11.     The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb includes within its meaning all other tenses of the verb so used.

## <u>INSTRUCTIONS</u>

1.     The responsive documents should be produced in the manner prescribed by the Federal Rules of Civil Procedure.

2.     If any part of the request is objected to, the reason for the objection should be stated with particularity. If an objection is made to part of any item or category set forth in a request, that part should be specified.

3.     Each request for production and subparagraphs or subdivisions thereof shall be construed independently, and no request shall be construed as creating a limitation upon any other request.

4.     The documents produced in response to these requests are all responsive documents in your possession, custody, or control, or known to be available to you, regardless of whether such documents are possessed directly by you or your agents, advisors, employees, representatives, attorneys, consultants, successors-in-interest, or other persons or entities acting on your behalf or subject to your control, and whether they are maintained at any of your locations, offices, or in archives or in any other location (including back-up tapes or electronic mail) or with any persons related in any way to you.

7

5.      Any reference in these document requests to an individual includes any and all agents, advisors, employees, representatives, attorneys, successors-in-interest, and all other persons or entities acting on his, her, or its behalf or under his, her, or its control.

6.      Any reference in these document requests to any corporation, partnership, association, governmental entity or agency, or other entity includes the present and former officers, executives, partners, directors, trustees, employees, agents, representatives, attorneys, accountants and all other persons acting or purporting to act on behalf of such corporation, partnership, association, agency, or entity and any of their parent corporations, holding companies, subsidiaries, affiliates, divisions, departments, predecessors and/or successors-in-interest.

7.      Where a request calls for information that is not available to you in the form requested, but is available in another form or can be obtained, in whole or in part, from other data in your possession or control, you must so state and either supply the information requested in the form in which it is available, or supply the data from which the information requested can be obtained.

8.      In addition to the responsive document, you shall produce all non-identical copies, including all drafts, of each responsive document.

9.      If any requested document is not or cannot be produced in full, you shall produce it to the extent possible, indicating what document or portion of such document is not or cannot be produced and the reason why it is not or cannot be produced.

10.     Each document produced must include all attachments and enclosures.

11.     Documents attached to each other shall not be separated.

12.     Documents not otherwise responsive to a request for production shall be produced if such documents refer to, concern, or explain the documents called for by any request for

production and constitute transmittal memoranda or letters, comments, evaluations, or similar documents.

13.     In accordance with Federal Rule Civil Procedure 34(b), all documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the requests, and identifying the name of the person from whose files the documents were produced.

14.     Each request shall be responded to separately. Nevertheless, a document that is responsive to more than one request may be produced for one request and incorporated by reference in another response, provided that the relevant, corresponding portion is so labeled or marked.

15.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

16.     If any document requested herein was at one time in existence, but has been lost, discarded, destroyed, transferred to others not subject to your control, or otherwise disposed of, you shall furnish a list identifying each such document and setting forth the following information with respect to each such document: its date, author(s), sender(s), addressee(s) and recipient(s), subject matter, length, attachments, and location in which it was maintained. In each instance, explain the circumstances of its loss, discarding, or destruction, including the person(s) responsible for authorizing the disposition and the date thereof, and provide a description of your efforts to locate the document and copies of it.

17.     No part of a document request may be left unanswered merely because an objection

9

is interposed to another part of the document request. If you object to any document request or subpart thereof, you must state with specificity your objection and all grounds therefore. Any ground not stated will be waived.

18.     If you contend that it would be unduly burdensome to obtain and provide all of the documents called for in response to these requests, or any portion thereof, then in response to each such request you shall:

    i.   produce all documents and information available to you without undertaking what you contend to be an unreasonable burden; and

    ii.   set forth the particular grounds on which you contend that additional efforts to obtain such documents and information would be unduly burdensome.

19.     If any document is withheld under any claim of privilege, including without limitation, the work-product doctrine, attorney-client privilege, or investigative or law enforcement privilege, your answer should provide the following with respect to such information:

    i.   the type of document, i.e., "letter," "email," "memorandum," "report," "miscellaneous note," etc.;

    ii.   the date of the document;

    iii.   the names of its author(s) or preparer(s) and an identification by employment and title of each such person;

    iv.   the name of each person who was sent or furnished with, received, viewed or has had custody of the document or a copy thereof together with an identification of each such person;

    v.   its title and reference, if any;

    vi.   a description of the document sufficient to identify it without revealing the information for which privilege is claimed;

    vii.   the type of privilege asserted;

    viii.   a description of the subject matter of the document in sufficient detail to allow the Court to adjudicate the validity of the claim for privilege; and

ix. the paragraph of this request to which the document relates.

20.     Any requests propounded in the disjunctive shall also be read as if propounded in the conjunctive and vice versa. Any request propounded in the singular shall also be read as if propounded in the plural and vice versa. Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

21.     These document requests cover the period from January 1, 2010 to the present, unless otherwise indicated. The document requests set forth below encompass all documents and information concerning this period, even though dated, prepared, generated or received prior to this period.

22.     These document requests are continuing in nature. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Defendant's attorneys are under a continuing duty to supplement the production with documents obtained subsequent to the preparation and service of a response to each Request. Supplemental responses shall be served and additional documents shall be made available promptly upon discovery of such information.

