UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KELVIN LEON JONES, et al.,

    *Plaintiffs,*

    v.

RON DESANTIS, in his official capacity as Governor of Florida, et al.,

    *Defendants.*

Consolidated Case No. 4:19-cv-300-MW-MJF

**RAYSOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiffs Bonnie Raysor, Diane Sherrill, and Lee Hoffman ("the Raysor plaintiffs") respectfully move this Court to enter an order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). Following the enactment of SB 7066, the state of Florida now requires prospective voters with prior felony convictions to pay all legal financial obligations ("LFOs") related to their convictions—many of which are used as a revenue source for the state to fund its court system—before being permitted to register to vote. The law makes no exception for those otherwise eligible Floridians, like the Raysor plaintiffs, who lack the financial means to pay their LFOs.

1

The Raysor plaintiffs seek to represent a class pursuant to Count 2 of their amended complaint, which alleges that Florida's LFO requirement is a poll tax in violation of the Twenty-Fourth Amendment, and a subclass pursuant to Count 1 of their amended complaint, which alleges that Florida's LFO requirement constitutes wealth discrimination against those unable to pay their LFOs in violation of the Fourteenth Amendment.

For the reasons described herein, the Raysor plaintiffs' class and subclass claims are well suited for class treatment and satisfy the requirements of Federal Rule of Civil Procedure 23. The Raysor plaintiffs thus respectfully request the Court to certify these claims as a class action.

## ARGUMENT

The Court should certify Counts 1 and 2 of the Raysor plaintiffs' amended complaint for class treatment pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). To have a suit certified as a class action, plaintiffs must satisfy the requirements of Rule 23(a) as well as the additional requirements of one of three categories of class actions. Rule 23(a) has four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In assessing whether a suit satisfies Rule 23(a)'s requirements, courts are to err on the side of favoring class treatment, particularly in civil rights suits. "[I]t is important to remember that Rule 23(a) must be read liberally in the context of civil rights suits. This is especially true when the class action falls under Rule 23(b)(2) . . . ." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (citation and footnote omitted).

As discussed below, because the Raysor plaintiffs undoubtedly satisfy the requirements of Rule 23(a), and class certification is appropriate under Rule 23(b)(2), plaintiffs' motion for class certification should be granted.

I.      **Proposed Class Definition**

An order certifying a class action must define the class. *See* Fed. R. Civ. P. 23(c)(1)(B). The Raysor plaintiffs propose one class and one subclass. The plaintiff class, applicable to plaintiffs' Twenty-Fourth Amendment poll tax claim (Count 2) is defined as: "All persons otherwise eligible to register to vote in Florida who are denied the right to vote pursuant to SB 7066 because they have outstanding LFOs." The Raysor plaintiffs propose a subclass for their Fourteenth Amendment wealth discrimination claim (Count 1) defined as: "All persons otherwise eligible to register

to vote in Florida who are denied the right to vote pursuant to SB 7066 because they are unable to pay off their outstanding LFOs due to their socioeconomic status."[1]

Should the Court grant the injunctive and declaratory relief plaintiffs seek, whether with respect to the class as a whole or the subclass, Florida will be required to grant the class and subclass members the right to vote. The proposed class and subclass definitions rely upon objective criteria—*e.g.*, whether a class member has outstanding LFOs and the subclass member's existing financial resources. The definitions satisfy the requirements of Rule 23.[2]

---

[1] Upon consultation, plaintiffs request that the Court exclude from the class any person who is a plaintiff, represented by their own counsel, in the other cases that have been consolidated before this Court. *See Harris v. Rainey*, 299 F.R.D. 486, 489 (W.D. Va. 2014) (granting request to exclude from class the plaintiffs in another pending case seeking to enjoin same law).

[2] As the Raysor plaintiffs have alleged in Counts 3 and 4 of their amended complaint, Florida's criminal records are in a state of disarray, making it exceedingly difficult—and sometimes wholly impossible—to determine whether a person actually has outstanding LFOs, and if so whether those LFOs render an individual ineligible to register and vote under SB 7066. Indeed, many class members are undoubtedly eligible under SB 7066, yet cannot affirm their eligibility on a voter registration form because the state of Florida's criminal records makes it impossible for them to do so. Likewise, state election officials have proven wholly unable to explain which LFOs are disqualifying under SB 7066 and which are not disqualifying under the law's own terms.

Although the ascertainability of a class is sometimes treated as an implied requirement for classes seeking monetary relief under Rule 23(b)(3), such a requirement does not exist with respect to classes certified under Rule 23(b)(2). *See Manual for Complex Litigation* § 21.222 (4th ed. 2004) ("[B]ecause individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not."). Moreover, notice is not required in Rule 23(b)(2) actions, and it is the case that

> relief obtained on behalf of the class is injunctive and therefore does not require distribution to the class. Because defendants are legally obligated to comply [with any relief the Court orders] . . . it is usually unnecessary to define with precision the persons entitled to enforce compliance. Therefore, it is not clear that the implied requirements of definiteness should apply to Rule 23(b)(2) class actions at all.

