IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KELVIN LEON JONES et al.,

    Plaintiffs,

v.

CONSOLIDATED
CASE NO.  4:19cv300-RH/MJF

RON DeSANTIS et al.,

    Defendants.

_____/

## ORDER STAYING THE PRELIMINARY INJUNCTION IN PART

    These consolidated cases arise from "Amendment 4," a voter-initiated amendment to the Florida Constitution that automatically restores the right of most felons to vote, but only upon completion of all terms of sentence. A preliminary injunction was entered on October 18, 2019 in favor of the individual plaintiffs against the Florida Secretary of State and the Supervisors of Elections of the counties where the plaintiffs are domiciled. The preliminary injunction was narrower than the plaintiffs requested.

The Secretary, joined by the Governor, has appealed. They have moved for a stay pending appeal. The United States Court of Appeals for the Eleventh Circuit has ordered expedited briefing and has set oral argument for January 28, 2020.

The preliminary injunction has two parts. First, an enjoined defendant must not take any action that both (a) prevents a plaintiff from *applying or registering* to vote and (b) is based only on failure to pay a financial obligation that the plaintiff *asserts* the plaintiff is genuinely unable to pay. Second, an enjoined defendant must not take any action that both (a) prevents a plaintiff from *voting* and (b) is based only on failure to pay a financial obligation that the plaintiff *shows* the plaintiff is genuinely unable to pay. This means, in substance, that a plaintiff who *asserts* inability to pay can *register*, and a plaintiff who *shows* inability to pay can *vote*.

This order stays the second part of the injunction but not the first. In the unusual circumstances of this case, a stay of the first part of the injunction would interfere with the ability of the plaintiffs to exercise their constitutional rights, even if the Eleventh Circuit rules in their favor, and would interfere with the ability of state officials to comply with any such ruling.

**I. Background**

Even in our highly partisan age, the fundamental principles governing elections should garner unequivocal support from both sides. Every legally eligible

voter should be allowed to vote. Those who are ineligible should not be allowed to vote. The side that gets the most legally cast votes should win. Steps can and should be taken to ensure the regularity and integrity of the process—voters can be required to register, for example, and to vote in an authorized manner—but the burdens should not be so great that they deter eligible citizens from voting or skew the process.

It would be hard for anyone of any political stripe to contest these fundamental principles. In our highly partisan age, though, these principles sometimes garner only lip service. There are those who would suppress legal votes by making it harder for some to register, who would deter eligible voters by threatening unfounded prosecutions, who would close early voting on days more popular with some than with others, who would make polling places less accessible for some than for others, and who would make voters in some precincts but not others stand in long lines on election day. On the other side, there are those who would count votes thought likely to favor their side, legal or not, including, for example, when an ostensible voter's signature does not match the signature on file, even when given an opportunity to cure. There are those who would extend or curtail the counting of votes based not on neutral principles but on who was ahead or behind at the time.

The role of the federal courts in election cases is not to supplant the political process but to ensure that it functions consistently with the United States Constitution. Emotions run hot on both sides. But the level of professionalism and candor expected of the attorneys is not lower—if anything it is higher—because emotions run hot and the stakes are high. Ignoring or misrepresenting precedent or the record does not advance one's cause.

## II. The Standard for a Stay Pending Appeal

A four-part test governs stays pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (applying the same test); *Venus Lines Agency v. CVG Industria Venezolana De Aluminio*, 210 F.3d 1309, 1313 (11th Cir. 2000) (same).

## III. Likelihood of Success on the Merits

The October 18 order that granted the preliminary injunction fully addressed likelihood of success on the merits. The order followed an Eleventh Circuit decision squarely addressing the precise issue in this case: the ability of the State of Florida to condition restoration of a felon's right to vote on payment of amounts

the felon is genuinely unable to pay. The Eleventh Circuit summed it up nicely: "Access to the franchise cannot be made to depend on an individual's financial resources." *Johnson v. Governor of Florida*, 405 F.3d 1214, 1216-17 n.1 (11th Cir. 2005) (en banc) (citation omitted). The preliminary injunction scrupulously followed *Johnson*.

This order adds just two comments.

A

Prior to issuance of the preliminary injunction, the Governor and Secretary, briefing the issues in lock step, adamantly opposed the plaintiffs' claims across the board. Immediately after entry of the preliminary injunction, however, the Governor agreed, or at least appeared to agree, with the ruling.

