EXHIBIT 11

**March 2, 2020**

**United States District Court**
**for the Northern District of Florida**
**Tallahassee Division**

Kelvin Jones,

       Plaintiffs,

v.                                           Consolidated Case No. 4:19-cv-300

Ron DeSantis, etc., et al.,

       Defendants.
_____


**Second Supplemental Expert Report of Daniel A. Smith, Ph.D.**
**Professor and Chair**
**Department of Political Science**
**University of Florida**
**234 Anderson Hall**
**Gainesville, FL 32611-7325**

On Behalf of Plaintiffs Jeff Gruver, Emory Marquis "Marq" Mitchell, Betty
Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven
Phalen, Clifford Tyson, Jermaine Miller, Curtis D. Bryant, Jr., Jesse D. Hamilton,
LaToya Moreland, Florida State Conference of the NAACP, Orange County
Branch of the NAACP, and League of Women Voters of Florida


**Daniel A. Smith, Ph.D.**

## I.   Background and Qualifications

1.   This second supplemental declaration updates my original report, dated August 2, 2019, and my supplemental report, dated September 17, 2019, submitted in this case. My background and qualifications, in addition to my curriculum vitae and rate of pay, have been disclosed to Defendants by counsel for plaintiffs.

2.   This declaration includes data from all of Florida's 67 counties. The data can be used to gauge the impact of SB7066 on the ability of persons of voting-age living in Florida who appear to be eligible to register and vote, but for legal financial obligations ("LFOs"), that is fines, fees, costs, and/or restitution assessed as part of a felony conviction, including, when possible, any civil liens stemming from those LFOs.[1] Although included in the public records request, fewer than a dozen of the 67 county clerks of court provided data on restitution and civil liens.[2]

---

[1] SB7066 conditions restoration of voting rights on the satisfaction of LFOs imposed "in the four corners of the sentencing document." Fla. Stat. § 98.075(2)(a). It is beyond the scope of this report to determine whether or how this limitation is applied, and the data that I have received from county clerks of court do not differentiate among outstanding LFOs, and may not include restitution or civil liens.

[2] Between June 4, 2019 and July 19, 2019, a team of researchers working in partnership with the ACLU-FL made public records request to all 67 county clerks of court for individual-level data for every person in their county, from 1980 to the present, with a felony conviction (guilty or no contest plea). Information from all available fields maintained in a county's Case Management System ("CMS") was requested, including full name, Florida Department of Corrections number, the FDLE's OBTS number, address, date of birth, gender, race, charges (offense category), convictions (prior and current convictions within the county), current

3.      In formulating my opinions in this supplemental report, I utilize the same methods in my original report and supplemental reports. I draw on standard sources in political science analyses, including, but not limited to: publicly available data and reports produced by the Florida Department of Corrections ("FDC"), data from the state's county clerks of court and the association of the Florida Court of Clerks & Comptrollers ("FCCC"),[3] reports from the Florida Department of Law Enforcement ("FDLE"), and information from various state and local agencies, national public interest groups, and scholarly studies.

## II.     Summary of Findings

4.      As I emphasized in my original report and in my supplemental reports, as far as I can determine, the State of Florida does not maintain a publicly available, unified, up-to-date, centralized database or repository that compiles information on whether an individual with a felony conviction has completed all the terms of his or her sentence, including parole, probation, or community control or supervision, or has satisfied any LFOs tied to a felony conviction, to say nothing

status of supervision (parole, probation, release, etc.), any outstanding LFOs, and expected date of completion of supervision (or sentencing effective date and the length of incarceration or community supervision). Escambia, the final county to provide data, fulfilled the public records request in January 2020.

[3] Of the 67 counties, 12 clerks of court responded to the public records requests by generating their own data; each has a unique data format. In addition, 55 counties provided data through the FCCC. These counties have data files with identical formats; however, these FCCC counties employed varying rules for how they format their data. The idiosyncrasies and variance across the data files complicate the determination of the balance due of LFOs for each individual.

of such penalties when they are converted into civil liens. As such, it is unclear to me how an individual with a felony conviction could determine his or her eligibility to register and vote under the conditions established by SB7066. Equally problematic, in my expert opinion, is that the state's 67 county Supervisors of Elections and the Florida Secretary of State cannot definitively determine if an individual with a past felony conviction has outstanding disqualifying LFOs or is eligible to register and vote in Florida under SB7066. Even if the State of Florida somehow managed to create a database of eligible persons who were convicted of a felony in Florida with precise information about all LFOs tied to a felony conviction, such a database would almost assuredly exclude those persons who have a federal felony conviction or those who have moved to Florida with an out-of-state felony conviction.

5.     As in my original and supplemental reports, and as explained below, my estimates of the number of persons in Florida with felony convictions (which exclude out-of-state and federal felony convictions) who are likely permitted under SB7066 to register to vote are conservative—that is, they are biased *against* inflating the number of persons with felony convictions who are otherwise eligible to vote under SB7066 but for their outstanding LFOs. For example, although these data were requested, most of the counties did not provide data on restitution owed or civil liens. As a result, my calculations likely underestimate the total amount of

outstanding LFOs for many individuals who owe restitution, or who have LFOs that have been converted into a civil lien.

6.     Furthermore, my calculations regarding persons' LFO obligations only include persons in Florida with Florida state convictions, who have fulfilled the terms of their felony conviction (other than murder or sexual offense), including completion of incarceration and release from parole, probation, or community control or supervision. My calculations are based on data obtained from all 67 county clerks of court,[4] which I use to determine any outstanding LFOs a person who has otherwise met the conditions of a felony conviction might still owe.

7.     There are certainly limits to my calculations, but they are intentionally conservative, in that they likely *underestimate* the number (and percentage) of individuals with felony convictions in Florida who have met all the terms of their sentence but who owe LFOs. Undoubtedly, there are likely additional individuals with past felony convictions who are eligible to have their voting rights restored in Florida but for outstanding LFOs, but I have no data from other states' criminal justice systems or the federal court system regarding the LFOs of individuals who

---

[4] As with my previous reports, this report does not include felons convicted in Escambia County who are in FDC's Offender Based Information System ("OBIS") database because the individual-level LFOs data received from the Escambia clerk of court did not provide the month or day of an individual's birthdate. An individual's full birthdate is needed to match a county's LFOs data to FDC's felon release data. This report, however, does include data on felons convicted in Escambia County who have been released from county control or supervision and who are not in FDC's OBIS database.

now reside in Florida. In addition, the data obtained directly from the Florida county clerks of court are by no means immune from errors. The clerks of court data obtained from the FCCC, working on behalf of many of the county clerks of court, have multiple formats regarding a felony conviction, different conventions of recording length of sentences and LFOs, and different ranges of dates of felony convictions included in their own local databases. As I describe in my initial report, there is no unique identification number for me to definitively link individuals across various data sources across the state's 67 counties and FDC's Offender Based Information System ("OBIS").[5] I have also uncovered numerous instances of missing data, data entry errors, and inconsistent or illogical data entries in county clerks of court official data, as well as FDC's data, all of which complicate my analysis. That said, I have taken every step to make sure my calculations do not overinflate the number of individuals with felony convictions in

---

[5] When attempting to link across big databases that lack a unique identifier, there is always a trade-off between coverage and precision. As I describe in my earlier reports, there will undoubtedly be some matching errors when linking individuals from FDC's OBIS database with individuals in the CMS databases maintained by the county clerks of court. My approach is to change all text in both databases to lowercase, removing all punctuation, concatenate a string consisting of a person's first name, last name, name suffix, date of birth, race code, and sex code. I then attempt to exactly match the concatenated strings across both datasets and across individual county datasets. Errors in any matching exercise can result from data that are temporally asynchronous across the various data sources, as well as from issues related to missing data, coding errors in the raw data, inconsistent and illogical data entries, and truncated data, all of which exist in the official administrative data I received through public records requests.

