EXHIBIT 14

# Assessment, Collection, and Distribution of Fines and Fees in Criminal Cases

Report No. 19-14

November 2019



OPPAGA

Office of Program Policy Analysis and Government Accountability

# OPPAGA Report

November 2019                                                                                                                  Report No. 19-14

# Assessment, Collection, and Distribution of Fines and Fees in Criminal Cases

## EXECUTIVE SUMMARY

The Florida Constitution provides that funding for the state courts system shall be provided from state revenues appropriated by general law, while funding for the Clerks of Court court-related functions must be provided by filing fees, service charges, and court costs assessed to parties accessing the courts.  Judges and clerks exercise limited discretion over the imposition of fees because most are mandated by statute.

**REPORT SCOPE**

As directed by the Legislature, OPPAGA reviewed the assessment, collection, and distribution of fines and fees in criminal cases in Florida.

Over $315 million in fines and fees was assessed in criminal cases statewide in county Fiscal Year 2017-18; however, the collection rate in criminal cases is low.  Collected amounts are disbursed to various funds with primarily law enforcement purposes.  Other states have taken some steps to change assessment and collection of fines and fees in criminal cases.

## INTRODUCTION

Article V of the Florida Constitution establishes the judicial branch of state government, including trial and appellate courts.  Trial courts include circuit courts and county courts.  In terms of criminal jurisdiction, misdemeanors are heard in county court and felonies are heard in circuit court.  The constitution also delineates the state courts system's key participants, including judges, state attorneys, public defenders, and clerks of the court.  In addition, the constitution provides that funding for the state courts system shall be provided from state revenues appropriated by general law, while funding for clerks' court-related functions must be provided by adequate and appropriate filing fees, service charges, and court costs assessed to parties accessing the courts.[1]  Voters in each of Florida's 67 counties elect a clerk of circuit court, who administers a variety of court-related and non-court-relate functions at the county and state level.  Clerks' specific responsibilities relating to the state courts system are outlined in statute, court rules, and administrative orders.  One of these statutorily designated responsibilities is the collection of the fines and fees assessed by the courts.[2]

---

[1] The Legislature established the State Courts Revenue Trust Fund and the Clerks of the Court Trust Fund to create a dedicated state revenue stream for court-related activities.  In practice, both the clerks and the courts are funded with revenues assessed by the courts and collected by the clerks; courts also receive General Revenue appropriations.
[2] Section 28.37, *F.S.*

The financial obligations assessed against participants in the court system fall generally into three categories: fees, fines, and restitution. **Fees** (also known as costs) are amounts authorized by statute that represent what a user of the court system is expected to pay. All court users are assessed fees. For example, someone filing a lawsuit in a civil case has to pay a filing fee. In criminal cases, fees assessed against defendants include the state's cost to prosecute the case. **Fines** are imposed by the court as part of the judgment and are used to punish offenders.[3] Fine amounts are correlated with the seriousness of the offense. Finally, **restitution** is intended to make the victim whole.

The fines and fees assessed in criminal cases are described in statute. The clerks, in consultation with the Office of the State Courts Administrator, produce an annual document listing these fines and fees.[4] Some fines and fees are mandatory, meaning that the judge must impose them. Other fines and fees are discretionary. Generally, most fines are discretionary, while fees tend to be mandatory. Judges do have the ability to convert assessed fine or fee amounts into community service obligations.

The amount of a fine is generally determined by the level of the offense. For example, Florida's Litter Law (s. 403.413(6)(c), *Florida Statutes*) makes littering in an amount exceeding 500 pounds a third degree felony, punishable as provided in s. 775.083, *Florida Statutes*. This statute delineates fine amounts by degree and requires up to $15,000 for a life felony, up to $10,000 for a first or second degree felony, up to $5,000 for a third degree felony, up to $1,000 for a first degree misdemeanor, and up to $500 for a second degree misdemeanor or non-criminal violation. On the other hand, some statutes establish a specific fine that differs from those tied to the level of offense. For example, a violation under s. 403.161(3), *Florida Statutes*, for causing pollution that injures human health or welfare, animal, plant, or aquatic life or property is also a third degree felony, but the court may impose a fine up to $50,000.

