UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KELVIN LEON JONES, *et al.*,

    Plaintiffs,

v.                                                  Case No. 4:19-cv-300-RH/MJF

RON DeSANTIS, *et al.*,

    Defendants.

_____/

**SECRETARY OF STATE'S MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF HANNAH L. WALKER, PH.D., AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

    Counsel for the Plaintiffs retained Dr. Hannah L. Walker, a Professor of Political Science and Criminal Justice at Rutgers University, "to provide consultation and analysis on the barriers to economic stability people with felony convictions face, which may impact their ability to pay their legal financial obligations in order to become eligible to vote in the state of Florida." Ex. A, Walker Report, at 2. Specifically, she was "asked to assess how such barriers may differentially affect women of color with felony convictions, relative to other demographic subgroups." *Id.*

    Pursuant to Federal Rule of Evidence 702, the principles established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and other applicable law, Secretary of State Laurel M. Lee (the "Secretary") moves to exclude

Dr. Walker's opinions because they are not relevant to any material facts at issue and were not based upon a reliable or appropriately performed methodology. Furthermore, acceptance of the out-of-court statements quoted in Dr. Walker's report would violate Rule 802's prohibition of hearsay.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eleventh Circuit has held that each of the following elements must be true for a witness to testify as an expert:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). Even if the expert uses a reliable methodology, the opinion still

must rest upon a reliable foundation, and there must be a solid link between the opinion and the bases for it:

> The focus of the reliability inquiry should be on methodology but "even when an expert is using reliable principles and methods ... there [cannot be] too great an analytical gap between the data and the opinion proffered." [*United States v. Frazier*, 387 F.3d 1244, 1276 (11th Cir. 2004).] Expert testimony should not be based solely on temporal proximity and anecdotal evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir.1999).

*Jazairi v. Royal Oaks Apartment Assocs., L.P.*, 217 F. App'x. 895, 898 (11th Cir. 2007) (alterations in original, except citation).

The party offering the expert bears the burden of satisfying each element by a preponderance of the evidence. *See Allison,* 184 F.3d at 1306 ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." (citing *Daubert*, 509 U.S. at 592 n.10)).

## ARGUMENT

### A.   Dr. Walker's opinions are not relevant to any material issue in this case.

As stated in her expert report and quoted above, counsel for the Plaintiffs "retained [Dr. Walker] to provide consultation and analysis on the barriers to economic stability people with felony convictions face, which may impact their ability to pay their legal financial obligations in order to become eligible to vote in the state of Florida." Ex. A, Walker Report, at 2. Specifically, she was "asked to

3

assess how such barriers may differentially affect women of color with felony convictions, relative to other demographic subgroups." *Id.* Any opinions Dr. Walker intends to provide on such matters are inadmissible under Rule 702 because they will not "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Harcros Chems.,* 158 F.3d at 562. While "barriers to economic stability people with felony convictions face" might have relevance to some hypothetical constitutional challenge of Florida' criminal justice system, they have no bearing on the instant challenge of the re-enfranchisement provisions of S.B. 7066 because Plaintiffs cannot establish that S.B. 7066 caused any such barriers or was enacted to continue or exacerbate them. As such, Dr. Walker's expert report should be excluded.

**B.      Dr. Walker Does Not Identify any Reliable Principles or Methodology upon which She Bases Her Opinions.**

Rule 702 also precludes admission of Dr. Walker's opinions because they have not been proven to be "the product of reliable principles and methods." Fed. R. Evid. 702(c). An expert must demonstrate that the methodology used to develop proffered testimony is "sufficient" and "reliable":

> An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result.

4

*Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Dr. Walker fails to meet this foundational requirement of Rule 702 because she does not identify any reliable methodology underlying her opinions.

In her expert report, Dr. Walker states that, "[i]n order to formulate the opinions presented in [her] report, [she] reviewed existing analyses of data collected by the Bureau of Justice Statistics; existing literature examining the impact of contact with the criminal legal system on a variety of economic factors; and the impact of contact with the criminal legal system on other life-course factors that may indirectly affect one's ability to pay legal financial obligations." Ex. A, Walker Report, at 2-3. As she confirmed in deposition, Dr. Walker's analysis was limited to a review of the literature. Ex. B, Walker Depo., at 11:25-12:3. However, she fails to establish that her review methodology was reliable or appropriately performed.

