## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KELVIN LEON JONES et al.,

      Plaintiffs,

                                 CONSOLIDATED
v.                                 CASE NO. 4:19cv300-RH/MJF

RON DeSANTIS et al.,

      Defendants.

_____/

## ORDER CERTIFYING A CLASS AND SUBCLASS

These consolidated cases arise from "Amendment 4," a voter-initiated
amendment to the Florida Constitution that automatically restores the right of most
felons to vote, but only upon completion of all terms of sentence. Under a Florida
statute and opinion of the Florida Supreme Court, "all terms of sentence" means
not only imprisonment and supervision but also fines, restitution, and other
financial obligations imposed as part of a sentence.

The plaintiffs assert that conditioning the ability to vote on payment of
money is unconstitutional both across the board and more specifically as applied to
felons who are genuinely unable to pay. The plaintiffs in one of the cases—the

"Raysor plaintiffs"—have moved to certify a class and subclass corresponding with the scope of the claims. The proposed class consists of felons who would be eligible to vote but for unpaid financial obligations; the proposed class is not limited to those unable to pay. The proposed subclass consists of felons who would be eligible to vote but for a financial obligation the felon is genuinely unable to pay.

## I. Background

Florida's Constitution allows voter-initiated amendments. In 2018, Florida voters passed Amendment 4, which added a provision to the Florida Constitution automatically restoring the voting rights of some—not all—felons. The new provision became effective on January 8, 2019 and was codified as part of Florida Constitution article VI, section 4. The full text of section 4, with the new language underlined, states:

> (a) No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability. Except as provided in subsection (b) of this section, any disqualification from voting arising from a felony conviction shall terminate and voting rights shall be restored upon completion of all terms of sentence including parole or probation.
>
> (b) No person convicted of murder or a felony sexual offense shall be qualified to vote until restoration of civil rights.

Fla. Const. art. VI, § 4 (emphasis added).

The Florida Legislature adopted a statute—colloquially known as "SB7066"—that purports to implement Amendment 4. SB7066 explicitly provides that "completion of all terms of sentence" under Amendment 4 includes payment of all financial obligations imposed as part of the sentence—that is, "contained in the four corners of the sentencing document." Fla. Stat. § 98.0751(2)(a). SB7066 also explicitly provides that this includes financial obligations that the sentencing court has converted to a civil lien. *Id*. SB7066 became effective on July 1, 2019.

On June 28, 2019, the Raysor plaintiffs filed a four-count complaint against the Florida Secretary of State asserting the financial-obligations requirement discriminates against those unable to pay in violation of the Fourteenth Amendment (count one); imposes a poll tax or other tax in violation of the Twenty-Fourth Amendment (count two); is void for vagueness (count three); and denies procedural due process (count four). The complaint was later amended to add a claim under the National Voter Registration Act (count five). The case has been consolidated with four others that also challenge the requirement to pay money as a condition of reenfranchisement.

After an evidentiary hearing, a preliminary injunction was entered on October 18, 2019 in favor of all the individual plaintiffs against the Florida Secretary of State and the Supervisors of Elections of the counties where the individual plaintiffs are domiciled. The preliminary injunction has two parts. First,

an enjoined defendant must not take any action that both (a) prevents a plaintiff from *applying or registering* to vote and (b) is based only on failure to pay a financial obligation that the plaintiff *asserts* the plaintiff is genuinely unable to pay. Second, an enjoined defendant must not take any action that both (a) prevents a plaintiff from *voting* and (b) is based only on failure to pay a financial obligation that the plaintiff *shows* the plaintiff is genuinely unable to pay.

This means, in substance, that a plaintiff who *asserts* inability to pay can *register*, and a plaintiff who *shows* inability to pay can *vote*. The injunction specifically provided that it did not prevent the Secretary from notifying the appropriate Supervisor of Elections that a plaintiff has an unpaid financial obligation that will make the plaintiff ineligible to vote unless the plaintiff shows the plaintiff is genuinely unable to pay the financial obligation. The United States Court of Appeals for the Eleventh Circuit affirmed the injunction. *See Jones v. Governor of Fla.*, 950 F.3d 795 (11th Cir. 2020).

The Raysor plaintiffs have moved for class certification, but only for purposes of their Twenty-Fourth Amendment claim (count two) and inability-to-pay claim (count one). The plaintiffs do not seek class treatment of their other claims. This is permissible. *See* Fed. R. Civ. P. 23(c)(4) ("Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *see also Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th

Cir. 1968) (Rule 23 gives the court "ample powers . . . to treat common things in common and to distinguish the distinguishable.").

The Secretary opposes class certification. The Governor of Florida, who is a defendant in some of the consolidated cases but not in *Raysor*, has joined the opposition.

