# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

KELVIN JONES, et al.,

    Plaintiffs,

v.

RON DESANTIS, in his official capacity
as Governor of the State of Florida, et al.,

    Defendants.
_____/

CONSOLIDATED
Case No.: 4:19-cv-00300-RH/MJF
(Lead Case)

## TRIAL BRIEF FOR DEFENDANT CHRISTINA WHITE

This case concerns various challenges to a newly-enacted provision of Florida's Election Code which implements a 2018 voter-initiated amendment to the Florida Constitution re-enfranchising certain felons "upon completion of all terms of sentence including parole or probation. " Art. VI, sec. 4(a), Fla. Con. This consolidated action is comprised of four separate lawsuits that include the Florida Governor, the Secretary of State, and an assorted collection of county Supervisors of Elections as defendants. Defendant Christina White, the Supervisor of Elections for Miami-Dade County, is only a party in one of those cases—*Gruver v. Barton, et al.* (Case No. 4:19-cv-302-RH)—and, even within the pleadings in that case, none of the claims asserted by those plaintiffs are expressly directed at actions taken by Supervisor White. *See, e.g.*, Amended Complaint [D.E. 26] in *Gruver v. Barton, et al.* (Case No. 4:19-cv-302-RH).

As a result, Supervisor White has stated since the inception of this case that she is not a necessary party to this action because "[t]he only necessary party in a case challenging a state election law is the Secretary of State." D.E. 96 at 10. And, for that very reason, Supervisor White continues to defer to the Secretary of State on "the proper and equitable interpretation and implementation" of Florida's Election Code as required under Fla. Stat. § 97.012(1).

Nevertheless, Supervisor White is tasked under Florida law with the registration of qualified electors, the removal of ineligible voters from the voting rolls, and the conduct of elections in Miami-Dade County. Each of those responsibilities could be impacted by the relief provided in this case if this Court determines that Plaintiffs have proven any of their asserted claims. Therefore, Supervisor White primarily submits this trial brief to apprise the Court of practical concerns that should be considered if relief is warranted.

I. **Supervisor White's Position on the Underlying Merits**

Although Supervisors of Elections register qualified electors to vote and remove disqualified voters from the rolls, Florida law tasks the Secretary of State with the obligation to "[o]btain and maintain uniformity in the interpretation and implementation of the election laws … [and] may … adopt by rule uniform standards for the proper and equitable interpretation and implementation of the requirements of chapters 97 through 102 and 105 of the Election Code." Fla. Stat. § 97.012(1).

The Secretary of State's obligation extends to providing "uniform standards for the proper and equitable administration of the registration laws" and ensuring "that all registration applications and forms prescribed by or approved by the departments are in compliance with the Voting Rights Act of 1965 and the National Voter Registration Act of 1993." Fla. Stat. §§ 97.012 (2) and (9). If an individual Supervisor of Election fails to comply with the Secretary of State's directives on voter registration the Secretary of State may "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties … or to enforce compliance with a rule of the Department of State adopted to interpret or implement any of [Florida's Election Laws]." Fla. Stat. § 97.012 (14).

Because Florida law requires Supervisors of Elections to defer to the Secretary of State on "the proper and equitable interpretation and implementation" of Florida's Election Code, Supervisor White adopts—as she must—the position of Secretary of State regarding the interpretation of SB 7066.

In addition, Supervisor White reasserts the affirmative defenses that she raised in her Answer to Plaintiffs' Amended Complaint. *See Gruver v. Barton, et al*. (Case No. 4:19-cv-302-RH), D.E. 33 at 22-24. For ease of reference, those affirmative defenses are enumerated below:

1. Plaintiffs' claims are not yet ripe for adjudication. Defendant Christina White has not removed any voters, including any Plaintiffs, from the rolls as a result of the provisions of SB 7066 addressed in the Complaint and she has not received any information from the Secretary of State to initiate

3

the removal process for any voter as a result of those provisions.

2. Even if this claim were ripe for adjudication, Fla. Stat. § 97.075(7) provides administrative procedures that must be followed prior to removal of any voter for ineligibility and Fla. Stat. § 98.0755 provides appellate jurisdiction over such administrative determinations to the state circuit court in the relevant county. Plaintiffs have not exhausted any of these administrative remedies prior to filing this challenge.

3. Plaintiffs have not suffered an injury in fact as a result of any action by Defendant Christina White and therefore do not possess the requisite standing to bring this cause of action against Defendant Christina White.

4. Plaintiffs' Complaint does not state a cause of action against Defendant Christina White for which relief may be granted because the relief requested is not sought from Defendant Christina White and is only sought from the State of Florida and the Secretary of State.

