[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-12304

Non-Argument Calendar

_____

KEVIN LEON JONES, et al.,

                                          Plaintiffs,

ROSEMARY MCCOY,
SHEILA SINGLETON,

                                          Plaintiffs-Appellants,

*versus*

GOVERNOR OF FLORIDA,
CRAIG LATIMER,
in his Official Capacity as Supervisor of Elections of
Hillsborough County Florida an Indispensible Party,
SECRETARY, STATE OF FLORIDA,
KIM A. BARTON,

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 2 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 2 of 13

2          Opinion of the Court          20-12304

in her Official Capacity as Supervisor of Elections for Alachua County,
PETER ANTONACCI,
in his Official Capacity as Supervisor of Elections for Broward County, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cv-00300-RH-MJF

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

JILL PRYOR, Circuit Judge:

In 2018, a supermajority of voters in Florida enacted a state constitutional amendment that would permit most people with felony convictions to vote "upon completion of all terms of sentence including parole or probation." *See* Fla. Const. art. VI § 4(a), (b) ("Amendment 4"). The Florida legislature then passed a law stating that Amendment 4 required a person to satisfy all legal financial obligations, or LFOs, before she would be permitted to vote. Fla. Stat. § 98.0751; *see Advisory Op. to the Governor re: Implementation of Amendment 4, The Voting Restoration*

Case 4:19-cv-00300-RH-MJF Document 457 Filed 10/18/21 Page 3 of 15
USCA11 Case: 20-12304 Date Filed: 10/18/2021 Page: 3 of 13

20-12304            Opinion of the Court                3

*Amendment*, 288 So. 3d 1070, 1072 (Fla. 2020) (ruling that Amendment 4's "all terms of sentence" included LFOs).

Rosemary McCoy and Sheila Singleton, along with many others, filed suit to challenge the LFO requirement. The plaintiffs, whose cases were consolidated in the district court, levied several constitutional and statutory challenges against the requirement. McCoy and Singleton, as relevant to this appeal, asserted that the LFO requirement violated the Equal Protection Clause of the Fourteenth Amendment and the Nineteenth Amendment to the United States Constitution insofar as the requirement applied to "low-income women of color who face unemployment, low wages, and difficulty paying off their financial debts at much higher rates than their male and white female counterparts." Appellants' Br. at 5. After a bench trial, the district court rejected these gender discrimination-based claims. The court explained that McCoy and Singleton could prevail on their constitutional challenges only if they could "show that gender was a motivating factor in the adoption of the pay-to-vote system," and they had presented at trial no evidence of intentional discrimination. *Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1239 (N.D. Fla. 2020). McCoy and Singleton have appealed.[1]

---

[1] McCoy and Singleton prevailed at trial on another of their claims: that the LFO requirement constituted wealth discrimination in violation of the Equal Protection Clause. *See Jones v. Governor of Florida*, 975 F.3d 1016, 1027–28 (11th Cir. 2020) (en banc). Thus, they are cross-appellants in this case. The Florida defendants appealed the district court's judgment as to the wealth

4     Opinion of the Court     20-12304

McCoy's and Singleton's arguments on appeal are legal in nature. They do not argue that if proof of discriminatory intent is required, they have satisfied that requirement. Because both claims may succeed only upon proof of discriminatory intent, we

---

discrimination claim, and this Court, sitting en banc, reversed the district court. *See id.* at 1025. All parties in this case agree, and we agree with them, that the fact that McCoy and Singleton prevailed initially on their wealth discrimination claim does not deprive them of standing to cross-appeal the district court's adverse final judgment on their gender discrimination claims.