## REQUEST FOR PRODUCTION

1.     All internal and external communications since April 20, 2017 concerning voter eligibility or registration pursuant to Amendment 4.

2.     All internal and external communications since March 4, 2019 concerning determination of voter eligibility pursuant to Fla. Stat. § 98.0751(3) (2019), as established by SB7066, and precursor bills, House Bill 7089 (2019) ("HB7089") and Senate Bill 7086 (2019) ("SB7086").

3.     All internal and external communications regarding whether individuals—including persons with a Florida, out-of-state, or federal felony conviction—will have to complete

11

payment of costs, fines, fees, restitution, or any other financial obligations related to a conviction or offense in order to be eligible to vote pursuant to Amendment 4 since September 1, 2016.

4.      All internal and external communications regarding identifying, calculating or obtaining information, or making determinations regarding individuals outstanding costs, fines, fees, restitution, or any other financial obligations related to a felony conviction or offense, since September 1, 2016.

5.      All internal and external communications regarding the reliability, credibility, and accuracy of records, data, and other information provided by the Department of State or any other governmental agency to demonstrate a voter or voter applicant's outstanding costs, fines, fees, restitution, or any other financial obligations related to a felony conviction or offense, since September 1, 2016.

6.      All internal and external communications regarding implementation of Amendment 4 or SB7066 and its precursor bills HB7089 and SB7086, including, but not limited to, communications since September 1, 2016 with any representative of the:

      a.   Department of State;

      b.   Department of Corrections;

      c.   Florida Commission on Offender Review;

      d.   Florida Clerks of Court;

      e.   Florida State Association of Supervisors of Elections; and

      f.   Florida Board of Executive Clemency.

7.      All internal and external communications regarding legislation related to Amendment 4, including SB7066 and precursor bills HB7089 and SB7086, including the

implementation, administration, and associated costs, procedures, and standards of Amendment 4 and associated legislation or prospective legislation, since November 6, 2018.

8.      Any and all written testimony and related analysis, whether in draft, note, or final form, concerning SB7066, HB7089, SB7086, or Amendment 4, provided to the Legislature or any of its committees—including but not limited to the Joint House Meeting of the Criminal Justice Subcommittee and the Judiciary Committee—or to the Financial Impact Estimating Conference.

9.      All internal and external communications regarding administering voter registration for persons with past felony convictions, since November 6, 2018.

10.     Documents showing outstanding costs, fines, fees, restitution, or any other financial obligations assessed by a court for a felony conviction for all voter registration applicants with a prior felony conviction, since March 3, 2011.

11.     Documents identifying the names and addresses of any voter applicant denied registration for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.045(1)(c), and the date of denial, since March 3, 2011.

12.     Documents identifying the names and addresses of any voter removed from the registration rolls for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.075(5), and the date of removal, since March 3, 2011.

13.     Documents identifying the names, mailing addresses, and address of any voters determined to be ineligible pursuant to Fla. Stat. § 98.075(5) who requested a hearing pursuant to Fla. Stat. § 98.075(7)(d), since March 3, 2011.

14.     All policies, procedures, guidance, and memoranda regarding the denial of registration for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.045(1)(c), since March 3, 2011.

15.    All policies, procedures, guidance, and memoranda regarding the removal of voters from the registration rolls for ineligibility due to a felony conviction, pursuant to Fla. Stat. § 98.075(5), since March 3, 2011.

16.    All policies, procedures, guidance, and memoranda regarding the denial of registration for ineligibility due to an applicant's failure to satisfy all costs, fines, fees, restitution, or any other financial obligations assessed by a court for a Florida, federal, or out-of-state felony conviction, since November 6, 2018.

17.    All policies, procedures, guidance, and memoranda regarding the removal of voters from the registration rolls for ineligibility due to applicant's failure to satisfy all costs, fines, fees, restitution, or any other financial obligations assessed by a court for a Florida, federal, or out-of-state felony conviction, since November 6, 2018.

18.    Any and all records, data, and other information provided by the Department of State as the basis for demonstrating that a registered voter has outstanding costs, fines, fees, restitution, or any other financial obligations assessed by a court for a Florida, federal, or out-of-state felony conviction, and therefore should be removed from the list of eligible voters, since July 1, 2019.

19.    All documents listing registered voters who may be ineligible to vote pursuant to SB7066, and its precursor bills HB7089 and SB7086.

20.    Please produce all documents referred to or relied upon in your answers to Plaintiffs' First Set of Interrogatories.

Respectfully submitted,

Date:   July 9, 2019

*/s/ Eliza Sweren-Becker*

*Counsel for Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty Riddle, Kristopher*

14

*Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Florida State Conference of the NAACP, Orange County Branch of the NAACP, and League of Women Voters of Florida*

## **CERTIFICATE OF SERVICE**

This is to certify that on July 9, 2019, I electronically sent a true and correct copy of the foregoing document to all counsel of record in this case.

/s/ Eliza Sweren-Becker

*Counsel for Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Florida State Conference of the NAACP, Orange County Branch of the NAACP, and League of Women Voters of Florida*