## II.     The Raysor Plaintiffs Satisfy the Criteria of Rule 23(a)

### A.     Numerosity

The Raysor plaintiffs easily meet the numerosity requirement of Rule 23(a)(1). To be maintained as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has noted that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted). Plaintiffs' evidentiary burden to prove numerosity is not high. "[A]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)); *id.* (noting plaintiff must make "*some* showing" (emphasis in original));

---

1 William B. Rubenstein, *Newberg on Class Action* § 3:7 (5th ed. 2017) (internal quotation marks omitted). Thus, "while the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)." *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) (citing *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)); *see also Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (holding that "ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief"); Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (providing "illustrative" examples of (b)(2) classes as "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration"); *see also Braggs v. Dunn*, 317 F.R.D. 634, 671-73 (M.D. Ala. 2016) (surveying authorities and concluding that (b)(2) class "need not be ascertainable").

*Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 537 (N.D. Ala. 2001) ("Estimates as to the size of the proposed class are sufficient for a class action to proceed."). Moreover, the Eleventh Circuit has explained that "the relevance of the numerosity requirement to class certification may in appropriate cases be less significant where in fact class wide discrimination has been alleged." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). And "where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Id.*

The numerosity requirement is plainly met here. As Professor Dan Smith has explained in his supplemental expert report, in the 58 counties for which he was able to obtain data, over 430,000 otherwise eligible Floridians are precluded from registering to vote solely because of their outstanding LFOs. Doc. 153-1 at 5. The actual number is likely to be substantially higher, given that many of Florida's most populous counties, including *inter alia*, Broward, Hillsborough, Miami-Dade, and Pinellas, were not among the counties for which Professor Smith was able to obtain data at the time he submitted his supplemental report. *Id.* at 24 n.26. Many people with past convictions cannot afford to pay these fines and fees. The Florida Circuit Criminal Courts in 2018 reported that the collections rate for fines and fees was just 20.55%. *See* Fla. Court Clerks & Comptrollers, *2018 Annual Assessments and Collections Report, Statewide Summary – Circuit Criminal* at 10 (2018),

https://flccoc.org/wp-content/uploads/2018/12/2018-Annual-Assessments-and-Collections-Report.pdf. Over 85% of all felony-related fines and fees in Florida are categorized as at risk—meaning the courts have "minimal collections expectations" due to the defendant's lack of financial resources. *Id.* Of all felony-related LFOs, 22.9% are labeled at risk (*i.e.*, "minimal collections expectations") specifically because the defendant was indigent. *Id.* The Raysor plaintiffs easily meet the numerosity requirement of Rule 23(a)(1).

### B. Commonality

Plaintiffs also satisfy the requirement that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "[F]or purposes of Rule 23(a)(2), [e]ven a single [common] question will do." *Id.* at 359 (internal quotation marks omitted; first bracket added). The commonality requirement is satisfied if the question "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

The commonality requirement is met here. This case presents common questions, including, but not limited to: (1) whether SB 7066 discriminates on the

basis of wealth in violation of the Fourteenth Amendment, (2) whether SB 7066 constitutes a poll tax in violation of the Twenty-Fourth Amendment, (3) whether SB 7066 creates an impermissible risk of erroneous deprivation of the fundamental right to vote in violation of the Fourteenth Amendment. These legal issues are common both to the claims of the Named Plaintiffs and to the claims of the unnamed class members. Florida disenfranchises all persons with prior felony convictions who have outstanding LFOs. Florida law applies in a uniform manner to all class and subclass members and allows no discretion for differential treatment, including no exception for those who lack the financial means to pay their LFOs.

For all of these questions, class treatment here has the capacity "to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). Unlike in *Wal-Mart*, where the Court found that commonality did not exist because plaintiffs had not "identified a common mode of [each supervisor] exercising discretion that pervade[d] the entire company," *id.* at 356, here, Florida's law affects all class and subclass members in the exact same manner—by preventing them from voting based upon their outstanding LFOs or inability to pay those LFOs. Injunctive and declaratory relief will resolve all class and subclass members' claims "in one stroke." *Id.* at 350. Plaintiffs easily satisfy the commonality requirement.

8

### C. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). For the same reasons that plaintiffs' claims meet the commonality requirement, they also meet the typicality requirement. Indeed, the Supreme Court has noted that the typicality, adequacy of representation, and commonality requirements "tend[ ] to merge." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The typicality requirement focuses on the named and unnamed plaintiffs' *legal* claims, rather than their factual circumstances. *See id.* ("The typicality requirement may be satisfied despite substantial factual differences [ ] when there is 'strong similarity of legal theories.'" (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985))).

Here, there is no question that the named plaintiffs' claims are in fact identically aligned with those of the unnamed class members. Named plaintiffs Raysor, Sherrill, and Hoffman all have outstanding LFOs, and all lack the financial means to pay their LFOs. *See* Ex. 1 (Raysor Decl.) ¶¶ 5, 8; Ex. 2 (Sherrill Decl.) ¶¶ 6-7, 14; Ex. 3 (Hoffman Decl.) ¶¶ 7, 10-11. The named plaintiffs seek injunctive and declaratory relief permitting them to vote, and the relief they seek is identical to

9

that sought by all of the unnamed class members who are similarly disenfranchised by Florida law. That relief would resolve the claims of all class and subclass members.