The Governor issued this statement: "Today's ruling affirms the Governor's consistent position that convicted felons should be held responsible for paying applicable restitution, fees and fines *while also recognizing the need to provide an avenue for individuals unable to pay back their debts as a result of true financial hardship*."[1] The Governor has acknowledged on the record in this court that this was and is an accurate statement of his position. Hr'g of Dec. 3, 2019 Tr., ECF No.

---

[1] *See* Lawrence Mower, *Being poor shouldn't stop Florida felons from voting, judge rules in Amendment 4 case*, Tampa Bay Times (Oct. 19, 2019), https://www.tampabay.com/florida-politics/buzz/2019/10/19/being-poor-shouldnt-stop-florida-felons-from-voting-judge-rules-in-amendment-4-case/ (emphasis added).

Case No. 4:19cv300-RH-MJF

239 at 5-8. The preliminary injunction requires the state to do nothing more than provide an avenue for individuals unable to pay as a result of true financial hardship—precisely the result the Governor touted as his "consistent position."

The October 18 order sets out substantial authority supporting this result.

B

In their motion to stay, the Governor and Secretary fault the October 18 order for not quoting enough of *Johnson*. It is a curious criticism.

First, the order accurately quoted *Johnson*'s entire discussion of whether a state can deny restoration of a felon's right to vote based on failure to pay amounts the felon is unable to pay—the precise issue underlying the preliminary injunction. *Johnson* said the right to vote "cannot be made to depend on an individual's financial resources." *Johnson*, 405 F.3d at 1216 n.1.

The October 18 order did not quote this additional *Johnson* statement: "we say nothing about whether conditioning an application for clemency on paying restitution would be an invalid poll tax." *Id*. A poll tax, of course, is unconstitutional regardless of ability to pay. Whether a person can be required to pay a sum as a condition of voting, regardless of ability to pay, is a different issue from whether a person can be denied the right to vote for failing to pay an otherwise-proper exaction that the person is genuinely unable to pay. The October 18 order turned on the latter issue, not the former, so the order quoted *Johnson*'s

discussion of the latter issue, not the former. When it issued *Johnson*, the Eleventh Circuit surely understood the difference between the Fourteenth and Twenty-Fourth Amendments and between a poll-tax claim and an inability-to-pay claim. When I issued the October 18 order, I knew the difference, too.

Second, the criticism of the October 18 order's omission of one sentence from *Johnson* is especially curious in light of the Governor's and Secretary's treatment of *Johnson* prior to issuance of the October 18 order. The plaintiffs prominently and repeatedly quoted *Johnson* in their preliminary-injunction brief. *See, e.g.*, Pls.' Mem., ECF No. 98-1 at 44, 50, 52. In their brief in response, the Governor and Secretary included the decision in a string-cite on a settled principle and otherwise ignored *Johnson* altogether. *See* Defs.' Resp., ECF No. 132 at 3. In opening statement at the preliminary-injunction hearing, the Governor said that *Johnson* "in no uncertain terms" ruled that it was constitutional for Florida to condition restoration of the right to vote on payment of financial obligations—an incomplete, if not downright inaccurate, description of *Johnson*. Hr'g of Oct. 7, 2019 Tr., ECF No. 204 at 14. Having made no effort to come to grips with *Johnson* in advance, the Governor's and Secretary's newfound criticism of the October 18 order rings hollow.

What matters now, of course, is not how well these issues were briefed or how well the October 18 order was written, but the likelihood of success on appeal.

Because I believe *Johnson* squarely addresses the controlling issue and that the Eleventh Circuit will adhere to the law of the circuit—the Eleventh, perhaps more rigorously than any other court in the country, follows its own prior decisions—I believe the plaintiffs, not the Governor and Secretary, are likely to prevail on appeal.

### IV. Irreparable Injury and the Public Interest

The second, third, and fourth factors governing a stay pending appeal require a rigorous analysis of what the preliminary injunction does and does not require and what will happen if a stay is or is not entered. These, more than likelihood of success on the merits, are the critical factors on the stay issue here.

As set out above, the preliminary injunction has two parts. First, a plaintiff who *asserts* inability to pay can register to vote. Second, a plaintiff who *shows* inability to pay can vote. The stay analysis is markedly different for the two parts of the injunction.