Florida, nor overinflate the number of individuals who are likely eligible to have their voting rights restored but who owe LFOs under SB7066 .

8.      As in my original and supplemental reports, I provide breakdowns by race (e.g., whether someone is identified as black or white)[6] of those persons with felony convictions (other than murder or sexual offense) who have been released from FDC (as of January 2020)[7] or county control or supervision, including those who have outstanding LFOs and those who have a balance of $0.00 in LFOs.[8] I also provide information from two counties on LFOs owed by individuals released from county control or supervision who were convicted of a qualifying felony and

---

[6] When totals are provided, individuals of other racial/ethnic categories are included in the calculations.

[7] FDOC_Jan_2020.mdb database downloaded on January 21, 2020. FDC's OBIS data are available for download at: http://www.dc.state.fl.us/pub/obis_request.html. The OBIS database is made available purportedly "to aid in the recording of the offender's day-to-day activities as well as to record historical data" (State of Florida, Auditor General, Report No. 2014-202, June 2014, Department of corrections Offender Based Information System (OBIS), "Information Technology Operational Audit," available: https://flauditor.gov/pages/pdf_files/2014-202.pdf. Unfortunately, FDC's OBIS database—at least the database that is available for public download—does not provide any information regarding LFOs. The publicly available OBIS database also does not include reliable information about persons with felony convictions who were not placed under FDC's custody, but instead were in county jail, probation, or community control or supervision.

[8] Data from all available fields maintained in a county's CMS was requested from the 67 clerks of court, including an individual's full name, FDC number, the FDLE's OBTS number, address, date of birth, gender, race, charges (offense category), convictions (prior and current convictions within the county), current status of supervision (parole, probation, release, etc.), any outstanding LFOs, and expected date of completion of supervision (or sentencing effective date and the length of incarceration or community control or supervision).

whether they were represented by a public defender. In addition, I provide data from the FCCC's annual reports that show that county clerks of court in Florida have minimal expectation that a majority of formerly incarcerated individuals will be able to pay their assessed LFOs because they face significant economic barriers.

9.      Overall, of the more than 1 million persons convicted of a qualifying felony in Florida and who have completed all terms of their sentence (including parole, probation, or community control or supervision), my estimates from across the state's 67 counties indicate that 77.4% of these individuals are *not* qualified to register or to vote under SB7066 due to outstanding felony-related LFOs. In other words, I estimate that slightly less than four-in-five of all persons in Florida with a felony conviction in Florida (other than murder or a sexual offense) and who have completed all terms of their sentence, are likely not qualified to register to vote under SB7066 due to outstanding felony-related LFOs. This disqualification rate of individuals with felony convictions able to regain their voting rights under SB7066 is quite consistent with my initial report, which included 373,256 individuals across 48 counties from data provided by the clerks of court and FDC, as well as my supplemental report.[9]

---

[9] To my knowledge, the county clerks of court are not required to have an FDC number for a person in their CMS database; it is usually only provided when a county clerk of court receives notice of a violation of probation. The CMS database does include an individual's Uniform Case Number ("UCN"), at least since January 1, 2003 after such a requirement was ordered in 1998 by the Supreme Court of Florida. Each UCN is a unique alpha/numeric string of characters that can be used to identify where a case was filed; the year in which the

### III.   Florida Does Not Maintain a Unified, Up-to-Date, Centralized Database or Repository of Persons with Felony Convictions and their related LFOs that is Publicly Available

10.   I continue to maintain, as I wrote in my initial report, that as far as I can determine, "the State of Florida does not maintain a publicly available unified, up-to-date, centralized database or repository that compiles information on whether an individual with a felony has completed all the terms of his or her sentence, including parole, probation, or community control or supervision, or has satisfied any LFOs tied to a felony conviction, to say nothing of such penalties when they are converted into civil liens." I will not rehash here the reasoning I laid out in detail in that report, only to say that I am not aware of anything that should change my opinion on this matter.

11.   Furthermore, even if an individual is able to identify all the LFOs he or she owes in one Florida county, he or she might have difficultly determining any outstanding LFOs he or she owes in another Florida county, in another state, or in the federal court system. On this point, I agree with the House sponsor of SB7066, who stated during the 2019 legislative session that "[t]here is no stakeholder in the State of Florida that can serve as a source of truth that somebody completed all

---

case was filed; the court division/case type where the case was filed; the sequential number denoting the case; an identifier for multiple parties or defendants involved in a case; and the branch location where the case was filed. *See* Supreme Court of Florida, "Uniform Case Numbering System," available at: https://www.flcourts.org/content/download/219191/1981092/AO_Uniform_Case_Numbering_12-03-98_amended.pdf (last accessed July 23, 2019).

terms of their sentence."[10] This is because Florida's criminal justice system is highly decentralized,[11] and as such, relevant data are "spread out all over government," making it nearly impossible for state and local officials to compile the necessary data.[12] Thus, it is exceedingly difficult, if not practically impossible, for Supervisors of Elections, the Office of the Secretary of State, or third-party organizations conducting voter registration drives—much less a citizen in Florida who has been released from control or supervision for a qualifying felony—to determine whether an individual with a qualifying felony conviction is eligible to register and vote in the state.

12.     Even if such a unified, centralized database was created by a state agency or private contractor that included whether an individual had met all the obligations of his or her LFOs tied to a felony conviction, I would remain highly

---

[10] *See* Video: Apr. 23, 2019, House Floor Hearing ("April 23 Hearing") at 7:04:00–7:04:07, https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=2443575804_201904 1264.

[11] Florida's criminal justice system can perhaps be best described as a network of local and state agencies that handle criminal cases, beginning with an arrest and ending with the disposition of the case. *See* HOUSE OF REPRESENTATIVES STAFF ANALYSIS, CS/HB 7071 PCB JDC 18-02, "Criminal Justice Data Transparency," 2017. Available at: https://www.flsenate.gov/Session/Bill/2018/7071/Analyses/h7071a.JUA.PDF (last accessed June 30, 2019).