Fees are also detailed in statute. Some fees are assessed in every criminal case. For example, s. 938.05 (1)(a), *Florida Statutes*, requires any person pleading guilty to or found guilty of any felony or misdemeanor to pay a cost of $225 for a felony or $60 for a misdemeanor. Other fees are assessed only if the defendant is represented by a public defender.[5] There are also fees that are assessed only if the defendant is convicted of any of a list of violent or sexual crimes. Additionally, several fees must be assessed only if a county has elected to impose them through local ordinance. For example, if the county has passed an ordinance to do so, the judge must impose a $15 fee for misdemeanor convictions involving drugs or alcohol.

Exhibit 1 illustrates an example of the fines and fees that must or may be assessed in a first or second degree felony case.[6] In these cases, a judge may assess a fine of up to $10,000. If a fine is assessed, the judge must assess a 5% surcharge in addition to the fine. In this example, assuming the court imposes a $4,000 fine and the defendant is charged with one of the enumerated violent or sexual crimes, the total assessment would be a minimum of $5,214, exclusive of any restitution. The total could be considerably larger, depending on the amounts assessed for cost of prosecution and defense.

---

[3] Fines are assessed in misdemeanor and felony criminal cases, criminal and non-criminal traffic cases, and non-criminal ordinance violation cases.
[4] Section 28.2457, *F.S.*, requires the clerks, in consultation with the Office of the State Courts Administrator, to produce annually a list of all the fines and fees that may or must be imposed by statute. This document is referred to as the Mandatory/Discretionary Form Matrix.
[5] Section 27.52(2)(a), *F.S.*, requires an applicant for a public defender be indigent, which is if the applicant's income is equal to or below 200% of the then-current federal poverty guidelines or if the person is receiving Temporary Assistance for Needy Families-Cash Assistance, poverty-related veterans' benefits, or Supplemental Security Income.
[6] Many of these fees are also assessed in a misdemeanor case, but the amounts may be less.

Exhibit 1
Fines and Fees in a Typical First or Second Degree Felony Case

| Amount | Item |
|---|---|
| $4,200 | $4,000 fine + 5% surcharge of $200 |
| $225 | Additional court costs |
| $201 | Domestic violence programs (if convicted of violent or sexual crime) |
| $151 | Rape crisis centers (if convicted of violent or sexual crime) |
| $100 | Minimum cost of prosecution |
| $100 | Minimum cost of defense |
| $65 | Additional court costs (per county ordinance) |
| $50 | Public defender application fee |
| $50 | Crime Compensation Trust Fund |
| $50 | Crime Prevention Trust Fund |
| $20 | Crimes Stoppers Trust Fund |
| $2 | Local law enforcement education (per county ordinance) |
| **$5,214 TOTAL** | |

Source: 2019 Florida Court Clerks and Comptrollers Distribution Schedule.

3

Once assessed, defendants must pay all fines and fees to the clerks of court. Florida law requires that the excess of these funds be electronically remitted to the Florida Department of Revenue for distribution.[7] Clerks are permitted by statute to offer payment plans to defendants but are also required to turn unpaid amounts over to private attorneys or collection agents after 90 days.[8]

# FINDINGS

## Judges and clerks exercise limited discretion over the assessment and collection of fees in criminal cases

At the time of sentencing in a criminal case, whether the case is resolved through trial or the entry of a negotiated plea agreement, the judge will order the defendant to pay the fines and fees required by statute. The fines and fees assessed are part of the sentence of the court and will be included in the judge's order. While judges typically see the same types of crimes repeatedly and are familiar with the required amounts of fines and fees associated with those charges, they may use different methods for determining the amount of fines and fees to assess during the sentencing process. For example, some judges OPPAGA spoke with reported that they primarily rely on the clerk who is present in the courtroom to calculate and announce the amount of fines and fees. Other judges use a form order created in their circuit that includes the various amounts likely to apply in the majority of cases; to arrive at a total assessment, the judge can then check off the boxes pertinent in a particular case. In felony cases where defendants are more likely to be represented by counsel and where the state attorney may be presenting a negotiated plea agreement to the court, judges may rely on the state attorney to calculate the amount of fines and fees and the defense attorney to challenge any errors.