Even assuming a literature review, without more, is a proper "method" for developing expert opinions, it "must still be performed appropriately." *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 472 (M.D.N.C. 2006). "A reliable literature review uses formal search methods to allow a researcher to obtain a neutral snapshot of the existing research on a particular question." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 929 (D.S.C. 2016) (internal quotation marks and citation omitted). Thus, a proper literature review "begins with a formal, transparent, and reproducible search

5

for studies that address a proposed research question." *Id.* (internal quotation marks and citation omitted). However, Dr. Walker's report did not maintain a record of her search terms, and Plaintiffs have made no showing whatsoever that she performed any systematic search to obtain relevant literature, rather than cherry-picking studies that supported her conclusions.

As she explained in deposition, when Dr. Walker began her analyses for this case, she "anticipated, based on [her] working knowledge of literature around the criminal justice system, that -- that people of color would face greater barriers to economic reintegration, postprison, and in particular, postconviction than do their white counterparts" and "that those barriers may be greater for women of color." Ex. B, Walker Depo., at 12:7-15. Although she purported to make an effort to comprehensively identify pertinent peer-reviewed literature on the subject, *id.* at 13:23-14:9, she merely conducted an internet search, without keeping a record of her search terms, and reviewed materials available in the Rutgers library. *Id.* at 14:10-15:7. Moreover, she repeatedly cites to second-hand, often unpublished sources that refer to publicly available data, but she did not review the underlying data herself. *Id.* at 16:22-21:24. For example, Dr. Walker repeatedly refers to "a study" and "data" of the Bureau of Justice Statistics, but her actual sources were a journal article and third-party internet report that purport to summarize the

6

governmental study,[1] as she did not review the governmental study herself. Ex. B, Walker Depo., at 16:22-25. Similarly, she repeatedly refers to a 2005 "analysis conducted by the Florida Department of Corrections," but her actual source is a non-peer-reviewed report of the Brennan Center for Justice.[2] In each instance, she referred to the Department of Corrections as the source in the text of her report, without reviewing the actual governmental data or analysis. Ex. B, Walker Depo., at 18:8-11, 20:15-18. Moreover, when she cited the Brennan Center report, she was unaware that lawyers from the Brennan Center actually represent some of the plaintiffs in this case. *Id*. at 18:24-19:1.

A review of Dr. Walker's cited sources also reveals that she cherry-picked data that supports her opinions, while ignoring or burying in a footnote other data that did not support her client's position. Specifically, in the text of her report, Dr. Walker repeatedly states that "[a]nalysis conducted by the Prison Policy Initiative

---

[1] Ex. A, Walker Report, at 3 & n. ii (citing to Harris, Alexes, Heather Evans, and Katherine Beckett. "Drawing blood from stones: Legal debt and social inequality in the contemporary United States." *American Journal of Sociology* 115, no. 6 (2010): 1753-1799); *id*. at 6 & n. xxi (same), n. xxii (same); *id*. at 9 & n. xliii (citing Rabuy, Bernadette and Daniel Kopf. "Prisons of Poverty: Uncovering the pre-incarceration incomes of the imprisoned." Northampton, MA: *Prison Policy Initiative*, 2015. https://www.prisonpolicy.org/reports/income.html), n. xliv (same), & xlv (same).

[2] Ex. A, Walker Report, at 3 & n.iii (Diller, Rebekah. "The hidden costs of Florida's criminal justice fees." *New York: The Brennan Center for Justice,* 2010. https://www.brennancenter.org/sites/default/files/2019-08/Report_The%20Hidden-Costs-Florida%27s-Criminal-Justice-Fees.pdf); *id*. at 7 & n. xxviii (same); n. xxix (same) & n. xxx (same).