## II. Standing

A plaintiff who seeks to represent a class must have standing. *See, e.g.*, *Jones v. Firestone Tire & Rubber Co.,* 977 F.2d 527, 531 (11th Cir. 1992) (citing *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). The Raysor plaintiffs—the proposed class representatives—are Bonnie Raysor, Diane Sherrill, and Lee Hoffman. They easily meet the standing requirement. Each plaintiff is a felon who would be eligible to vote but for financial obligations that were imposed as part of a felony sentence and that the plaintiff is genuinely unable to pay.

Ms. Raysor has outstanding fines and fees related to a felony conviction. *See* Raysor Decl., ECF No. 172-2 at 3. She is on a payment plan based on her income and will not be able to pay off her financial obligations until 2031. *Id.* She asserts she is unable to pay her financial obligations in full due to her limited income and her expenses for necessities including housing, food, and other basic needs. *Id.*

Ms. Sherrill has outstanding financial obligations related to a felony conviction. *See* Sherrill Decl., ECF No. 172-3 at 4. She receives public assistance.

*Id.* at 3. She asserts she is unable to pay her financial obligations because of her limited income and her expenses for necessities including housing, utilities, and groceries. *Id.* at 3-4.

Mr. Hoffman has outstanding financial obligations related to felony convictions. *See* Hoffman Decl., ECF No. 172-4 at 2-3. Mr. Hoffman receives disability and works part-time. *Id.* at 3. He asserts he is unable to pay his financial obligations based on his limited income and his expenses for necessities including housing, utilities, groceries, gas, and other basic living expenses. *Id.*

### III. Rule 23(a)

Before certifying a class, a court must conduct a "rigorous analysis" under Federal Rule of Civil Procedure 23. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The factual record, as opposed to "sheer speculation," must demonstrate that each Rule 23 requirement has been met. *Vega*, 564 F.3d at 1267. The class must satisfy all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See, e.g.*, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

The party who moves to certify a class has the burden of establishing that the Rule 23 elements are met. *Vega*, 564 F.3d at 1265. The Rule 23(a) elements are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (*quoting Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003)).

### A. Numerosity

The numerosity element requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

The numerosity requirement is plainly met for the Twenty-Fourth Amendment class. The Secretary does not assert the contrary. The record includes the Federal Rule of Civil Procedure 26(a)(2) report of Dr. Dan Smith indicating that in the 58 counties for which he had data, over 430,000 otherwise eligible felons are ineligible to vote solely because of outstanding financial obligations. *See* Smith Report, ECF No. 153-1 at 5, 20. That number was conservative because it

did not include the 9 counties for which Dr. Smith did not have data and did not

include felons with only federal or out-of-state convictions. *Id.* at 7 n.3, 20.

      The numerosity requirement is also met for the inability-to-pay subclass. For

the fiscal year that runs from October 1, 2017 to September 30, 2018, the Florida

Court Clerks & Comptrollers published an annual report on the payment of court-

related fines, fees, and charges. *See* Fla. Court Clerks & Comptrollers, *2018*

*Annual Assessments and Collections Report, Statewide Summary—Circuit*

*Criminal* (2018), https://flccoc.org/wp-content/uploads/2018/12/2018-Annual-

Assessments-and-Collections-Report.pdf. The report noted three factors that affected

collections of assessed fines and fees: incarceration, indigency, and judgment/lien

status. *Id.* at 7. The report said 22.9% of the fines and fees assessed in Florida

circuit courts were at risk of non-collection specifically because of indigency. *Id.* at

11. Taken together, Dr. Smith's report and the Florida Court Clerks &

Comptrollers report show that many thousands of felons are unable to pay their

relevant financial obligations because of indigency. Still others are unable to pay

because the amount owed is out of reach even for a person who is not indigent.

### B. Commonality

      The commonality element requires that "there are questions of law or fact

common to the class." Fed. R. Civ. P. 23(a)(2). The action "must involve issues

that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811

(11th Cir. 2001). A common contention must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

This case will turn entirely on common issues with common answers. This is so for both the Twenty-Fourth Amendment claim and the inability-to-pay claim.

For the Twenty-Fourth Amendment, if the requirement to pay a financial obligation of a specific kind is an impermissible poll tax or other tax, that will be true of every class member who owes a financial obligation of that kind. Whether an exaction is an impermissible poll or other tax may not be the same for restitution, fines, and the several kinds of fees imposed as part of a felony sentence. But this means only that the common answer that will resolve the Twenty-Fourth Amendment claim may consist of several parts—that some exactions may be impermissible poll or other taxes while others are not. The commonality requirement does not preclude class treatment for questions with multi-part answers. The requirement is only for questions capable of classwide resolution. The question of what kind of exaction is an impermissible poll or other tax is such a question—the answer will resolve the Twenty-Fourth Amendment claim for all class members.