5. Plaintiffs' Complaint does not state a cause of action against Defendant Christina White for which relief can be granted because Florida Statutes provide that the Secretary of State is the "chief election officer of the state" with "responsibility to … [o]btain and maintain uniformity in the interpretation and implementation of the election laws … [and] may … adopt by rule uniform standards for the proper and equitable interpretation and implementation of the requirements of chapters 97 through 102 and 105 of the Election Code." *See* § 97.012, Fla. Stat.

6. Plaintiffs' Complaint fails to provide a short and plain statement of the claim showing that they are entitled to relief because the Complaint is an improper "shotgun pleading."

7. To the extent Plaintiffs allege that Defendant Christina White is an indispensable or necessary party for purposes of relief, Plaintiffs' claims fail for failing to join the other fifty-seven unnamed Supervisors of Elections in Florida as indispensable and necessary parties.

8. To the extent Plaintiffs seek an injunction directing that their votes be counted in elections, Plaintiffs' claims fail for failing to join the individual County Canvassing Boards and the State Canvassing Board who determine the legality of cast votes under Florida law.

9. Plaintiff Karen Leicht's claims against Defendant Christina White are barred by waiver or estoppel because Ms. Leicht agreed in her plea agreement that restitution would be imposed as a term of her criminal sentence.

10. Plaintiff Karen Leicht's claims for equitable relief are barred by the doctrine of unclean hands.

11. To the extent Plaintiffs suffered any damages as a result of facts alleged in the Complaint, Defendant Christina White is entitled to immunity under the Eleventh Amendment of the United States Constitution.

12. To the extent Plaintiffs suffered any damages as a result of facts alleged in the Complaint, Defendant Christina White is not the proximate cause of those damages.

13. Plaintiffs' recovery, if any is limited by the provisions of Fla. Stat. § 768.28(5).

*Id*.

## II. Supervisor White's Position on Potential Relief

If this Court determines that Plaintiffs have prevailed on any of their claims, Supervisor White requests that this Court give due consideration to the manner by which any relief is ordered so that Supervisors of Elections and county canvassing boards are not unduly burdened with new responsibilities that could change or need to be undone with subsequent appellate or state litigation. Specifically, Supervisor White seeks to emphasize the following four issues of concern:

### a. Relevant Voter Registration Deadlines

The trial in this matter is set to occur during the week of April 27, 2020.

Florida's Primary Election is scheduled for August 18, 2020. In order to vote in that Primary Election, an eligible voter must be registered at least 29 days before that election (i.e. July 20, 2020). *See* Fla. Stat. § 97.055. Additionally, the 2020 General Election is scheduled for November 3, 2020. And, in order to vote in the 2020 General Election, an eligible voter must be registered at least 29 days before that election (i.e. Oct. 5, 2020). *See* Fla. Stat. § 97.055.

To the extent that this Court decides to order relief for the class plaintiffs in this matter, such relief should be structured so that there would not be sudden changes to voter registration laws on the eve of these relevant deadlines. This concern is particularly compelling in light of the real probability that, regardless of which party prevails, these issues are likely to appear before an appellate court, prompt subsequent state court litigation, generate requests to stay, or all of the above. *See generally Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006) (recognizing that "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.").

### b. Process for Removing Ineligible Voters

Due to the aforementioned possibility of appellate proceedings, state court litigation, or requests to stay, Supervisor White also seeks to advise this Court about the procedural difficulties that would arise should, for example, a group of the class

plaintiffs were to register to vote based upon an order by this Court and then subsequently be found ineligible by a subsequent federal or state proceeding. Specifically, there is no mechanism for any Supervisor of Elections to remove groups of ineligible voters from the voter rolls *en masse* when ineligibility is based on felony convictions. Instead, Florida law requires an individualized process for the possible removal of any voter whose potential ineligibility is based on not having their rights restored. That procedure is as follows:

- When a voter registration application is received by the Supervisor of Elections for Miami-Dade County, it is processed in accordance with Fla. Stat. § 97.053. If the voter affirms, under penalty of perjury, that they meet all qualifications for registration provided by Florida Law and otherwise completes the voter registration, they will be registered to vote.

- All new voter registration information is then transmitted to the Florida Division of Elections. The Florida Division of Elections researches and verifies the voter's identity and eligibility.

- If the Miami-Dade County Elections Department receives credible information from the Florida Division of Elections or a third party that a voter may be potentially ineligible, the Elections Department notifies the voter by mail of their potential ineligibility within 7 days after receipt of the information. Fla. Stat. § 98.075(7)(a)(1).