Florida makes a different argument as to why McCoy and Singleton lack standing to pursue this appeal. Florida argues that McCoy and Singleton "purport to challenge [the statutory] requirement that felons satisfy financial obligations, but they make no mention of challenging Amendment 4, which imposes the same requirement." Appellees' Br. at 14. Thus, the State says, McCoy and Singleton "cannot satisfy the redressability prong" of standing because striking down the statutory requirement would leave intact Amendment 4. *Id.* at 15; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that, to have standing under Article III of the Constitution, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (internal quotation marks omitted)). We agree with the district court that the State "is simply wrong when it asserts the plaintiffs do not challenge application of Amendment 4 . . . . The complaints were filed before the Florida Supreme Court construed Amendment 4 to cover LFOs, so it is not surprising that the complaints focused on [the statutory requirement]." *Jones*, 462 F. Supp. 3d at 1214. But "it has been clear all along that the plaintiffs assert it is unconstitutional to condition voting on payment of LFOs, especially those a person is unable to pay." *Id.* Thus, we have no trouble concluding that McCoy and Singleton have challenged Amendment 4.

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 5 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 5 of 13

20-12304           Opinion of the Court           5

must reject McCoy's and Singleton's arguments and affirm the judgment of the district court.[2]

## I.

A plaintiff bringing a gender discrimination claim under the Equal Protection Clause may prevail only upon proof of intentional or purposeful discrimination. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979) ("[P]urposeful discrimination is the condition that offends the Constitution." (internal quotation marks omitted)). "[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim. This requirement applies with equal force to a case involving alleged gender discrimination." *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) (citations omitted).

Undeterred, McCoy and Singleton argue that because this case implicates the fundamental right to vote, the *Anderson-Burdick* balancing test—rather than traditional equal protection principles—applies. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Under the *Anderson-Burdick* test, courts "weigh the character and magni-

---

[2] We review *de novo* a district court's conclusions of law. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1308 (11th Cir. 2015).

Because we conclude that the district court correctly required evidence of intent to discriminate, we do not address McCoy's and Singleton's argument regarding disparate impact, that the district court erred in opining that "the pay-to-vote requirement overall has a disparate impact on men, not women." *Jones*, 462 F. Supp. 3d at 1240.

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 6 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 6 of 13

6                    Opinion of the Court                    20-12304

tude of the asserted . . . injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019). Critically, plaintiffs advancing a claim to which the test applies "need not demonstrate discriminatory intent behind" the challenged provision. *Id.*

We must reject this argument because McCoy and Singleton have not advanced the type of claim to which the *Anderson-Burdick* test applies. In *Lee*, we distinguished between "a traditional Equal Protection Clause claim," which "is cognizable in the voting context if the plaintiff alleges that discriminatory animus motivated the legislature to enact a voting law," and a claim brought under "the First and Fourteenth Amendments," which prompts application of the *Anderson-Burdick* test. *Id.* at 1318–19 & n.9. McCoy and Singleton indisputably brought a traditional Equal Protection Clause claim. Their claim therefore falls outside the scope of *Anderson-Burdick*, and they must prove intentional discrimination to establish the violation they alleged. Because they have not attempted to prove intentional discrimination, their Equal Protection Clause claim necessarily fails, and the district court rightly rejected it.

McCoy and Singleton also argue that no intent requirement accompanies their claim because their challenge is as-applied, rather than facial. In support, they cite a handful of prec-

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 7 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 7 of 13

20-12304                Opinion of the Court                7

edential decisions. None of these decisions can bear the weight the plaintiffs assign them.

First, McCoy and Singleton cite a line of cases from this Court and the former Fifth Circuit addressing a provision in Alabama's constitution that disenfranchised people convicted of certain crimes. McCoy and Singleton assert these cases illustrate that we have excepted as-applied equal protection challenges from the general requirement that plaintiffs show intentional discrimination. *See Underwood v. Hunter* ("*Underwood I*"), 604 F.2d 367 (5th Cir. 1979)[3]; *Underwood v. Hunter* ("*Underwood II*"), 730 F.2d 614 (11th Cir. 1984), *aff'd sub nom.*, *Hunter v. Underwood* ("*Underwood III*"), 471 U.S. 222 (1985). We disagree with their reading of these cases. The *Underwood* plaintiffs challenged the Alabama constitutional provision "as it applie[d] to those convicted of crimes not punishable by imprisonment." *Underwood II*, 730 F.2d at 616. Among other causes of action, they pursued a race discrimination claim in which they alleged that "the list of offenses" resulting in disenfranchisement under the Alabama Constitution "was specifically adopted with the intent" to disenfranchise Black Alabamians "and in fact abridge[d] the right to vote on the basis of race." *Underwood I*, 604 F.2d at 368. The former Fifth Circuit reversed the district court's dismissal of the race discrimination claim, explaining that "[s]uch an allegation of