The claims of the named plaintiffs thus are entirely aligned with the unnamed class members—all seek to have their voting rights restored, notwithstanding their outstanding LFOs or socioeconomic status—and injunctive and declaratory relief will address all claims. The typicality requirement is plainly satisfied.

### D. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and this inquiry overlaps with the inquiry into commonality and typicality, *see Amchem*, 521 U.S. at 626 n.20. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 625. A minor conflict is insufficient to cause representatives to be deemed inadequate. "[T]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). For a conflict to be fundamental, "some party members [must] claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* In addition, the adequacy of representation inquiry is aimed at

determining "whether the representatives will adequately prosecute the action." *Id.* "[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. Bradford,* 827 F.2d 718, 727 (11th Cir. 1987) Only where the named plaintiffs "virtually have abdicated to their attorneys the conduct of the case," is adequacy at issue. *Id.* at 728.

      Here, the representatives are plainly adequate. In this case, the named plaintiffs do not have *any* conflict—let alone a fundamental one—with the other members of the class and subclasses. The injunctive and declaratory relief they seek will benefit the entire class in the same manner—grating the right to vote or the ability to regain that right regardless of their outstanding LFOs or socioeconomic obstacles—for all class and subclass members. Moreover, the named plaintiffs are knowledgeable about the facts, the litigation, and the significant harm caused by their disenfranchisement, and are dedicated to actively participating in the litigation on behalf of all class and subclass members. *See* Ex. 1 (Raysor Decl.) ¶ 10; Ex. 2 (Sherrill Decl.) ¶ 15; Ex. 3 (Hoffman Decl.) ¶ 12.

      So too are plaintiffs' counsel. "The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20. Class counsel in this case easily meet the adequacy requirement of Rule 23(a)(4). "The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified,

11

experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:72 (5th ed. 2017) (internal quotation marks and footnotes omitted). "As to the adequacy of counsel for the class representative, absent specific proof to the contrary, the adequacy of class counsel is presumed." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015) (internal quotation marks and bracket omitted). Plaintiffs are represented by a number of counsel with substantial experience in election law and voting rights litigation, civil rights litigation generally, and class actions. *See, e.g.*, Ex. 4 (Dunn Decl.); Ex. 5 (Gaber Decl.).

For these reasons, as demonstrated in counsel's declarations, class counsel also satisfy the requirements of Rule 23(g), which requires that the Court appoint class counsel at the time of certification, and that in doing so the Court consider (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

12

Plaintiffs have satisfied their initial burden to demonstrate adequacy of representation, 3 *Newberg on Class Actions*, *supra* § 3:72, and absent any evidence to the contrary, the Court should thus presume the adequacy has been satisfied, *id.*

### III. Class Certification Is Appropriate Under Rule 23(b)(2)

The Court should certify the class pursuant to Rule 23(b)(2). A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has noted that certification under Rule 23(b)(2) is particularly appropriate in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem*, 521 U.S. at 614. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Nagareda, *supra* at 132).

Such is the case here. First, this is exactly the type of civil rights action Rule 23(b)(2) was created to foster. Florida categorically denies citizens with prior felony convictions of the right to vote based solely on whether they have completed paying their outstanding LFOs—the bulk of which serve as revenue for the state to fund its court system—without any exception for those who lack the financial means to pay.

There are no differences among the class and subclass members, and therefore injunctive and declaratory relief is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It is precisely the class and subclasses' unifying features—their felony convictions, their outstanding LFOs, and their inability to pay LFOs—that Florida's law targets. The Court should certify this action under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, the Raysor plaintiffs respectfully request the Court certify their proposed class and subclass pursuant to Rule 23(b)(2) and appoint the undersigned as class counsel.

September 26, 2019                    Respectfully submitted,


Chad W. Dunn
Florida Bar No. 0119137
1200 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 783-2190
Facsimile: (305) 783-2268
chad@brazilanddunn.com

/s/ Mark P. Gaber
Danielle Lang (DC Bar No. 1500218)*
Mark P. Gaber (DC Bar No. 988077)*
Molly E. Danahy (DC Bar No. 1643411)*
Blair Bowie (DC Bar No. 252776)*
Jonathan Diaz (DC Bar No. 1613558)*
1101 14th Street NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
dlang@campaignlegal.org

mgaber@campaignlegal.org
mdanahy@campaignlegal.org
bbowie@campaignlegal.org
jdiaz@campaignlegal.org

*admitted *pro hac vice*

## CERTIFICATE OF COMPLAINCE

This brief complies with the word count requirement of Local Rule 7.1(f) because it contains fewer than 8,000 words; it contains 3,360 words. The accompanying motion contains fewer than 500 words.

/s/ Mark P. Gaber
Mark P. Gaber

*Counsel for Raysor Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on September 26, 2019, a copy of the foregoing was served on counsel of record via the Court's CM/ECF system.

<u>/s/ Mark P. Gaber</u>
Mark P. Gaber

*Counsel for Raysor Plaintiffs*