#### A. *Registration*

First, registration. If this part of the injunction remains in force and is not stayed, a plaintiff who has already registered (as some have) will be allowed to stay on the voter roll, and a plaintiff who has not yet registered will be able to do so. If, prior to an election, the Eleventh Circuit affirms the preliminary injunction, the plaintiff will be in position to vote on a showing of genuine inability to pay (the

subject of the second part of the preliminary injunction). If, on the other hand, the Eleventh Circuit reverses the preliminary injunction, the plaintiff will not be allowed to vote and will instead be removed from the roll. The only harm will have been administrative inconvenience. Regardless of the Eleventh Circuit's ruling, nobody will have suffered *irreparable* harm. The fundamental principle set out above will be honored: those eligible to vote will be allowed to do so; those who are ineligible will not. The side that gets the most lawful votes will win.

If, on the other hand, this part of the injunction is stayed, a plaintiff who has not yet registered may be prevented from doing so, and a plaintiff who has already registered may be removed from the roll. This may preclude an eligible plaintiff from voting even if the Eleventh Circuit affirms the preliminary injunction. The explanation is this. Florida requires registration 29 days before an election. *See* Fla. Stat. § 97.055(1)(a). The next major election is the presidential primary on March 17, 2020. The deadline to register to vote in that election is February 18. If this part of the preliminary injunction is stayed, then even if the Eleventh Circuit affirms the preliminary injunction immediately after the January 28 oral argument, the plaintiffs will have little time left to register to vote in the March 17 primary. If a stay is entered and the Eleventh Circuit affirms the preliminary injunction just three weeks after the oral argument, it will be too late—the plaintiffs will be constitutionally entitled to vote, but the deadline to register will have passed. The

same will be true if the Eleventh Circuit ruling comes *more than* three weeks after the oral argument. As a result, the plaintiffs will suffer irreparable harm: the denial of their right to vote. Or perhaps an injunction will be entered requiring the Supervisors to allow them to vote even though they failed to register on time—a constitutionally permissible result, perhaps, but not one that a rational decisionmaker would plan its way into.

The public interest lies primarily in honoring the fundamental principle that those who are eligible should be allowed to vote and those who are ineligible should not be allowed to vote. Leaving in place the part of the preliminary injunction that allows registration serves this purpose. Allowing a plaintiff to register, without more, will not cause irreparable harm to anyone. If it turns out the preliminary injunction was wrong, the Supervisors and the Secretary will have suffered an administrative burden, but not much of one, and in any event, this is not irreparable harm. And if it turns out the preliminary injunction was right, an administrative burden will have been avoided—registrations will have been allowed in the ordinary course rather than in a rush at or even after the deadline.

In reaching these conclusions, I have not overlooked the possibility that if the Eleventh Circuit reverses the preliminary injunction, a plaintiff who has registered may attempt to vote illegally. At least for the 17 plaintiffs directly affected by the preliminary injunction, the risk seems slight; it would be a brazen

plaintiff who attempted to vote anyway, and an incompetent Secretary or Supervisor who allowed it to happen. In any event, a felon who would defy an Eleventh Circuit ruling might well deny a stay order. Eliminating dishonesty is a separate problem, more imaginary than real, that has little if any relevance to the stay issue.

### B. *Voting*

The analysis is different for voting. If a plaintiff is allowed to vote but it turns out the plaintiff is ineligible, the State will suffer irreparable harm, and the public interest will not be served. The public interest in the integrity of elections outstrips, though just barely, the interest of an individual plaintiff in voting. This order stays the part of the preliminary injunction that allows a plaintiff to vote.

But this order also limits the stay. The stay will expire on February 11, 2020, two weeks after the scheduled oral argument. By that point, if this case proceeds like most others, the Eleventh Circuit panel will have at least a tentative view of the likely outcome. That court will be far better positioned than this one to decide whether the preliminary injunction's voting provisions should be allowed to take effect.

### V. Conclusion

For these reasons,

IT IS ORDERED:

Case No.  4:19cv300-RH-MJF

1. The motion to stay, ECF No. 234, is granted in part and denied in part.

2. Paragraphs 4 and 7 of the preliminary injunction, which deal with voting, *see* ECF No. 207 at 54 ¶ 4 & at 55 ¶ 7, are stayed until the earlier of (a) issuance of an opinion of the United States Court of Appeals for the Eleventh Circuit affirming the preliminary injunction or dismissing the Secretary's appeal, regardless of whether the mandate has issued, or (b) February 11, 2020.

3. The remainder of the preliminary injunction is not stayed and thus remains in force.

SO ORDERED on December 19, 2019.

s/Robert L. Hinkle<br>United States District Judge