[12] *See* Video: February 14, 2019, House Comm. Joint Hearing at 1:03:30–1:04:05, https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=2443575804_201902 1160 (last accessed June 1, 2019).

skeptical of its reliability. This is because the databases maintained by the county clerks of court are, at times, unreliable.

13.     Perhaps a few examples from a randomly drawn county, Brevard County, suffice to show this point. Examples of data errors that exist in the CMS of the county clerk of courts abound, so my focus here on Brevard County here should be taken as illustrative of database problems existing in nearly every county, and not as an indictment of the Brevard clerk of the court.

14.     My analysis indicates that nearly 15,000 individuals in Brevard County with a felony conviction were not incarcerated in Florida state prison, were adjudicated guilty and did not have that adjudication withheld, did not commit murder or a sex crime (in Brevard County or any other Florida county), have a release date prior to or on June 30, 2019, and had a sentence imposed date year of 1960 or thereafter. Of the nearly 15,000 otherwise eligible individuals released from Brevard County control or supervision (so, excluding those in FDC's database), roughly 30% owe $0.00 in LFOs. More than half of the nearly 15,000 individuals with felony convictions who have been released from Brevard County control or supervision owe more than $500.00 in LFOs. Roughly two-thirds of all those released from county control or supervision are white individuals and one-third are black individuals. Black individuals with a felony conviction who have been released from county control or supervision are nearly 9 percentage points less likely to owe $0.00 in LFOs than comparable white individuals.

15.     Within a single county clerk of court's CMS database, such as that of Brevard County, an individual may appear multiple times with different names and different birthdates, which in my opinion will make it extremely difficult, if not impossible, for Supervisors of Elections, the Office of the Secretary of State, third-party organizations conducting voter registration drives, or even an individual with a qualifying felony conviction to determine whether he or she is eligible to register and vote in Florida.

16.     For example, there is a woman released from Brevard County who is listed in Brevard County's CMS database with two different spellings of her middle name. This might seem innocuous, but it is not. In one record, the county clerk of court lists that she still owes more than $200.00 in LFOs from a felony conviction in 2004; in another record, that has a different spelling of her name, she still owes over $700.00 in LFOs from a felony conviction in 2007. Same residence, same date-of-birth, but separate records. Perhaps the woman pays off the $200.00 in LFOs she thinks she owes after relying on the record that happens to have the correct spelling of her name. She then proceeds to register and vote in the county, not knowing there is a separate record because of the clerk's misspelling of her name. Has she violated the terms of SB7066?

17.     Or take another example drawn from Brevard County. An individual who certainly appears to be the same person—there are separate records of an individual with exactly the same name—is listed multiple times in the county's

CMS database under two different dates-of-birth. The date-of-birth in both entries is very close—it's only off by a month, likely a scrivener's error—but in the clerk's database he is identified in two separate records, one for a felony conviction in 2017 and another for a felony conviction in 2018. The problem for this individual is that one record indicates that he owes roughly $1,000.00 in LFOs, whereas the other record indicates he owes $0.00 in LFOs. If the correct date-of-birth is contained in the record where he owes $0.00 in LFOs, he might very well register to vote and cast a ballot in the next election, even though he likely still owes $1,000.00 in LFOs, but under a record with an incorrect birth date. Upon registering, has he violated the terms of SB7066?

18.     Examples are plentiful, even from just one county. There's a man listed twice in the county's CMS database, one with a "Jr." suffix in his name and the other with no suffix. Same exact date-of-birth, same race, and same address for two felony convictions, one handed down in 1996 and the other in 2013. For one, he owes $0.00 in LFOs; for the other, he owes over $3,000.00 in LFOs. Let's assume a third party group assists him in registering to vote, querying the county's database using his correct name and date-of-birth, which indicates that he owes $0.00. Has the group and the individual violated the terms of SB7066 if he registers and votes, but in actuality, still owes over $3,000.00 in LFOs?

19.     These examples come from simple queries of one county's CMS database. To my knowledge, there is no centralized database in Florida that

provides current information about the status of an individual's LFOs across counties, or even LFOs in a county that have been converted into civil liens. As such, county clerks of court may not even have the capacity to produce the necessary information to determine whether a person with a felony conviction is eligible to vote with regard to outstanding LFOs. If the clerks themselves are unable to provide this information, how is an individual, an advocacy group, or a Supervisor of Elections supposed to confirm if all LFOs have been paid by an individual attempting to register to vote?[13]

20.    Furthermore, even if such a statewide database existed of eligible persons convicted of a qualifying felony in a Florida state court and who have been released from all control or supervision and who have paid off all their LFOs, it would most certainly not have information about persons residing in Florida who have completed all the terms of a federal or out-of-state felony sentence, much less if they have any outstanding felony-related LFOs.

---

[13] As I wrote in my initial report, there is every indication that several clerks of the court do not have the capacity to provide individuals accurate information about their LFOs. "Due to budget constraints," wrote a staff member from a clerk of the court in response to a public records request, "we lack the resources necessary to fulfill your request as presented," including "data on sentencing," but that "[o]n an optimistic note, much of what you requested will be available through the Florida Department of Law Enforcement in 2021 when, in cooperation with Florida's Clerks, the Legislature-mandated Criminal Justice Transparency statute is scheduled to be fully realized." Email correspondence from Tom Jackson, Communications Officer and Deputy Clerk, Pasco Clerk of the Court, July 18, 2019.

### IV. Over 1 Million Floridians with Felony Convictions Have Been Released from FDC or County Control/Supervision, and 77.4% Owe More Than $0.00 in Outstanding LFOs

21.     **Table 1** summarizes—separately for FDC and county control or supervision, and also combined—the number and percentage of the more than 1 million eligible or otherwise eligible individuals who owe $0.00 or more in outstanding LFOs, according to official records obtained by the 67 county clerks.

**Table 1:**
**LFOs Balance Due of Eligible Persons with Felony Convictions,**
**FDC and County Data (and Combined)**

|  | FDC | | County | | FDC + County | |
|---|---|---|---|---|---|---|
|  | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **Owe $0.00 LFOs** | 25,752 | 11.1% | 200,567 | 26.1% | 226,319 | 22.6% |
| **Owe >$0.00 LFOs** | 207,021 | 88.9% | 567,469 | 73.9% | 774,490 | 77.4% |
| **Total** | 232,773 | 100.0% | 768,036 | 100.0% | 1,000,809 | 100.0% |

22.     Consistent with the findings in my original and supplemental reports, but now extended to all 67 counties and drawing on FDC's updated January 2020 release data, **Table 1** reports that 25,752 of the 232,773 (11.1%) individuals who have been released from FDC[14] control or supervision, and 200,567 of the 768,036 (26.1%) individuals with a felony conviction who were not in FDC control or supervision and who have been released from county control or supervision, have a

---

[14] *See* Florida Department of Corrections, "Public Records Requests for the OBIS Database," http://www.dc.state.fl.us/pub/obis_request.html. FDC acknowledges that "information in this [OBIS] file may not reflect the true current location, status, release date, or other information regarding an inmate." Furthermore, FDC explicitly "makes no guarantee as to the accuracy or completeness of the information contained herein," that is, in its OBIS database.

balance of $0.00 outstanding LFOs. Taken together, then, an estimated 226,319 of the 1,000,809 (22.6%) of the individuals for whom I have data have completed payment of their LFOs. The remaining 774,490 individuals who I have identified across Florida's counties, or 77.4% of all otherwise eligible individuals who have fulfilled the terms of their felony conviction, have outstanding LFOs and are thus likely to be disenfranchised under SB7066.