Since many fees are mandatory, the judge has limited ability to waive or reduce amounts owed. One alternative is for the judge to convert a defendant's obligations into community service requirements. This allows offenders to earn an hourly amount for their community service that is then applied to their debt. Although judges lack discretion to waive mandatory fines and fees, some we spoke with mentioned inquiring into a defendant's ability to pay at the time of sentencing, which may guide the judge's decision to convert court debt into community service. An individual who does not pay an assessed amount may be called back into court. Any person liable for payment of an obligation in a criminal case can be required to appear and be examined under oath concerning their ability to pay. To find the offender in contempt, judges are statutorily required to make a finding of failure to appear or willful failure to comply with a criminal or civil judgment on court-imposed financial obligations.

Another factor that may impact judicial discretion in assessing fines and fees is judicial awareness of the extent to which the clerk's court-related functions are dependent on the revenue stream. Some circuits have administrative orders that direct the clerk to inform the judge if they announce a mandatory assessment that is lower than the minimum required by statute. Other administrative orders direct the clerk to include all mandatory fines and court costs in the final judgment whether the amounts are announced in court or not. Other judges feel that fines and fees are a key part of holding defendants accountable. Judges mentioned the difficulty of determining whether offenders are being honest about their actual ability to pay.

---

[7] Section 28.37(3)(a), *F.S.*
[8] Section 28.246(6), *F.S.*

4

For those offenders who are not able to pay their entire debt on the day of sentencing, clerks offer payment plans.  Offenders must provide sworn details of their income and resources.  Some clerks require a default monthly minimum payment to offenders requesting a payment plan.[9]  Clerks also have limited discretion over the assessment and collection of fines and fees.  Offenders must pay either a one-time amount of $25 to set up a payment plan or pay $5 per month.  Additionally, clerks are required by state law to refer amounts uncollected after 90 days to a private attorney or collection agent.[10]  Once an account is referred to a private attorney or collection agent, the agent assesses offenders an additional charge of up to 40%.

## Courts assessed over $315 million in criminal fines and fees in county Fiscal Year 2017-18; however, collection rates in criminal cases are low

In county Fiscal Year 2017-18, clerks assessed over $315 million ($80.2 million in county criminal and $235.6 million in circuit criminal) in fines and fees for criminal cases in Florida.[11]  The fine and fee amounts assessed roughly correspond to the population of the counties and to the number of filings in criminal court.  In other words, counties with larger populations and higher numbers of filings in criminal court tend to have higher assessments of fines and fees.  (Exhibit 2 shows the amounts assessed in circuit and county criminal cases by county.)

### Exhibit 2
Fines and Fees Assessed in County Fiscal Year 2017-18 in Circuit and County Criminal Cases

| Circuit/County | Circuit Criminal | County Criminal | Circuit/County | Circuit Criminal | County Criminal |
|---|---|---|---|---|---|
| Circuit 1 | $14,914,648 | $5,838,185 | Circuit 9 | $21,375,134 | $4,914,657 |
| Escambia | 7,577,295 | 3,009,841 | Orange | 12,789,816 | 3,878,795 |
| Okaloosa | 3,869,970 | 1,555,723 | Osceola | 8,585,318 | 1,035,862 |
| Santa Rosa | 2,716,740 | 618,797 | Circuit 10 | $19,561,505 | $4,414,966 |
| Walton | 750,643 | 653,824 | Hardee | 621,205 | 120,153 |
| Circuit 2 | $5,999,650 | $1,803,929 | Highlands | 1,511,707 | 458,050 |
| Franklin | 259,672 | 165,182 | Polk | 17,428,593 | 3,836,763 |
| Gadsden | 350,028 | 165,547 | Circuit 11 | $8,267,938 | $3,873,337 |
| Jefferson | 60,604 | 35,001 | Miami-Dade | 8,267,938 | 3,873,337 |
| Leon | 4,893,935 | 1,313,015 | Circuit 12 | $9,433,465 | $2,972,527 |
| Liberty | 71,166 | 25,769 | DeSoto | 1,057,606 | 167,722 |
| Wakulla | 364,245 | 99,415 | Manatee | 4,864,271 | 1,220,804 |
| Circuit 3 | $5,340,806 | $1,124,924 | Sarasota | 3,511,588 | 1,584,002 |
| Columbia | 1,706,400 | 312,904 | Circuit 13 | $27,059,328 | $5,811,063 |

---

[9]  According to s. 28.246 (4), *F.S.*, the court can review the reasonableness of the payment plan.
[10] Section 28.246 (6), *F.S.*
[11] In Florida, county Fiscal Year dates are October 1st through September 30th.