7

finds that between 1978 and 2015 women's incarceration grew 834 percent, more than twice the rate of growth for men during the same time period." Ex. A., Walker Report, at 4; *id*. at 9. Yet the text of her report makes no reference to the same study's conclusion that, in *Florida* from 2009 to 2015, imprisonment rates for women actually *decreased* faster than for men. Ex. B, Walker Depo. at 23:15-25:3; *see also id.*, Depo. Ex. 2, at 6; *id.* Depo. Ex. 3. Instead, she chose to bury that information in a footnote with qualification. *See* Ex. A, Walker Report, at 24, n. xli; *see also* Ex. B, Walker Depo., at 25:4-26:11. Moreover, nowhere in her report does she inform the Court of the analyses in another of her cited reports showing that, from 2000 to 2017, the imprisonment rate for black women decreased by 55 percent, while the imprisonment for white women increased by 44 percent. Ex. A, Walker Report; *see also* Ex. B, Walker Depo., Ex. 4, at 3-4. "Such cherry-picking of data is unreliable and 'fails to satisfy the scientific method and *Daubert*.'" *In re Lipitor*, 174 F. Supp. 3d at 931-32 (quoting *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001)); *accord Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889 (E.D. Wis. 2010) ("[I]t is readily apparent that Dr. Keegan all but 'cherry picked' the data he wanted to use, providing the court with another strong reason to conclude that the witness utilized an unreliable methodology.").

For these reasons, Dr. Walker's opinions fail to satisfy the reliability criterion for expert testimony under Rule 703 and *Daubert*, and must be excluded.

### C.     Walker's Report Serves as a Conduit for Inadmissible Hearsay.

Dr. Walker's testimony also should be excluded because her report is nothing more than a conduit for hearsay, even double-hearsay. Although experts may rely on hearsay in forming opinions, they may not "simply transmit that hearsay" to the finder of fact:

> [T]he expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever . . . .

*United States v. Mejia*, 545 F.3d 179, 197-98 (2d Cir. 2008) (internal quotation marks and citations omitted); *cf. Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.").

Having done no independent analysis of data, Dr. Walker's report is nothing more than a collection of hearsay statements without any application of expertise. It is not the product of specialized knowledge, but merely an assemblage of out-of-court statements, including a double-hearsay report of an organization that represents some of the plaintiffs in this case. Because Walker's narrative presentation of hearsay does not apply any specialized knowledge to the facts of the case, her report provides nothing more than advocacy on behalf of the party who hired her.

The Federal Rules of Evidence are intended to prevent parties from using experts to argue their case from the witness stand. As the Advisory Committee explains:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

Fed. R. Evid. 704, Notes of Advisory Committee; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004) ("'[E]xpert' witnesses whose intended role is more to argue the client's cause from the witness stand . . . . are loosely analogous to compurgators, also known as oath helpers, in that they lend their credentials and reputations to the party who calls them without bringing much if any relevant knowledge to bear on the facts actually at issue."). As the Eleventh Circuit recognized in *Frazier*, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." 387 F.3d at 1262-63. Plaintiffs can present their factual theory of the case through their lawyers. It is improper to do so through the testimony of a so-called expert. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (excluding and expert's "history of Rezulin" on the ground that an expert's presentation of facts and inferences drawn from facts, "does no more than

counsel . . . will do in argument, *i.e.*, propound a particular interpretation of [the party's] conduct" (internal quotation marks and citation omitted)).

## **CONCLUSION**

For the reasons stated above, the testimony of Hannah L. Walker, Ph.D should be excluded.

Respectfully submitted by:

BRADLEY R. MCVAY (FBN 79034)
General Counsel
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
Deputy General Counsel
ashley.davis@dos.myflorida.com
Florida Department Of State
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127

*Mohammad O. Jazil*
MOHAMMAD O. JAZIL
(FBN 72556)
mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
gperko@hgslaw.com
EDWARD M. WENGER
(FBN 85568)
ewenger@hgslaw.com
Hopping Green & Sams, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551

GEORGE N. MEROS, JR.
(FBN 263321)
george.meros@hklaw.com
TARA R. PRICE (FBN 98073)
tara.price@hklaw.com
Holland & Knight LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301
Telephone: (850) 224-7000
Facsimile: (850) 224-8832

*Counsel for Florida Secretary of State Laurel M. Lee*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that the foregoing complies with the word limit specified in Local Rule 7.1(F). Specifically, this memorandum contains 2,459 words, excluding the case style, signature block, and certificates. Additionally, the undersigned certifies that this motion is being filed consistent with this Court's March 18, 2020 Scheduling Order and prior colloquy with counsel.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record via email on this 25th day of March, 2020.

*/s/ Mohammad O. Jazil*
Attorney