The same is true for the inability-to-pay claim. In asserting the contrary, the Secretary misunderstands the controlling substantive issue and the relief likely to

be granted if the plaintiffs prevail on the claim. The controlling substantive issue is whether it is unconstitutional for a state to condition a felon's ability to vote on the payment of money the felon is genuinely unable to pay. This is a common question that will have a single common answer—yes or no. This, without more, satisfies the commonality requirement.

The Secretary asserts that providing relief will require individual determinations of each subclass member's ability to pay, but that is wrong and would not preclude class certification anyway. Commonality requires common questions with common answers and is not defeated just because a case also presents individual issues. Indeed, nearly all class actions involve at least some individual questions, including, for example, whether an individual class member qualifies for whatever classwide relief may ultimately be granted. And here, the relief likely to be granted if the plaintiffs prevail is not a felon-by-felon determination in this court of inability to pay but instead an injunction requiring the Secretary to put in place a system under which felons are not precluded from voting based only on inability to pay. The system may be one put forward by the Secretary at trial or, in the absence of input from the Secretary, one adopted by the court. Either way, it will be a system put in place for all subclass members.

The Supreme Court has said, "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a

classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). In this case common answers to common questions will resolve the litigation. The commonality requirement is satisfied.

### C. Typicality

The typicality element requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The plaintiffs must "possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348-49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Here each named plaintiff has the same interest and suffered the same injury as each class and subclass member. Each would be eligible to vote but for a financial obligation imposed as part of a felony sentence—an obligation the plaintiff asserts the plaintiff is genuinely unable to pay. Nothing more is required.

The Secretary asserts, though, that none of the named plaintiffs owe restitution. This would not preclude class certification even if true; the named plaintiffs owe financial obligations that are sufficiently typical even if not identical to all the financial obligations at issue. And in any event the record shows that Mr. Hoffman was ordered to pay restitution. *See, e.g.*, ECF No. 148-29 at 14, 27. If it

turns out that Mr. Hoffman does not in fact owe restitution and that the restitution issues are so different from those presented by other financial obligations that the named plaintiffs' claims are not typical—a development unlikely for the Twenty-Fourth Amendment class and even more unlikely for the inability-to-pay subclass—the class definitions can be amended to exclude restitution.

The typicality requirement is satisfied.

### D. Adequacy of Representation

The final Rule 23(a) requirement is that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This encompasses two separate inquiries: whether any substantial conflicts of interest exist between the representative and the class, and whether the representative will adequately prosecute the action. *See, e.g.*, *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Class counsel also must be adequate. *See* Fed. R. Civ. P. 23(g).

The Raysor plaintiffs are adequate representatives. Their attorneys are adequate class counsel. The adequacy requirement is satisfied.

### IV. Rule 23(b)(2)

Having met the requirements of Rule 23(a), the plaintiffs must also meet one of the requirements of Rule 23(b). Under Rule 23(b)(2), class treatment is appropriate when "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

This case presents the very paradigm of a proper (b)(2) class. The party opposing the class—the Secretary on behalf of the State of Florida—has refused to allow felons with unpaid financial obligations to vote, regardless of any inability to pay.

## V. Ascertainability

The analysis to this point shows that the plaintiffs have met the requirements of Rule 23(a) and 23(b)(2). Rule 23 does not list ascertainability of class membership as an additional prerequisite to class certification. But the Secretary asserts ascertainability is required. And the Secretary asserts the plaintiffs have not met this requirement. The Secretary is wrong on both scores.

First, the law of the circuit is that ascertainability is not a requirement for certification of a (b)(2) class. The controlling case is *Carpenter v. Davis*, 424 F.2d 257 (5th Cir. 1970). There, in addressing a (b)(2) class, the court said, "It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Id*. at 260. The court said Rule 23(b)(2) commonly applies in "the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific

enumeration." *Id*. at 261 (quoting Fed. R. Civ. P. 23(b)(2) advisory committee's notes to 1966 amendment). As a pre-*Bonner* decision of the Fifth Circuit, *Carpenter* is binding in this court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

The *Carpenter* holding makes sense. When a defendant has acted on grounds generally applicable to a class, so that injunctive or declaratory relief is appropriate respecting the class as a whole, there is ordinarily no reason to be concerned with precisely who is or is not a class member. If a defendant is engaged in an unlawful practice, an injunction requiring the defendant to stop can effectively end the practice; one need not know who fell prey to the practice in the past or is in line to do so in the future.