7

- In that notice, the voter is informed that they may respond to the information provided within 30 days of receipt of the notice. *See id*. If, however, the notice is returned as undeliverable, the Supervisor of Elections must publish the notice in a newspaper of general circulation advising the voter that they may respond to the information provided within 30 days of the notice's publication. *See id*.

- In addition to providing a written response, a registered voter whose eligibility has been questioned may also request a hearing that must then be scheduled by the Supervisor of Elections, after proper notice, for a future date and time. *See id*.

- The Supervisor of Elections must then make a case-by-case determination, based on all information provided in writing and at any requested hearing, as to whether there is a preponderance of evidence that the voter is ineligible. No voter is removed from the statewide voter registration system until after the Supervisor makes that determination. *See id*.

Given that this process demands considerable time and resources from Supervisors of Elections, Supervisor White requests that any relief provided in this case avoid the potential that groups of newly registered voters may need to be removed from the voter rolls if a different court disagrees with this Court on either the relief provided or the severability of SB 7066.

### c. Voter Challenges under Fla. Stat. 101.111

If a final determination on the claims in this case (or on the severability of SB 7066) is not made by the Primary Election in August 2020 or the General Election in November 2020, then there exists a real possibility for outside challenges to be raised against the members of the certified class who have registered to vote without having meet the financial obligation requirements under SB 7066. Under Fla. Stat. § 101.111, "[a]ny registered elector or poll watcher of a county may challenge the right of a person to vote in that county." And, if such a challenge is made in writing and under oath as provided by Florida law, the challenged voter will not be permitted to vote in the conventional manner but "shall be allowed to cast a provisional ballot." *Id*. This challenge can be raised as early as 30 days before an election and as late as Election Day. *Id*.

Once the challenged voter has cast a provisional ballot, that ballot is sealed in a provisional ballot envelope and will not be included in the tabulation of any election results that are submitted by each Supervisor of Elections to the State of Florida on Election Night. Instead, Florida Law enables the challenged voter "to present written evidence supporting his or her eligibility to vote to the supervisor of elections by not later than 5 p.m. on the second day following the election," and it is only upon the expiration of that window that a county canvassing board can proceed to canvass provisional ballots and include those ballots within their tabulated results.

Fla. Stat. § 101.048(1).

In a normal election, provisional ballots are few in relative number and thus rarely consequential. However, if this class of plaintiffs, either in whole or in part, have their eligibility challenged under Fla. Stat. § 101.111, that would create a quantity of provisional ballots that would not only place considerable demands on the county canvassing boards that would need to canvass those ballots, it would also create a circumstance where the results of a close election could be unknown until days after the election concluded.

### d. Determinations of Indigency

If a final determination in this case requires that an independent assessment of indigency be made for each member of the Plaintiff class, that determination should not be made by the Florida Supervisors of Elections. Indigency determinations are fact intensive inquiries that Supervisors' offices do not have the experience, specialization, or resources to perform, even in the absence of other responsibilities.

Florida is currently deep into the 2020 election cycle with candidate qualifications, petition verification, voter registration, absentee ballot request processing, and polling place identification and preparation all underway. All these time consuming task are being performed while elections offices around the state are short staffed as a result of the federal, state and local states of emergency caused by

the COVID-19 pandemic.

Any relief which would require individualized indigency determinations to be made by Supervisors of Elections would draw scarce resources away from actively preparing for and conducting the elections. Thus, the responsibility for any determination of indigency should not be required of Supervisors of Elections at the expense of the rest of the elections process.

## CONCLUSION

As set forth above and required by Florida law, Supervisor White respectfully adopts the position on the State Defendants as they relate to the merits of the dispute and respectfully requests that, if this Court believes that relief is warranted, such relief should give consideration to the issues raised in this trial brief and not place an undue burden of the Supervisors of Elections for the State of Florida.

Pursuant to N.D. Fla. Loc. R. 7.1(F), this response contains fewer than 8,000 words. It contains 2,543 words.

    Respectfully submitted,

    ABIGAIL PRICE-WILLIAMS
    MIAMI-DADE COUNTY ATTORNEY

By: /s/Oren Rosenthal
    Oren Rosenthal
    Michael B. Valdes
    Assistant County Attorney
    Florida Bar Nos. 86320 & 93129
    Miami-Dade County Attorney's Office
    Stephen P. Clark Center

                111 N.W. 1st Street, Suite 2810
                Miami, Florida 33128
                Phone: (305) 375-5151
                Fax:   (305) 375-5634
                Email:   orosent@miamidade.gov
                            mbv@miamidade.gov
                            dmh@miamidade.gov
                            mora@miamidade.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 14th day of April, 2020.

*s/Oren Rosenthal*
Oren Rosenthal
Assistant County Attorney