---

[3] Decisions of the former Fifth Circuit rendered before close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 8 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 8 of 13

8                    Opinion of the Court                    20-12304

*both* improper motive and discriminatory impact is in keeping with language in recent Supreme Court cases to the effect that a challenge to state action require[s] a disproportionate racial impact *and* a showing of discriminatory intent and purpose." *Id.* at 369 (emphasis added).

After a trial, the district court again ruled against the *Underwood* plaintiffs on their race discrimination claim, and we again reversed, holding that the challenged provision of the Alabama Constitution "denie[d] plaintiffs the right to vote on the basis of race." *Underwood II*, 730 F.2d at 616. We restated that "[a] successful [F]ourteenth [A]mendment claim of race discrimination in matters affecting voting requires that plaintiffs establish an intent to abridge the franchise on account of race." *Id.* at 617. We concluded that the evidence demonstrated such intent, *see id.* at 617–21, and the United States Supreme Court affirmed, *see Underwood III*, 471 U.S. at 233.

McCoy and Singleton argue that in *Underwood II* we included a "ruling" that the challenged provision's "disproportionate impact on Black voters" alone "supported striking" the provision. Reply Br. at 15. But their brief does not provide a citation to any such ruling in the *Underwood* cases, and we cannot find one. Rather, these cases simply reiterate the proposition that discriminatory intent and disproportionate impact, together, establish an Equal Protection Clause violation. The *Underwood* cases do not support McCoy's and Singleton's position that an as-applied gen-

20-12304               Opinion of the Court                              9

der discrimination challenge under the Equal Protection Clause can succeed absent a showing of discriminatory intent.

Nor does our decision in *United States v. Dallas County Commission*, 739 F.2d 1529 (11th Cir. 1984), aid McCoy's and Singleton's argument that as-applied challenges require no showing of intent. There, we addressed the United States government's Fourteenth Amendment challenge "to the at-large systems used to elect the Dallas County . . . Commission and the Dallas County Board of Education." *Id.* at 1532. The government challenged one statutory provision, "the section under which the Board of Education was elected, only as applied and not on its face," so the district court prohibited the government from "present[ing] evidence of discriminatory intent in the enactment of" the provision. *Id.* at 1532–33 (footnote omitted). McCoy and Singleton seize on the district court's action as evidence that as-applied challenges do not require a showing of discriminatory intent, but they overlook the nuances of *Dallas County*. The government in that case was challenging the at-large method Dallas County *actually used* to elect its Commission and Board, not the at-large method as it was set out in the statute. *See id.* at 1532 n.1 ("Although the [Board] is elected pursuant to the same statute that sets forth the election provisions for other county boards of education throughout Alabama, this lawsuit challenges only the election structure in Dallas County, Alabama."). Naturally, then, the government was prohibited from introducing evidence of discriminatory intent in the passage of the statute: it was the scheme at the local level that al-

legedly was discriminatory, not the system provided in the statute.

The equal protection gender discrimination claim McCoy and Singleton advanced can be sustained only upon a showing of discriminatory intent. Because McCoy and Singleton did not attempt to make this showing, their Equal Protection Clause claim fails, and the district court was correct to reject it.

## II.

Discriminatory intent also is an essential element of McCoy's and Singleton's claim under the Nineteenth Amendment. The Supreme Court has said that the Nineteenth Amendment, which prohibits denial of the right to vote "on account of sex," U.S. Const. amend. XIX, "is in character and phraseology precisely similar to the Fifteenth," *Leser v. Garnett*, 258 U.S. 130, 136 (1922), which prohibits denial of the franchise "on account of race," U.S. Const. amend. XV. *See also Jones v. Governor of Florida*, 975 F.3d 1016, 1043 (11th Cir. 2020) (en banc) ("[T]he Nineteenth Amendment operates just like the Fifteenth Amendment."). Although there are few Nineteenth Amendment decisions, Fifteenth Amendment jurisprudence is slightly more robust. Because of the "precise[] similar[ity]" between the two amendments, our inquiry starts, and ends, with that jurisprudence. *Leser*, 258 U.S. at 136.