### V.    LFOs Balance Due of Eligible Persons with Felony Convictions, FDC and County Data (and Combined), by Race

23.    Consistent with my previous reports, my analysis reveals racial disparities exist across persons who have met the terms of their felony conviction but who have outstanding LFOs. **Table 2** summarizes my calculations broken down by race. The rate of black individuals with a felony conviction (combined FDC and county) who are otherwise qualified to register to vote but for outstanding LFOs, is more than 8 percentage points lower than the comparable rate of white individuals. As **Table 2** shows, among white individuals with a felony conviction who have been released from control or supervision and who are otherwise eligible to obtain their voting rights, 13.5% from FDC, 29.7% from county, and 26.0% overall (combined FDC and county) have a balance of LFOs of $0.00. In contrast, among black individuals with a qualifying felony conviction who have been released from control or supervision, only 8.0% from FDC, 21.0%

from county, and 17.8% overall (combined FDC and county) have a balance of LFOs of $0.00.

24.     To summarize: fewer than one in five (17.8%) black individuals released from control or supervision, who have a qualifying felony conviction, are eligible to register and vote under SB7066, as they still owe LFOs; in contrast, more than one in four (26.0%) white individuals released from control or supervision, who have a qualifying felony conviction, are eligible to register to vote or vote under SB7066.

**Table 2:**
**Estimates of LFOs Balance Due of Eligible Persons with Felony Convictions, FDC and County Data (and Combined), by Race**

| *White* | FDC | | County | | FDC + County | |
|---|---|---|---|---|---|---|
| | Count | % | Count | % | Count | % |
| **Owe $0.00 LFOs** | 17,523 | 13.5% | 131,694 | 29.7% | 149,217 | 26.0% |
| **Owe >$0.00 LFOs** | 112,714 | 86.5% | 311,662 | 70.3% | 424,376 | 74.0% |
| **Total** | 130,237 | 100.0% | 443,356 | 100.0% | 573,593 | 100.0% |
| | | | | | | |
| *Black* | FDC | | County | | FDC + County | |
| | Count | % | Count | % | Count | % |
| **Owe $0.00 LFOs** | 8,125 | 8.0% | 64,245 | 21.0% | 72,370 | 17.8% |
| **Owe >$0.00 LFOs** | 93,351 | 92.0% | 241,171 | 79.0% | 334,522 | 82.2% |
| **Total** | 101,476 | 100.0% | 305,416 | 100.0% | 406,892 | 100.0% |

## VI.    LFOs Balance Due of Eligible Persons with Felony Convictions (Released from FDC and County Control/Supervision), by Race

25.     Across the state's 67 counties, it is also possible to calculate ranges of outstanding amounts of LFOs owed by individuals—as well as by black and white

individuals—who otherwise have completed all the terms of their felony convictions. The following figures are based on data received directly from the county clerks of court or on their behalf as provided by the FCCC. In keeping with this and previous reports, **Table 3** includes data for individuals with felony convictions dating as far back to 1997, although most of the LFOs from the counties date back only to the early 2000s. It provides the number of persons and the amounts of LFOs owed in graduated dollar amounts, broken down by race. As the numbers in **Table 3** bear out, overall, of the 774,490 individuals (released from FDC and county control/supervision) who have outstanding LFOs of any amount, 610,252 (78.8%) owe at least $500, and 458,163 (59.2%) owe more than $1,000. Also, as **Table 3** reveals, among persons who owe LFOs of any amount, black individuals are more likely to owe over $500, as well as over $1,000, compared to individuals.

**Table 3:**

**Combined LFOs Balance Due of Eligible Persons with Felony Convictions (FDC and County Control/Supervision), by Race**

| | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 226,319 | 22.6% | 72,370 | 17.8% | 149,217 | 26.0% |
| **Up to $100** | 47,318 | 4.7% | 16,072 | 3.9% | 30,315 | 5.3% |
| **Up to $250** | 34,102 | 3.4% | 12,880 | 3.2% | 20,537 | 3.6% |
| **Up to $500** | 82,818 | 8.3% | 33,750 | 8.3% | 47,353 | 8.3% |
| **Up to $1,000** | 152,089 | 15.2% | 60,826 | 14.9% | 87,320 | 15.2% |
| **Up to $5,000** | 279,778 | 28.0% | 119,168 | 29.3% | 154,574 | 26.9% |
| **Up to $10,000** | 32,207 | 3.2% | 13,652 | 3.4% | 17,493 | 3.0% |

| > $10,000 | 146,178 | 14.6% | 78,174 | 19.2% | 66,784 | 11.6% |
| Total | 1,000,809 | 100.0% | 406,892 | 100.0% | 573,593 | 100.0% |

26.     In the following section, I present separately data for eligible persons with felony convictions who are *not* in FDC's OBIS database and those who are in FDC's OBIS database.

## VII.  LFOs Balance Due of Eligible Persons with Felony Convictions who are *Not* in FDC's OBIS Database, by Race

27.     **Table 4** provides the amount of LFOs owed by 768,036 individuals with felony convictions who are *not* found in FDC's OBIS inmate release database. These individuals were not convicted of murder or a sex crime under SB7066, have a release date prior to June 30, 2019, and have met all the terms of the felony sentence.[15] As mentioned previously, of these individuals, roughly one in four—26.1%—have paid off their LFOs related to a felony offense.

28.     **Table 4** also provides the racial breakdown (black and white individuals) of those released from county control or supervision who owe LFOs in the various categories. As **Table 4** reveals, only 21.0% of black individuals who have otherwise met all the terms of their felony conviction are likely to owe $0.00

---

[15] The summary information about LFOs owed by individuals with qualifying felony convictions was received either directly from the clerks or via the FCCC. Table 4 includes data on individuals who: (1) are found in one or more county's CMS database; (2) are not found in FDC's OBIS database; (3) were not convicted of murder or a sexual offense as defined by SB7066; and (4) have met the terms of their felony sentence as of June 30, 2019. Individuals whose outstanding LFOs appear to be negative are dropped.

in LFOs, compared to 29.7% of white individuals. In addition, black individuals

are disproportionately more likely than white individuals to owe over $10,000 in

LFOs. In my opinion, it is clear from **Table 4** that black individuals who have

otherwise met all the terms of their felony conviction at the county-level are

significantly less likely to be able to gain or re-gain their voting rights under

SB7066, as compared to similar white individuals, because of the amount of

outstanding LFOs tied to their felony conviction.

**Table 4:**
**LFOs Balance Due of Eligible Persons with Felony Convictions who**
**are *Not* in FDC's OBIS Database, by Race**

|  | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 200,567 | 26.1% | 64,245 | 21.0% | 131,694 | 29.7% |
| **Up to $100** | 38,314 | 5.0% | 12,661 | 4.1% | 24,758 | 5.6% |
| **Up to $250** | 26,912 | 3.5% | 9,780 | 3.2% | 16,463 | 3.7% |
| **Up to $500** | 63,824 | 8.3% | 25,306 | 8.3% | 36,877 | 8.3% |
| **Up to $1,000** | 113,769 | 14.8% | 43,659 | 14.3% | 66,362 | 15.0% |
| **Up to $5,000** | 174,750 | 22.8% | 69,651 | 22.8% | 99,545 | 22.5% |
| **Up to $10,000** | 16,967 | 2.2% | 6,471 | 2.1% | 9,477 | 2.1% |
| **> $10,000** | 132,933 | 17.3% | 73,643 | 24.1% | 58,180 | 13.1% |
| **Total** | 768,036 | 100.0% | 305,416 | 100.0% | 443,356 | 100.0% |

## VIII.   LFOs Balance Due of Eligible Persons with Felony Convictions who are *in* FDC's OBIS Database, by Race

29.     Finally, using the same methodology in my previous two reports

which link an individual in FDC's OBIS inmate release database to that same

individual in the data provided by county clerks of court, it is possible to provide estimates of the number of persons who were convicted of a felony (other than those convicted of murder or a sexual offense) in each county, who had a release date prior to January 2020, who have completed all the terms of their felony sentence under the authority of FDC, but who are not eligible to register to vote under SB7066 because they owe LFOs tied to a felony conviction.

30.    Drawing on inmate release data from FDC's updated January 2020 OBIS database, merged with LFOs data drawn provided by the county clerks of court, **Table 5** calculates the number of individuals are prohibited under SB7066 from registering or voting, even though they have been released from FDC control or supervision, because they have outstanding LFOs tied to a felony conviction. **Table 5** also provides the racial breakdown of black and white individuals across the counties who have been released from FDC control or supervision—that is, they completed all the terms of their sentence, including parole, probation, or community control or supervision—and any outstanding LFOs tied to their felony conviction(s).

31.    Overall, I calculate there to be 232,773 individuals in FDC's OBIS inmate released database, including 130,237 white individuals and 101,476 black individuals, who are qualified to re-gain their voting rights but for outstanding LFOs. These individuals were adjudicated guilty, were under the control of FDC, were not convicted of murder or a sex crime, and since 1997 were released from

control or supervision. By linking these individuals to the databases provided by
the clerks of court (all except Escambia),[16] it is possible to approximate the
amounts of outstanding LFOs tied to a felony conviction. **Table 5** breaks down by
each range of estimated minimum outstanding LFOs by the race of the individual
(black and white).[17] Overall, only 11.1% of these individuals— just 25,752
individuals out of the 232,773 released from FDC control or supervision—owe $0
in LFOs tied to their felony conviction. Of those who have outstanding LFOs,
73.8% owe over $500 and 57.4% owe more than $1,000.

---

[16] The analysis does not include felons convicted in Escambia County, as the
Escambia clerk of court did not provide data that included an individual's complete
birthdate, making it impossible to merge county-provided LFO data with FDC's
OBIS database.

[17] As in my original and supplemental reports, matching records across FDC's
October 1, 2019 OBIS database and the clerks of court data is based on an exact
match between first name, last name, name suffix, date of birth, race code, and sex
code. Records with missing first names are not part of the match. Individuals with
a negative LFOs balance due are not included, as this would indicate (implausibly)
that an individual overpaid a county clerk of court. There are over 7,400 such
individuals with a negative LFO balance; the bulk (over 6,400) are found in Duval
County, indicating data entry/data processing errors made by the county clerk of
the court. Finally, this report assumes individuals whose name suffix in the FDOC
database is either "J" or "JRR" are juniors (e.g., "Jr"). Because of data reliability
concerns, individuals with county sentence imposed dates prior to 1960 are
excluded from the analysis, as are individuals in FDC's OBIS release database
released prior to October 1, 1997. Roughly 17.4% of individuals in FDC's OBIS
inmate release database that were matched with county LFOs data were in more
than one of the 66 counties and had positive LFOs in more than one county.

**Table 5:**
**LFOs Balance Due of Eligible Persons with Felony Convictions**
**who are *in* FDC's OBIS Database, by Race**

| LFOs Owed | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| | Count | % | Count | % | Count | % |
| **$0** | 25,752 | 11.1% | 8,125 | 8.0% | 17,523 | 13.5% |
| **Up to $100** | 9,004 | 3.9% | 3,411 | 3.4% | 5,557 | 4.3% |
| **Up to $250** | 7,190 | 3.1% | 3,100 | 3.1% | 4,074 | 3.1% |
| **Up to $500** | 18,994 | 8.2% | 8,444 | 8.3% | 10,476 | 8.0% |
| **Up to $1,000** | 38,320 | 16.5% | 17,167 | 16.9% | 20,958 | 16.1% |
| **Up to $5,000** | 105,028 | 45.1% | 49,517 | 48.8% | 55,029 | 42.3% |
| **Up to $10,000** | 15,240 | 6.5% | 7,181 | 7.1% | 8,016 | 6.2% |
| **> $10,000** | 13,245 | 5.7% | 4,531 | 4.5% | 8,604 | 6.6% |
| **Total** | 232,773 | 100.0% | 101,476 | 100.0% | 130,237 | 100.0% |

32.    As **Table 5** makes clear, only 8.0% of black individuals, compared to 13.5% of white individuals who have been released from FDC control or supervision, appear to be eligible to register and vote under SB7066 because they have paid off their LFOs. Black individuals released from FDC control or supervision are also more likely than similar white individuals to owe between $250 and $10,000 in LFOs across the counties.

33.    In my opinion, it is clear from **Table 5** that black individuals released from the control or supervision of FDC are significantly less likely to be able to re-gain their voting rights, as compared to comparable white individuals with felony convictions, as a result of the amount of outstanding LFOs tied to a felony conviction.

## IX.    LFOs and the FCCC's Annual Assessments and Collections Reports

34.    In this section, I provide some additional evidence that many of the

individuals LFOs remain unpaid by those who are indigent.  It does not surprise me

that fewer than one-in-four of the more than 1 million individuals in Florida who

have been convicted of a felony and have been released from the control or

supervision of FDC or county authorities are likely to be able to re-gain their

voting rights because of outstanding LFOs. Indeed, all one needs to do is consult

the FCCC and any "Annual Assessments and Collections Report" that it has

published over the years. According to the FCCC, circuit criminal, county

criminal, and juvenile court divisions use a "risk factor" methodology to assess

which associated cases are likely to have a "minimal collections expectation."

Such conditions include whether a "defendant was incarcerated, indigent, or had a

judgment/lien case status."[18] According to the FCCC's various annual reports,

"Risk factor amounts include all mandatory and discretionary fines, court costs,

---

[18] See, variously, FLORIDA COURT CLERKS & COMPTROLLERS, "Annual
Assessments and Collections Report" (2014-2018). Links to the FCCC's five most
recent reports are available at:
https://finesandfeesjusticecenter.org/content/uploads/2019/01/2018-Annual-
Assessments-and-Collections-Report.pdf,
https://finesandfeesjusticecenter.org/content/uploads/2019/01/2017-Annual-
Assessments-and-Collections-Consolidated-Summary-SMUSHED-2.pdf,
https://finesandfeesjusticecenter.org/content/uploads/2019/01/2016-Fl-Court-
Clerks-and-Comptrollers-Annual-Assessments-and-Collections-Consolidated-
Summary-Report-2015-2016.pdf,
https://finesandfeesjusticecenter.org/content/uploads/2019/01/2015-Assessments-
and-Collections-Report-2014-2015.pdf, and
https://finesandfeesjusticecenter.org/content/uploads/2019/01/2014-Clerk-Annual-
Assessments-and-Collections-Report-2013-2014-2.pdf.

monetary penalties, and fees, service charges and costs." In its 2018 report, for

example, the FCCC's statewide summary (page 11) for the 2017-2018 fiscal year

(October 1, 2017 to September 30, 2018), calculates the total Risk Factor Impacts

expected LFOs (for people who are incarcerated, indigent, or judgment/lien) to be

$226,976,841, which amounts to 85.79% of the "total amount actually assessed" in

fiscal year 2018. The total amount of LFOs actually assessed statewide in 2018 in

the criminal courts was $264,557,647.[19] If we eliminate those individuals who

were assessed LFOs but who remained incarcerated during the time period, we can

calculate—according to the FCCC's 2018 report—a total of $119,041,561 in LFOs

for the non-incarcerated community (that is, $264,572,609 (total LFOs assessed)

minus $145,516,086 (LFOs of those still incarcerated)).

35.    The FCCC also reports that $81,460,756 of LFOs assessed in 2017-

2018 fall into the indigent or judgment/lien categories. If we divide $81,460,756 by

$119,041,561, the FCCC's own data reveals that 68.4%, or more than two-thirds,

of all LFOs assessed to non-incarcerated returning citizens in fiscal year 2018 fall

into the category of "minimal collections expectation." That is, these individuals

according to the FCCC are either indigent or had their LFOs converted into a civil

---

[19] This amount is calculated by totaling three figures on pages 10 and 11 of the
FCCC's 2018 report: (1) the $191,959,237 in mandatory fines, court costs, and
other monetary penalties; (2) the $21,019,347 in discretionary fines, court costs,
and other monetary penalties; and (3) the $51,579,063 in mandatory fees, service
charges, and costs.

judgment/lien, a common mechanism used in Florida by the courts when individuals are unable to pay their LFOs.

36.    My assessment of the FCCC's "Annual Assessments and Collections Report" from the other four fiscal years is that they follow a similar pattern, that is, the FCCC concedes in its own reports that it has minimal collections expectations for a supermajority of the LFOs assessed on non-incarcerated individuals on account of the fact that these individuals are unable to pay. These figures likely include individuals on probation/parole, and might include those convicted of murder or felony sex offense, but it certainly provides strong evidence of many individuals in Florida who face significant financial barriers when assessed LFOs.

37.    Using the annual assessments and collections reports in Florida from 2013-2018, I find that Florida had minimal collections expectations for between 58.2% to 68.4% of all fines and fees it assessed to returning citizens outside of incarceration during this time based on inability to pay.[20]

38.    The financial hardships that people with felony offenses face are reflected in the expected collections rate for felony offenses as compared to misdemeanor offenses. The collections performance standard set by the Florida

---

[20] *See* Fines, Fees, and Justice Center, "Annual Assessments and Collections Report [Florida, 2013-2018], available at: https://finesandfeesjusticecenter.org/articles/annual-assessments-and-collections-report-florida-2013-2018/.

Clerks of Court Operations Corporation is only 9% for felony cases but 40% for misdemeanor cases.[21]

39.     Analysis of federal government data supports the conclusions drawn from the FCCC's Annual Assessments and Collections Reports that a comparatively high percentage of persons with a past conviction will be unable to pay outstanding LFOs. Why might this be? Income is lower among people incarcerated, even before their incarceration.[22] After a conviction, there is a significant incarceration "wage penalty" estimated to range between 10–30% between those with a conviction and those without,[23] with earnings decreases in the first year following release from incarceration.[24] The unemployment rates among formerly incarcerated persons between the ages of 25-44 years old exceeds 27%— over four times that of the general public (5.8%) and greater than the total U.S.

---

[21] Assessment, Collection and Distribution of Fines and Fees in Criminal Cases, No. 19-14 (November 2019), pg. 7, available at: http://www.oppaga.state.fl.us/MonitorDocs/Reports/pdf/1914rpt.pdf.

[22] *See* Prison Policy Initiative (2015), available at: https://www.prisonpolicy.org/reports/income.html ("incarcerated people had a median annual income of $19,185 prior to their incarceration, which is 41% less than non-incarcerated people of similar ages.").

[23] *See* Sara Wakefield and Christopher Uggen, "Incarceration and Stratification," *Annual Review of Sociology* 36 (2010): 387-406.

[24] Adam Looney and Nicholas Turner, "Work and opportunity before and after incarceration," The Brookings Institution, March 2018, available at: https://www.brookings.edu/wp-content/uploads/2018/03/es_20180314_looneyincarceration_final.pdf.

unemployment rate during any historical period, including the Great Depression

(24.9%).[25] Homelessness rates are also higher for persons formerly incarcerated, as

"2% of formerly incarcerated people were homeless in 2008 (the most recent year

for which data are available), a rate nearly 10 times higher than among the general

public").[26] In short, it is clear from the data that individuals face significant

economic barriers as a result of a conviction. As a scholar of Florida politics, it

comes as little surprise to me, as the FCCC concedes in its own reports, that there

is minimal expectation that a majority of formerly incarcerated individuals will be

able to pay their assessed LFOs because they face significant economic barriers.

## X.   In the Two Counties for Which Data is Available, a Supermajority of Returning Citizens Were Afforded a Public Defender

40.    In this final section, I provide some additional insight into the

question of whether SB7066 is likely to deny persons with a past felony conviction

access to the franchise due to indigency. Although the data that I received from the

67 clerks of court and FDC do not include specific information about the ability or

inability of an individual with a qualifying felony conviction to pay outstanding

LFOs, two counties (Escambia and Lake) provided information about whether an

---

[25] *See* Prison Policy Initiative, "Out of Prison & Out of Work: Unemployment among formerly incarcerated people," July 2018, available at: https://www.prisonpolicy.org/reports/outofwork.html.

[26] Prison Policy Initiative, "Nowhere to Go: Homelessness among formerly incarcerated people," August 2018, available at: https://www.prisonpolicy.org/reports/housing.html.

individual convicted of a qualifying felony was represented by a public defender or not. As such, it is possible to determine the amount of outstanding LFOs owed by individuals in the two counties who have a felony conviction and who have been released from control or supervision, and who were represented by a public defender, versus those who were not. It is my understanding that the standard to qualify for public defender services is governed by state law. In order to qualify to be represented by a public defender, a criminal defendant in Florida attests to his or her income and assets, which must be less that 200 percent of the federal poverty guidelines and meet other criteria. Fla. Stat. Ann § 27.52.

41.   As I explain above, persons with a past conviction tend to be worse-off economically both at the time of the conviction and as a result of the conviction. Thus, I reviewed data on assignment of a public defender at the time of conviction, which would have required a finding of indigency, as a proxy for an individual lacking the financial means to pay off his or her outstanding LFOs.

42.   Drawing on records provided by the Escambia County clerk of courts of individuals who were *not* in FDC's OBIS database, I am able to determine that 72% of the more than 18,000 individuals released from county control or supervision with a felony conviction other than murder or a sexual offense were represented by a public defender.[27]

---

[27] Escambia County and Lake County were the only counties among the state's 67 clerks of court that included data that documented which individuals were assigned a public defender. The data from these two counties likely understates the rate of

43.    **Table 6** provides a breakdown of dollar ranges of LFOs owed by all individuals eligible for restoration but for their outstanding LFOs, as well as black and white individuals, who were represented by a public defender in Escambia County, and **Table 7** does the same for those convicted of a qualifying felony and who have been released who were not represented by a public defender. Over 65% of all released individuals from Escambia county control or supervision with a qualifying felony conviction and who were represented by a public defender—a proxy here for indigency—owe outstanding LFOs. Over 45% of all convicted felons who were represented by a public defender in the county owe more than $500, with 15.7% owing more than $1,000 in outstanding LFOs. Black individuals (30.3%), compared to comparable white individuals (39.1%) who were represented by a public defender, are less likely to owe $0.00 in LFOs and more likely to owe between $250 and $5,000 in outstanding LFOs.

44.    As **Table 7** reveals, both black and white individuals convicted of a qualifying felony, but who were *not* represented by a public defender in Escambia County, are much more likely (56.4%) than those convicted of a qualifying felony

---

public defender assignments statewide because: (1) data were only available for persons *not* in FDC's OBIS database, and these individuals are less likely to have outstanding LFOs in general, and if they do owe LFOs, they are likely to be of lower amounts, compared to those *in* FDC's OBIS database; and (2) compared to the 26.1% of persons *not* in FDC's OBIS database who have a $0.00 balance in LFOs (see **Table 4**), these two counties have higher rates of individuals not in the FDC database who have $0.00 balance of LFOs (40.7% in Escambia County and 32.8% in Lake County).

and represented by a public defender (34.7%) to owe $0.00 in LFOs, and about half as likely to owe more than $500 in LFOs.

45.     It is clear from my analysis of data provided by the Escambia County clerk of court that over 60% of all individuals convicted of a felony *not* in the FDC OBIS system, and who were represented by a public defender owe more than $500 in LFOs.

**Table 6:**
**Escambia County, LFOs Balance Due of Otherwise Eligible Persons**
**with Felony Convictions Represented by a *Public Defender*, by Race**

| | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 4,557 | 34.7% | 1,906 | 30.3% | 2,525 | 39.1% |
| **Up to $100** | 683 | 5.2% | 257 | 4.1% | 416 | 6.5% |
| **Up to $250** | 612 | 4.7% | 242 | 3.9% | 345 | 5.4% |
| **Up to $500** | 1,362 | 10.4% | 669 | 10.6% | 652 | 10.1% |
| **Up to $1,000** | 3,806 | 29.0% | 1,939 | 30.9% | 1,726 | 26.7% |
| **Up to $5,000** | 2,059 | 15.7% | 1,258 | 20.0% | 766 | 11.9% |
| **Up to $10,000** | 29 | 0.2% | 12 | 0.2% | 17 | 0.3% |
| **> $10,000** | 10 | 0.08% | 3 | 0.05% | 7 | 0.11% |
| **Total** | 13,118 | 100.00% | 6,286 | 100.00% | 6,454 | 100.00% |

**Table 7:**
**Escambia County, LFOs Balance Due of Otherwise Eligible Persons**
**with Felony Convictions *Not* Represented by a *Public Defender*, by Race**

| | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 2,831 | 56.4% | 836 | 45.9% | 1,886 | 62.7% |
| **Up to $100** | 261 | 5.2% | 81 | 4.4% | 174 | 5.8% |
| **Up to $250** | 186 | 3.7% | 80 | 4.4% | 104 | 3.5% |
| **Up to $500** | 447 | 8.9% | 185 | 10.1% | 241 | 8.0% |
| **Up to $1,000** | 731 | 14.6% | 325 | 17.8% | 368 | 12.2% |

| Up to $5,000 | 537 | 10.7% | 305 | 16.7% | 221 | 7.3% |
| Up to $10,000 | 14 | 0.3% | 7 | 0.4% | 5 | 0.2% |
| > $10,000 | 16 | 0.3% | 4 | 0.2% | 11 | 0.4% |
| **Total** | 5,023 | 100.0% | 1,823 | 100.0% | 3,010 | 100.0% |

46.    Similar to the analysis for Escambia County, I am able to draw on records provided by the Lake County clerk of courts to determine that 71% of the more than 21,000 individuals released from county control or supervision with a felony conviction other than murder or a sexual offense were represented by a public defender.[28]

47.    **Table 8** provides a breakdown of dollar ranges of LFOs owed by all individuals, as well as black and white individuals, who were represented by a public defender in Lake County, and **Table 9** does the same for those convicted of a qualifying felony and who have been released who were not represented by a public defender. Overall, less than 29% of all released individuals with a qualifying felony conviction in Lake County who were represented by a public defender have $0.00 in LFOs, and over two-thirds of all convicted felons in the county who were represented by a public defender owe more than $500, with over 55% owing more than $5,000 in outstanding LFOs. Black and white individuals represented by a public defender are quite comparable regarding both the

---

[28] Information concerning whether an individual was represented by a public defender or otherwise is missing for 702 (3.2%) of the cases in the data I received from Lake County; these cases are dropped from my analysis.

percentage who owe $0.00 in LFOs and those across the various ranges of outstanding LFOs.

48.     As **Table 9** reveals, white individuals convicted of a qualifying felony, but who were *not* represented by a public defender in Lake County, are more likely than those convicted of a qualifying felony and represented by a public defender to owe $0.00 in LFOs, but that is not the case for black individuals.

49.     As with Escambia County, my analysis of LFOs owed by individuals released from Lake County who were represented by a public defender excludes individuals in the county released from FDC control or supervision; these individuals in Lake County, and statewide more generally, are considerably more likely to have outstanding LFOs than individuals released from county control or supervision. Furthermore, among non-FDC individuals, Lake's percentage of people (either represented by a public defender or not) who owe $0.00 in LFOs is considerably higher than the statewide average of 26.3%.

**Table 8:**
**Lake County, LFOs Balance Due of Otherwise Eligible Persons with**
**Felony Convictions Represented by a *Public Defender*, by Race**

|  | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 4,317 | 28.7% | 1,336 | 32.5% | 2,777 | 34.7% |
| **Up to $100** | 295 | 2.0% | 89 | 2.2% | 182 | 2.3% |
| **Up to $250** | 92 | 0.6% | 23 | 0.6% | 48 | 0.6% |
| **Up to $500** | 363 | 2.4% | 112 | 2.7% | 219 | 2.7% |
| **Up to $1,000** | 1,354 | 9.0% | 407 | 9.9% | 751 | 9.4% |
| **Up to $5,000** | 6,174 | 41.1% | 1,754 | 42.6% | 3,202 | 40.0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Up to $10,000 | 1,255 | 8.4% | 210 | 5.1% | 401 | 5.0% |
| > $10,000 | 1,167 | 7.8% | 183 | 4.4% | 428 | 5.3% |
| Total | 15,017 | 100.0% | 4,114 | 100.0% | 8,008 | 100.0% |

**Table 9:**
**Lake County, LFOs Balance Due of Otherwise Eligible Persons with**
**Felony Convictions *Not* Represented by a *Public Defender*, by Race**

| | Balance due, All | | Balance due, *Black* | | Balance due, *White* | |
|---|---|---|---|---|---|---|
| **LFOs Owed** | **Count** | **%** | **Count** | **%** | **Count** | **%** |
| **$0** | 2,139 | 35.6% | 470 | 31.3% | 1,465 | 43.0% |
| **Up to $100** | 226 | 3.8% | 45 | 3.0% | 169 | 5.0% |
| **Up to $250** | 127 | 2.1% | 28 | 1.9% | 85 | 2.5% |
| **Up to $500** | 305 | 5.1% | 82 | 5.5% | 175 | 5.1% |
| **Up to $1,000** | 678 | 11.3% | 186 | 12.4% | 327 | 9.6% |
| **Up to $5,000** | 1,640 | 27.3% | 510 | 33.9% | 814 | 23.9% |
| **Up to $10,000** | 378 | 6.3% | 91 | 6.1% | 155 | 4.6% |
| **> $10,000** | 521 | 8.7% | 92 | 6.1% | 216 | 6.3% |
| **Total** | 6,014 | 100.0% | 1,504 | 100.0% | 3,406 | 100.0% |

50.     Studies in Volusia and Lee Counties found similar results. A study of

cases in Volusia County from fiscal years 2010-2014 found 69% of defendants

were adjudicated indigent and 62% of all LFOs were assessed against individuals

found indigent.[29] Likewise, a survey conducted by the Lee County Clerk of Court

---

[29] *See* Why Crime Doesn't Pay: Examining Felony Collections, Circuit Court Clerk
(May 2015), Appendix F, available at:
https://www.ncsc.org/~/media/Files/PDF/Education%20and%20Careers/CEDP%2
0Papers/2015/Why%20Crime%20Doesnt%20Pay-
Examining%20Felony%20CollectionsMurphy.ashx).

of experts in this field found that 92.3% of survey respondents indicated that inability to pay is a significant factor in the low collections rates for LFOs.[30]

## XI.    Conclusion

51.    Despite the absence of data on out-of-state and federal convictions of persons with felony convictions living in Florida, and the inconsistent and often unreliable correctional data from various State of Florida agencies or clerks of court that are needed to establish more definitively which persons with Florida non-disqualifying felony convictions who reside in Florida might be eligible to vote, there is little doubt that the financial requirements of SB7066 will severely limit the ability of otherwise eligible Floridians with a past felony conviction to be able to register or vote. This is because there is a large share of individuals who still have outstanding LFOs originally assessed as part of their felony conviction. Due to outstanding LFOs, my analysis finds that a little more than one-in-five of the 1,000,809 individuals identified as having a felony conviction other than murder or a sexual offense, who have been released from either county or FDC control or supervision, are likely to be qualified to register to vote under SB7066. The rate of an individual released from either county or FDC control or supervision who owes $0.00 in LFOs is lower for black individuals in nearly every one of the state's 67 counties.

---

[30] *Id.* at 36.

52.     In sum, my findings should be taken as conservative due to the limitations of available data. I do not have accurate or comprehensive data on federal or out-of-state felony convictions, and even within the Florida criminal justice systems, I do not have comprehensive or systematic data on individuals convicted of a felony who were never referred to FDC, e.g., those who served time in a county jail or under county control or supervision. This is because, to the best of my knowledge, no such database exists in the State of Florida.

53.     Because of missing and unreliable data, I am unable to cross-reference whether an individual with an LFO balance of $0.00 in one county has outstanding debt from a felony conviction in all other counties, and the available data from FDC and the county clerks of court only go back as far as the 1990s. Short of calling each county clerk of court to identify, on an individual basis, LFOs owed by as many as a million people—which still may not yield results—I have not uncovered a database that allows me to determine whether LFOs have been converted into a civil lien, or to track restitution obligations not recorded or updated by the clerks of court. In addition, I do not have data to confirm that those I have identified meet other voter eligibility requirements (such as mental competence and U.S. citizenship). I would like to reserve the right to continue to supplement my declarations in light of additional facts, data, and testimony.

54.     I also provide evidence from five years of Florida's own data indicating that Florida has minimal collections expectations for the majority of

fines and fees it assessed to non-incarcerated individuals between 2013-2018. And

I provide evidence from two counties showing that more than seven-in-ten

individuals released from supervision for a felony conviction other than murder or

a sex offense were represented by a public defender, and studies from two

additional counties showing significant LFOs assessed against those who are

indigent. Many of these individuals, who would be eligible to register to vote but

for their outstanding LFOs, are unlikely to be able to pay their LFOs.

55.     I declare under penalty of perjury that the foregoing is true and

correct. Executed this 2nd day of March, 2020, at Alachua County, Florida.

**Daniel A. Smith, Ph.D.**