5

| Circuit/County | Circuit Criminal | County Criminal |
|---|---|---|
| Dixie | 745,714 | 314,143 |
| Hamilton | 358,946 | 86,332 |
| Lafayette | 90,707 | 15,165 |
| Madison | 438,793 | 78,294 |
| Suwannee | 912,364 | 148,013 |
| Taylor | 1,087,882 | 170,073 |
| Circuit 4 | $11,737,120 | $5,070,789 |
| Clay | 723,640 | 646,793 |
| Duval | 10,491,646 | 4,185,658 |
| Nassau | 521,834 | 238,339 |
| Circuit 5 | $15,838,623 | $5,358,121 |
| Citrus | 2,254,777 | 692,289 |
| Hernando | 3,368,108 | 1,256,401 |
| Lake | 5,086,805 | 1,497,704 |
| Marion | 3,892,854 | 1,337,304 |
| Sumter | 1,236,079 | 574,424 |
| Circuit 6 | $16,760,021 | 8,471,335 |
| Pasco | 5,194,643 | 2,631,697 |
| Pinellas | 11,565,378 | 5,839,638 |
| Circuit 7 | $12,098,756 | 4,409,741 |
| Flagler | 668,690 | 304,344 |
| Putnam | 1,267,244 | 282,577 |
| St. Johns | 1,843,242 | 595,591 |
| Volusia | 8,319,580 | 3,227,229 |
| Circuit 8 | $4,040,957 | 1,171,966 |
| Alachua | 2,042,822 | 688,939 |
| Baker | 484,397 | 149,606 |
| Bradford | 1,045,187 | 130,709 |
| Gilchrist | 182,510 | 47,837 |
| Levy | 209,460 | 128,058 |
| Union | 76,581 | 26,818 |
| Hillsborough | 27,059,328 | 5,811,063 |
| Circuit 14 | $8,153,282 | $3,229,287 |
| Bay | 3,983,914 | 2,587,615 |
| Calhoun | 268,856 | 50,746 |
| Gulf | 236,203 | 89,561 |
| Holmes | 1,141,479 | 196,476 |
| Jackson | 1,640,901 | 114,097 |
| Washington | 881,929 | 190,792 |
| Circuit 15 | $9,381,056 | $3,479,513 |
| Palm Beach | 9,381,056 | 3,479,513 |
| Circuit 16 | $789,316 | $1,431,267 |
| Monroe | 789,316 | 1,431,267 |
| Circuit 17 | $12,578,206 | 6,200,509 |
| Broward | 12,578,206 | 6,200,509 |
| Circuit 18 | $8,436,346 | 3,680,530 |
| Brevard | 4,577,855 | 1,965,214 |
| Seminole | 3,858,491 | 1,715,315 |
| Circuit 19 | $7,326,415 | 3,059,840 |
| Indian River | 2,137,486 | 727,530 |
| Martin | 1,237,906 | 952,794 |
| Okeechobee | 745,756 | 224,174 |
| St. Lucie | 3,205,267 | 1,155,341 |
| Circuit 20 | $16,509,845 | 3,867,118 |
| Charlotte | 1,776,667 | 857,763 |
| Collier | 9,487,490 | 973,341 |
| Glades | 92,593 | 48,514 |
| Hendry | 680,320 | 296,838 |
| Lee | 4,472,775 | 1,690,662 |
| Total | $235,602,440 | $80,183,606 |

Source:  OPPAGA analysis of data provided by the Florida Clerks of Court Operations Corporation.

6

**Collection rates for criminal fines and fees are low.** As required by statute, the Florida Clerks of Court Operations Corporation (CCOC) must monitor the clerks' performance in several areas, including the effective collection of fines and fees.[12] The CCOC is a public corporation created by the Legislature to perform various functions for the clerks, including recommending changes in the amounts of fines, fees, and costs and developing a uniform system of workload performance standards.[13] The CCOC publishes a quarterly report indicating how many counties failed to meet the performance standards. Counties must report collections by the 20th of the month following the end of each quarter. The quarterly collections rate looks back over a five quarter or up to 15-month period to give clerks additional time to collect fines and fees before the rate is calculated. The performance standards for annual collections rates are 9% for circuit criminal cases and 40% for county criminal cases.

When the CCOC determines a clerk has not met a workload performance standard, the CCOC is required to identify the deficiency and any corrective action taken. In the third quarter of county Fiscal Year 2018-19 (most recent data available), 18 counties failed to meet the standard for collections in circuit criminal cases, and 16 counties failed to meet the standard in county criminal cases. Clerks not meeting the standard pointed to factors such as the incarceration of defendants and payment plans that extend well beyond the reporting period as some of the reasons for difficulty in collecting assessed amounts.

In county Fiscal Year 2017-18, 9.31% of the fines and fees assessed in circuit criminal court were collected statewide. The collection rate ranged from a low of 3.85% in Collier County to a high of 29.91% in Jefferson County. The collection rate for county criminal court is higher, at 39.89% statewide, with a range of 19.66% in Miami Dade County to 74.37% in Walton County. Collection rates are likely higher in county court because the assessments are lower in misdemeanor cases and defendants are not serving long prison sentences. (Exhibit 3 provides the collection rates by county for circuit and county criminal cases.)

Exhibit 3
Fines and Fees Collection Rate in Circuit and County Criminal Cases in County Fiscal Year 2017-18

| Circuit/County | Circuit Criminal | County Criminal | Circuit/County | Circuit Criminal | County Criminal |
|---|---|---|---|---|---|
| Circuit 1 | | | Circuit 9 | | |
| Escambia | 7.16% | 48.03% | Orange | 11.12% | 33.44% |
| Okaloosa | 8.42% | 46.42% | Osceola | 12.94% | 51.42% |
| Santa Rosa | 10.34% | 48.27% | Circuit 10 | | |
| Walton | 14.72% | 74.37% | Hardee | 7.20% | 48.62% |
| Circuit 2 | | | Highlands | 6.66% | 21.58% |
| Franklin | 7.15% | 46.79% | Polk | 6.31% | 40.00% |
| Gadsden | 7.87% | 46.63% | Circuit 11 | | |
| Jefferson | 29.91% | 43.22% | Miami-Dade | 13.14% | 19.66% |
| Leon | 13.30% | 36.75% | Circuit 12 | | |
| Liberty | 13.03% | 73.53% | DeSoto | 8.65% | 34.10% |

---

[12] Section 28.35(2)(d), *F.S.*, requires the CCOC to develop other performance standards, including operational efficiency and fiscal management. The CCOC established timeliness for filing new cases and timeliness for docketing cases as efficiency standards.
[13] Section 28.35(1)(a), *F.S.*

7

| Circuit/County | Circuit Criminal | County Criminal |
|---|---|---|
| Wakulla | 14.96% | 51.63% |
| Circuit 3 | | |
| Columbia | 6.02% | 42.81% |
| Dixie | 7.03% | 32.02% |
| Hamilton | 17.68% | 62.67% |
| Lafayette | 13.71% | 67.13% |
| Madison | 18.66% | 40.90% |
| Suwannee | 9.26% | 49.27% |
| Taylor | 5.11% | 54.74% |
| Circuit 4 | | |
| Clay | 22.10% | 51.70% |
| Duval | 4.17% | 25.13% |
| Nassau | 16.56% | 53.17% |
| Circuit 5 | | |
| Citrus | 12.28% | 47.80% |
| Hernando | 8.22% | 49.65% |
| Lake | 7.63% | 34.40% |
| Marion | 10.73% | 32.80% |
| Sumter | 13.61% | 48.21% |
| Circuit 6 | | |
| Pasco | 10.45% | 43.24% |
| Pinellas | 10.29% | 33.01% |
| Circuit 7 | | |
| Flagler | 9.52% | 50.95% |
| Putnam | 4.51% | 33.68% |
| St. Johns | 9.94% | 45.65% |
| Volusia | 5.99% | 38.16% |
| Circuit 8 | | |
| Alachua | 19.18% | 46.63% |
| Baker | 8.60% | 39.06% |
| Bradford | 7.90% | 42.56% |
| Gilchrist | 7.03% | 55.66% |
| Levy | 17.37% | 50.92% |
| Union | 16.24% | 49.13% |

| Circuit/County | Circuit Criminal | County Criminal |
|---|---|---|
| Manatee | 7.87% | 38.87% |
| Sarasota | 9.17% | 32.23% |
| Circuit 13 | | |
| Hillsborough | 8.10% | 39.80% |
| Circuit 14 | | |
| Bay | 7.83% | 34.26% |
| Calhoun | 9.27% | 32.86% |
| Gulf | 14.56% | 67.63% |
| Holmes | 7.60% | 50.74% |
| Jackson | 4.20% | 68.78% |
| Washington | 6.97% | 47.63% |
| Circuit 15 | | |
| Palm Beach | 11.75% | 33.47% |
| Circuit 16 | | |
| Monroe | 25.17% | 58.83% |
| Circuit 17 | | |
| Broward | 8.45% | 40.74% |
| Circuit 18 | | |
| Brevard | 10.69% | 41.69% |
| Seminole | 15.61% | 56.08% |
| Circuit 19 | | |
| Indian River | 8.96% | 56.66% |
| Martin | 15.41% | 64.79% |
| Okeechobee | 12.18% | 37.91% |
| St. Lucie | 14.74% | 49.60% |
| Circuit 20 | | |
| Charlotte | 16.25% | 38.33% |
| Collier | 3.85% | 57.12% |
| Glades | 16.15% | 66.08% |
| Hendry | 14.91% | 54.46% |
| Lee | 11.32% | 47.76% |

Source: OPPAGA analysis of data provided by the Florida Clerks of Court Operations Corporation.

**Collection rates vary by type and level of offense.**  OPPAGA analyzed data on the collection rate in criminal cases with disposition dates during the last four years.[14,15,16]  We were able to follow cases disposed in county Fiscal Year 2015-16 for up to four years.  As shown in Exhibit 4, after three to four years, first degree felonies had an 8% statewide collection rate, while third degree felonies had a 21% collection rate and second degree misdemeanors had a 50% collection rate.  As previously discussed, this variation may be due to the lower amounts assessed in lower level offenses and the fact that lower level offenses do not require long periods of incarceration.  It should also be noted that collection rates increase with time for all types and levels of offense.

**Exhibit 4**
**Criminal Fines and Fees Collection Rates by Crime Type**



---

[14] The most serious charge per case is represented in this analysis.
[15] Broward County does not provide financial data to the Clerks of Court Information System and is not included in the analysis.  In addition, due to inconsistent data for county Fiscal Year 2015-16, Duval County is also excluded from the analysis.
[16] Because the data was pulled on September 19, 2019, follow-up timeframes are 11 days short of the end of each county fiscal year (September 30th).  For example, cases that were disposed in county Fiscal Year 2017-18 have a follow-up time period closer to 11.5 to 23.5 months, instead of 12 to 24 months.  The follow-up time period in the chart references the closest month.



Source:  OPPAGA analysis of CCIS data provided by the Florida Court Clerks & Comptrollers.

# Fines and fees collected in criminal cases are distributed to different funds

**Clerks are constitutionally required to fund their court-related duties through filing fees for judicial proceedings and service charges and costs.**  However, the budgeting process and mechanisms for clerks have changed over time.  From 2004 through 2009, the clerks were permitted to retain certain legislatively designated fines and fees for funding.  After 2009, the Legislature placed the clerks in the General Appropriations Act and transferred revenues previously retained by the clerks to the state.  In 2013, the Legislature removed the clerks from the General Appropriations Act and returned to a fines and fees funded process.

The 2013 Legislature also required the Legislative Budget Commission (LBC) to approve clerks' budgets.  The LBC is responsible for reviewing and approving or disapproving budget amendments.  In 2017, the Legislature changed the budget process to place the Clerks of Court Operations Corporation in the role of approving the clerks' budgets instead of the LBC.  The aggregate clerks' budgets are limited to revenue estimates.  The portion of revenue clerks collect for the previous month that exceeds 1/12 of a clerk's total budget must be sent to the Department of Revenue for deposit into the Clerks of the Court Trust Fund.  Additionally, the Department of Revenue must annually send excess funds in the Clerks of the Court Trust Fund to the state's General Revenue Fund.

**Most revenues collected by the clerks from fines and fees are distributed to the clerks, courts, or General Revenue Fund.**  In addition to the revenue retained by the clerks to fund their court-related functions, collected fines and fees from all types of court cases are directed to the courts and General Revenue.  Remaining funds are distributed to state attorneys, public defenders, and various state trust funds.  Some state trust funds (e.g., Brain and Spinal Injury Trust Fund and the Emergency Medical Services Trust Fund) receive revenue from traffic cases.  (Exhibit 5 describes the distribution of all revenue collected by the clerks in state Fiscal Year 2017-18.)

10

Exhibit 5
Clerk Fines and Fees for All Case Types Revenue Distribution, State Fiscal Year 2017-18



Source: Florida Court Clerks and Comptrollers Annual Report.

Revenues collected in criminal cases also go to the clerks, public defenders, state attorneys, the General Revenue Fund, and state trust funds. Exhibit 6 describes four state trust funds that receive revenue from fines and fees in common criminal cases. The purpose of these funds are primarily criminal justice related. For example, the amounts distributed to the Crime Stoppers Trust Fund in the Attorney General's Office fund Crime Stoppers programs. There are also funds that support local programs if the county elects to require those fees. For example, counties can elect to impose a $65 fee for additional court costs and a $2 fee for local law enforcement education.

Exhibit 6
Four State Agency Trust Funds That Receive Revenue From Fines and Fees in Most Criminal Cases

| Fund | Agency | Purpose | Statute |
|---|---|---|---|
| Additional Court Cost Clearing Trust Fund | Various, including Florida Department of Law Enforcement and Department of Children and Families | Supports programs in multiple state agencies | s. 938.01, *F.S.* |
| Crime Stoppers Trust Fund | Office of the Attorney General | Funds Crime Stoppers and their crime fighting programs | s. 938.06, *F.S.* |
| Crimes Compensation Trust Fund | Office of the Attorney General | Compensates victims of crime | s. 938.03, *F.S.* |
| State Attorneys Revenue Trust Fund | Justice Administrative Commission | Pays for services rendered, including fees and charges paid by the State Attorney | s. 938.27(8), *F.S.* |

Source: Florida Court Clerks and Comptrollers, Distribution Schedule and Florida Statutes.

11

# Other states have taken steps to change assessment and collection of fines and fees in criminal cases

Most states fund their judicial systems at least partially by assessing and collecting user fees directly from participants in the system.  However, some stakeholders have expressed concern about the appropriateness of legal financial obligations to fund the justice system.  The National Center for State Courts' National Task Force on Fines, Fees, and Bail Practices, comprised of stakeholders representing the Conference of Chief Justices and the Conference of State Court Administrators, includes as one of its principles that courts should be funded entirely through state general revenues, and that no revenue as a result of fines and fees should be used to pay any aspect of court operation.  Stakeholders in other states reported that courts should not be revenue generators for the state and that worrying about the bottom line can affect how participants in the criminal justice system behave.  In Florida, a 2011 Florida Courts and Clerks Revenue Stabilization Workgroup noted that the Florida Constitution includes an express guarantee of an individual's right of access to the courts.  Additionally, the workgroup concluded that courts should be primarily funded by general tax revenues because they are a core function of government and benefit society broadly, not just the parties involved in each case.  Florida stakeholders also referenced concerns about a justice system dependent on collecting money from low-income individuals and the potential of criminal debt obligations to perpetuate their involvement in the system.

Stakeholders have also pointed to the negative long-term effects these legal financial obligations may have on offenders.  The amount of criminal justice debt is significant in all counties in Florida.  For example, if the entire debt from circuit criminal cases assessed in Orange County were divided among the population of the county, each person would owe $9.48, while each person in Liberty County would owe $7.98.  The amount of debt per circuit criminal filing would be $1,156 in Orange and $395 in Liberty.  However, these legal financial obligations are difficult to collect, especially in felony cases, and collection rates are low.  A recent study by the Harvard Kennedy School describes the consequences associated with criminal justice debt.[17]  These consequences can undermine post-incarceration goals of re-entry such as finding housing, transportation, and employment.  For example, those convicted of a crime, particularly a felony, may have a difficult time finding employment and may not have the resources to pay the fines and fees they owe.  This could be further exacerbated for offenders with mental health or substance abuse issues who already face many barriers to economic stability, food security, and finding housing.  In addition, lower income individuals may not have the resources to avoid or decrease the assessment of fines and fees and may face a wide range of consequences when they are unable to pay.  These include collection fees, driver's license suspension, and arrest and short-term incarceration for failing to make court appearances related to the debt.[18]

Some states have explored or implemented different approaches to the assessment and collection of criminal fines and fees.  These approaches include requiring judges to assess amounts based on the defendant's financial resources and giving judges expanded ability to waive legal financial obligations.  Much of the focus in other states has been on increasing the court's role in determining indigency.  For example, in Ohio, the court must conduct a hearing about financial resources at initial sentencing and then each time the defendant comes before the judge on the same case.  Arizona, Michigan, and Texas

---

[17] Martin, Karin D., Sandra Susan Smith, and Wendy Still. *Shackled to Debt: Criminal Justice Financial Obligations and the Barriers to Re-Entry They Create.* New Thinking in Community Corrections Bulletin. Washington, D.C.: U.S. Department of Justice, National Institute of Justice, 2017. NCJ 249976.

[18] Section 322.245(5)(a), *F.S.*

12

also require a financial resources inquiry at the time of sentencing.  To assist judges, states such as Ohio, Texas, and Washington have developed bench cards.[19]  Bench cards recommend reviewing and assessing areas such as a defendant's income, other financial resources, housing costs, other expenses, and employment status.  Bench cards also provide guidance about how to conduct a financial resources inquiry.  Ohio trial courts also have statutory authority to waive, suspend, or modify the payment of costs at the time of sentencing or any time thereafter.

Funded in part by a grant from the U.S. Department of Justice, in 2018 Washington implemented an online calculator for use by court personnel, attorneys, and the general public.  The calculator allows users to input information about the nature of the offense and defendant income and debt.  The site also provides guidance regarding whether judges have discretion on levying fines and fees for a given offense.  In Washington, courts are prohibited from imposing costs if a defendant is found to be indigent; defendants are considered indigent if they meet one or more of several conditions.[20]  Relying on determinations of indigence made by other state or federal assistance programs may give the court confidence in the accuracy of an offender's claim of indigence.

In Texas, the determination of indigence is coupled with a judge's ability to waive or modify legal financial obligations.   In 2017, the Texas Legislature passed legislation in response to recommendations from the Texas Judicial Council.  Under the new law, when defendants make a plea in open court, judges must inquire about financial resources.  If the court determines a defendant is indigent, the court must tailor a payment plan, order discharge by community service, and/or waive all or part of the fines and costs.  Previously, judges were required by law to delay the waiving of fines and costs until after the defendant defaulted on payment.

---

[19] As noted on an Ohio bench card, "The responsibility of the courts in general, and individual judges in particular, is to ensure that any fines, costs, and other financial sanctions arising out of a criminal case are reasonable and take into account a defendant's ability to pay."

[20] These conditions include currently receiving benefits from the Temporary Assistance for Needy Families program or aged, blind, or disabled assistance; medical care services; pregnant woman assistance, Supplemental Security Income, federal poverty-related veterans' benefits; refugee resettlement services; Medicaid or food stamps; involuntarily commitment to a public mental health facility; or an income at or below 125% of the federal poverty level.

13



### Office of Program Policy Analysis and Government Accountability

OPPAGA provides performance and accountability information about Florida government in several ways.

- Reports deliver program evaluation and policy analysis to assist the Legislature in overseeing government operations, developing policy choices, and making Florida government more efficient and effective.
- Government Program Summaries (GPS), an online encyclopedia, www.oppaga.state.fl.us/government, provides descriptive, evaluative, and performance information on more than 200 Florida state government programs.
- PolicyNotes, an electronic newsletter, delivers brief announcements of research reports, conferences, and other resources of interest for Florida's policy research and program evaluation community.
- Visit OPPAGA's website at www.oppaga.state.fl.us.

OPPAGA supports the Florida Legislature by providing data, evaluative research, and objective analyses that assist legislative budget and policy deliberations.  This project was conducted in accordance with applicable evaluation standards.  Copies of this report in print or alternate accessible format may be obtained by telephone (850/488-0021), by FAX (850/487-3804), in person, or by mail (OPPAGA Report Production, Claude Pepper Building, Room 312, 111 W. Madison St., Tallahassee, FL  32399-1475).

**OPPAGA website:**  www.oppaga.state.fl.us
Project supervised by Claire K. Mazur (850/717-0575)
Project conducted by Laurie Scott, Anne Cooper, and Tim MacGregor
R. Philip Twogood, Coordinator