In asserting the contrary, the Secretary cites *DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970). There the court said that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Id*. at 734. The circumstances in *DeBremaecker* were markedly different from the case at bar, and in any event, to the extent of any conflict between *Carpenter* and *DeBremaecker*, the controlling decision is *Carpenter*, which was decided first. *See Monaghan v. Worldpay US, Inc.*, No. 17-14333, 2020 WL 1608155 at *5 (11th Cir. Apr. 2, 2020) ("Our adherence to the prior-panel rule is strict, but when there are conflicting prior panel decisions, the oldest one

controls."); *see also Thompson v. Merrill*, No. 2:16-cv-783-ECM, 2020 WL

411985 at *2-3 (M.D. Ala. Jan. 24, 2020) (recognizing that *Carpenter* predates and

thus controls over *DeBremaecker*).

In any event, here the proposed class and subclass, at least as defined in this

order, are sufficiently ascertainable to meet any such requirement. The state's

records of financial obligations are a mess—that is one of the plaintiffs' other

complaints—but the Secretary should hardly be heard to complain that it is

impossible to figure out who has an unpaid financial obligation. And while no

determination has been made—or is likely to be made in this litigation—as to

which class members are genuinely unable to pay, the members of the inability-to-

pay subclass will be those who *assert* genuine inability to pay.

This makes sense. Class membership typically turns on having a claim, not

on showing at the outset that the claim will succeed on the merits. The goal is to

provide the proper adjudication of the claim one way or the other, so that, win or

lose, the claim is resolved. For felons who assert a constitutional right to vote

because of genuine inability to pay, what matters is that they assert the claim—not

that they will win either on the claim that they are in fact genuinely unable to pay

or on the claim that conditioning the ability to vote on payment of an amount a

person is unable to pay is unconstitutional.

Ascertaining who meets these class definitions will be no more difficult than figuring out who qualifies for relief in any typical class action. Class members often are required to submit a claim or otherwise take steps to take advantage of whatever relief ultimately becomes available.

If ascertainability is required—it is not—the plaintiffs meet the requirement.

## VI. Necessity

Finally, the Secretary asserts that a class should not be certified if class treatment is unnecessary—if the full relief the plaintiffs seek is available in an individual action. The Secretary says the Twenty-Fourth Amendment class fails this requirement because if the plaintiffs prevail on this claim, the Secretary will simply abide by the ruling. The Secretary does not make the same assertion for the inability-to-pay claim. The distinction, the Secretary says, is that the Twenty-Fourth Amendment claim is a facial challenge, while the inability-to-pay claim is an as-applied challenge.

Rules 23(a) and (b)(2) do not refer to necessity. But class treatment adds a layer of complexity to any litigation. This order assumes that when class treatment would serve no purpose, a court can properly choose not to certify a class. *See, e.g.*, *United Farmworkers of Fla. Hous. Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 812 (5th Cir. 1974).

Here, though, the Secretary's promise to abide by any ruling is not enough. After entry of a preliminary injunction in favor of the 17 individual plaintiffs, the Secretary advised Supervisors of Elections throughout the state that the ruling applied only to the 17 individuals. The March 2020 elections went forward on that basis—without any statewide effort to conform to the United States Constitution as interpreted by both this court and the Eleventh Circuit. Class members can hardly be faulted for asserting that, if the ruling on the merits ultimately is that they have a constitutional right to vote, the right should be recognized in an enforceable decision.

### VII. Conclusion

The plaintiffs' Twenty-Fourth Amendment and inability-to-pay claims turn on issues that can properly be resolved in a single action, once and for all. Class treatment is proper.

IT IS ORDERED:

1. The plaintiffs' class-certification motion, ECF No. 172, as supplemented, ECF No. 209, is granted with modified class definitions.

2. A class is certified on the Raysor plaintiffs' Twenty-Fourth Amendment claim—count two in their amended complaint—consisting of all persons who would be eligible to vote in Florida but for unpaid financial obligations.

3. A subclass is certified on the Raysor plaintiffs' inability-to-pay claim—count one of their amended complaint—consisting of all persons who would be eligible to vote in Florida but for unpaid financial obligations that the person asserts the person is genuinely unable to pay.

4. The named plaintiffs Bonnie Raysor, Diane Sherrill, and Lee Hoffman are the class representatives.

5. Chad Dunn and Mark Gaber are class counsel.

6. Excluded from the class and subclass are the named plaintiffs in the other cases that have been consolidated with *Raysor* in this proceeding. The excluded individuals are Jeff Gruver, Emory Marquis Mitchell, Betty Riddle, Kristopher Wrench, Keith Ivey, Karen Leicht, Raquel Wright, Steven Phalen, Clifford Tyson, Jermaine Miller, Curtis D. Bryant, Latoya A. Moreland, Rosemary McCoy, Sheila Singleton, Kelvin Leon Jones, and Luis A. Mendez. The named plaintiff whose motion to withdraw is pending, Jesse D. Hamilton, is not excluded from the class and subclass.

SO ORDERED on April 7, 2020.

s/Robert L. Hinkle_____
United States District Judge