Decades ago, a plurality of the Supreme Court noted that none of its decisions had ever "questioned the necessity of show-

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 11 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 11 of 13

20-12304               Opinion of the Court                11

ing purposeful discrimination in order to show a Fifteenth Amendment violation." *City of Mobile v. Bolden*, 446 U.S. 55, 63 (1980) (plurality opinion). Although it has never squarely addressed the appropriateness of the intent requirement, the Supreme Court has incorporated the intent requirement into its Fifteenth Amendment lexicon. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 223 (2009) (juxtaposing the Voting Rights Act § 5 with the Fifteenth Amendment, explaining that the former "prohibits more state voting practices than those necessarily encompassed by the explicit prohibition on intentional discrimination found in the text of the Fifteenth Amendment"); *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 481 (1997) ("Since [*Bolden*], a plaintiff bringing a constitutional vote dilution challenge . . . under the . . . Fifteenth Amendment[] has been required to establish that the State . . . acted with a discriminatory purpose.").

It is true the Supreme Court has never held that the Nineteenth Amendment contains an intentional discrimination requirement. But given what the Court has said about the two amendments, we as an inferior court are not at liberty to craft a different rule for the Nineteenth than the one the Court has applied to the Fifteenth. Despite McCoy's and Singleton's well-crafted arguments why a Nineteenth Amendment claim should not require a showing of intentional discrimination, given the current legal landscape they cannot succeed on this claim, and the district court did not err in denying it.

**AFFIRMED.**

20-12304	JORDAN, J., Concurring	1

JORDAN, Circuit Judge, Concurring:

I join Judge Jill Pryor's opinion for the court in full and add the following thoughts on the plaintiffs' Nineteenth Amendment claim.

The Fifteenth Amendment, which prohibits the denial of the franchise "on account of race," has been read or understood by the Supreme Court to require a showing of intentional discrimination. *See, e.g., City of Mobile v. Bolden*, 446 U.S. 55, 63 (1980) (plurality opinion); *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 481 (1997); *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 223 (2000). As the court points out, the Nineteenth Amendment, which prohibits denial of the franchise based on sex, similarly uses "on account of" language.

Though the plaintiffs make a valiant effort to set out a theory under which disparate impact is sufficient to make out a Nineteenth Amendment violation, that effort fails for a couple of reasons. First, when identical words or phrases are used in the Constitution, we should generally presume—absent some good reasons to the contrary—that they mean the same thing throughout. *See, e.g., Martin v. Hunter's Lessee*, 14 U.S. 304, 329-30, 332-33 (1816); Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 761 (1999). So, if "on account of" requires a showing of intentional discrimination for the Fifteenth Amendment, it should also require proof of intentional discrimination for the Nineteenth Amendment unless there is a sound basis for a different reading. Second, it seems to me that there is no good reason to avoid the

Case 4:19-cv-00300-RH-MJF   Document 457   Filed 10/18/21   Page 13 of 15
USCA11 Case: 20-12304   Date Filed: 10/18/2021   Page: 13 of 13

2                         JORDAN, J., Concurring                        20-12304

presumption that identical words or phrases in the Constitution generally mean the same thing. Not only do the Fifteenth and Nineteenth Amendments target the same conduct—discrimination in voting—the phrase "on account of" has been understood to mean "because of" since the late 1700s. *See* Webster's Dictionary of English Usage 687 (1989) ("*On account of* was first recorded in this use in 1792 and has long been established as a standard in both British and American English.").

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 18, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-12304-AA
Case Style: Rosemary McCoy, et al v. Governor of Florida, et al
District Court Docket No: 4:19-cv-00300-RH-MJF
Secondary Case Number: 4:19-cv-00304-RH-MAF

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against appellants</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>T. L. Searcy, AA</u> at <u>(404) 335-6180</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs